1  Scott A. McMillan, SBN 212506
2  Michelle D. Volk, SBN 217151
   Sean E. Smith, SBN 288973
3  **The McMillan Law Firm, APC**
   4670 Nebo Dr., Suite 200
4  La Mesa, CA 91941-5230
   Tel. 619-464-1500 x 14
5  Fax. 206-600-5095

6  Attorneys for Petitioner,
   Lycurgan, Inc.

7

8                    **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 In the Matter of the Search of:      Case No.: **'14 CV 1 4 2 4 DMS JLB**

12 Ares Armor, 206/208 N Freeman        ATF Case Number: 784090-13-0011-01
   St, Oceanside; Ares Armor, 416       Asset ID:           14-ATF-009592
13 National City Blvd; Ares Armor
   Warehouse, 180 Roymar St D; and      NOTICE OF MOTION AND MOTION TO
14 2420 Industry, Oceanside, CA         UNSEAL SEARCH WARRANT
                                        DOCUMENTS
15
                                        Judge: Hon. _____
16
                                        Dept.: _____
17
                                        Hearing Date: _____
18
                                        Hearing Time: _____
19

20        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

21        PLEASE TAKE NOTICE that on _____, 2014 at _____, or as soon

22 thereafter as may be heard, in Department 4A of the above entitled Court, located at 221

23 West Broadway, San Diego, California 92101, Petitioner LYCURGAN, INC. d/b/a

24 ARES ARMOR ("Lycurgan"), pursuant to Federal Rule of Criminal Procedure 41 and

25 the Fourth Amendment of the United States Constitution, does hereby move this Court to

26 order the affidavits and other documents (collectively, "Search Warrant Documents")

27 executed under seal, pertaining to the search of Lycurgan, to be unsealed. This motion is

28 based on the need to challenge the legality of the search and seizure conducted by the

FILED

'14 JUN 11 PM 1:30

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DS                          DEPUTY

1  Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE").  Specifically, the

2  executed search warrants were overly broad and lacked sufficient particularity.  Also, the

3  BATFE agents exceeded the scope of the search warrants.

4      Lastly, the items taken from Lycurgan's three locations in Oceanside, CA and one

5  location in National City, CA are legally owned by Lycurgan.  The seized items do not

6  constitute "firearms" within the meaning of the Gun Control Act of 1968, or prior

7  interpretative determinations of the BATFE under such Act.

8      Disclosure of the Search Warrant Documents is necessary to effectively challenge

9  the improper search and seizure.  The BATFE seized items with an estimated total value

10 of $290,200.00.  The BATFE initiated a forfeiture proceeding, which Lycurgan

11 requested to challenge in a judicial proceeding.  Furthermore, an individual associated

12 with Lycurgan was arrested and criminally charged based on items recovered in the

13 improper search and seizure.  The United States Constitution and Due Process demand

14 disclosure of the Search Warrant Documents to give the affected parties a meaningful

15 opportunity to defend against this serious governmental intrusion.

16     This motion is further based on this notice of motion, the below memorandum of

17 points and authorities, the declaration of Scott A. McMillan, the declaration of Dimitrios

18 A. Karras, the pleadings, records and papers filed in this case, and any additional

19 evidence that may be submitted at the hearing on this motion.

20

21                                      Respectfully submitted,

22                                      The McMillan Law Firm, APC

23

24 Dated:  6/07/14

25

26                                      Scott A. McMillan
                                        Attorneys for Petitioner/Movant
27                                      Lycurgan, Inc.

28

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO UNSEAL SEARCH WARRANT DOCUMENTS

## TABLE OF CONTENTS

California Decisional Authority

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. Company Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B. BATFE Investigation of Lycurgan . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C. Search and Seizure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    D. Criminal Proceeding Against Tyler Hughes . . . . . . . . . . . . . . . . . . . . 4

II.   LEGAL STANDARD FOR MOTION TO UNSEAL SEARCH WARRANT
    AFFIDAVIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. There is a Significant Need to Examine the Search Warrant Documents. . . . 6

        1. Lycurgan Needs to Examine the Search Warrant Documents to
           Challenge the Government's Forfeiture Proceeding. . . . . . . . . . . 6

        2. Unsealing of the Search Warrant Documents to would allow non-party
           Tyler Hughes to Evaluate Possible Post-Conviction Relief. . . . . 7

    B. The Search Warrant Documents Must Be Unsealed to Curb Governmental
       Misconduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C. There is No Compelling Governmental Interest to Seal the Search Warrant
       Documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D. Sealing the Search Warrant Documents Is Not the Least Restrictive Means.
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

E. The Continued Sealing of the Search Warrant Documents Is Unreasonable.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

<u>United States Constitutional Authority</u>

U.S. Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 8, 11-13

U.S. Const., Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Federal Rules</u>

Federal Rules of Criminal Procedure, Rule 41 . . . . . . . . . . . . . . . . . . . . . . . 1, iii, 7

<u>Federal Statutory Authority</u>

18 U.S.C.S. § 921 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 1, 3

<u>Federal Decisional Authority</u>

*Boyd v. United States* (1886) 116 U.S. 616 . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Gardner v. Newsday, Inc. (In re Newsday, Inc.)* (2d Cir. 1990) 895 F.2d 74 . . . . . . . . 5

*In re 14416 Coral Gables Way* (D. Md. 2011) 946 F. Supp. 2d 414 . . . . . . . . . . . 10-13

*In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records* (D. D.C. 2008) 585 F. Supp. 2d 83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Matter of the Search of a Residence* (E.D. Wisc. 1988) 121 F.R.D. 78 . . . . . . . . 13

*In re Search of 1993 Jeep Grand Cherokee* (D. Del. 1996) 958 F. Supp. 205 . . . . . . . 11

*In re Search of 8420 Ocean Gateway Easton,* (D. Md. 2004) 353 F. Supp. 2d 577 . 5, 10

*In re Search of Flower Aviation, Inc.* (D. Kan. 1992) 789 F. Supp. 366 . . . . . . . . . . . . 7

*In re Search Warrant for 2934 Anderson Morris Road* (N.D. Ohio 1999) 48 F. Supp. 2d 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Search Warrant for Secretarial Area Outside Office of Gunn* (8th Cir. 1988) 855 F.2d 569 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*In re Search Warrants for 14 Straight Street, S.W.* (W.D. Mich. 1987) 117 F.R.D. 591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Search Warrants Issued August 29, 1994* (S.D. Ohio 1995) 889 F. Supp. 296 . . . 5, 10, 12

*In re Search Warrants Issued on April 26, 2004* (D. Md. 2004) 353 F. Supp. 2d 584 . . 4, 5, 7, 12

*In re Searches of Semtex Indus. Corp.* (E.D. N.Y. 1995) 876 F.Supp. 426 . . . . . 5, 10, 13

*In re Up North Plastics, Inc.* (D. Minn. 1996) 940 F. Supp. 229 . . . . . . 4, 5, 7-9, 12, 13

*In re Wag-Aero, Inc.* (E.D. Wisc. 1992) 796 F. Supp. 394 . . . . . . . . . . . . . . . . . 5, 7

*Mapp v. Ohio* (1961) 367 U.S. 643 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*One 1958 Plymouth Sedan v. Pa* (1965) 380 U.S. 693 . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. James Daniel Good Real Prop.* (1993) 510 U.S. 43 . . . . . . . . . . . . . . 6

*Weeks v. United States* (1914) 232 U.S. 383 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>California Decisional Authority</u>

*People v. Leblanc* (1997) 60 Cal.App.4th 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## I.      INTRODUCTION

### A. Company Background

Dimitrios Karras ("Mr. Karras") is the Chief Executive Officer of Lycurgan, Inc., a California corporation d/b/a Ares Armor ("Lyrcurgan"). [Karras Decl. ¶ 1.] Lycurgan is a small retail business with four locations: three in Oceanside, California and one in National City, California. [*Id.* ¶ 3; Ex. A at Exs. 9-10.] In addition, it operates a website (www.aresarmor.com). [Karras Decl. ¶ 3.]

Lycurgan sells gun parts, holsters, cases, apparel, and backpacks, and a product known as an 80% AR-15 lower receiver. [*Id.*; Ex. A at Exs. 3-8 (photos).] An 80% lower is an industry term for an unfinished receiver, which is not a firearm according to prior determinations from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"). [Karras Decl. ¶ 3; Ex. A at Exs. 1-2.] Therefore, 80% lowers do not require a federal firearms license and are not regulated under the Gun Control Act of 1968. [Karras Decl. ¶ 3.] The sale of 80% lowers account for the vast amount of Lycurgan's sales and revenue. [*Id.*]

Lycurgan purchases and resells 80% lower receivers that are manufactured by EP Armory. [*Id.* ¶ 4.] EP Armory uses polymer to make its 80% lower receivers, which are no different from any other 80% lower receiver openly sold to the public. [*Id.*] EP Armory's product is in compliance with previous BATFE determinations and is not a firearm. [*Id.*; Ex. A at Exs. 1-2.]

### B. BATFE Investigation of Lycurgan

The BATFE raided EP Armory based on incorrect information about EP Armory's manufacturing process. [Karras Decl. ¶ 5.] The BATFE was under the false impression that EP Armory was making a firearm and then reverting it back to the 80% stage by filling in the fire-control cavity. [*Id.*] At no point during the manufacturing process by EP Armory is a weapon made and then reverted. [*Id.*] The solid fire-control cavity is built first and the rest of the 80% casting is made around this "core" specifically so that their product at no time could be considered a firearm. [*Id.*]

On March 10, 2014, Mr. Karras received notice that the BATFE was in the process of obtaining a warrant against Lycurgan based on the incorrect determination of EP Armory's product. [Karras Decl. ¶ 6.] The BATFE offered to forego obtaining a warrant if Lycurgan was willing to hand over all of EP Armory's 80% lowers and Lycurgan's confidential customer list to the BATFE. [*Id.*] Otherwise, the BATFE indicated it would raid Lycurgan's facilities and pursue criminal charges against Mr. Karras and Lycurgan's employees. [*Id.*]

On March 11, 2014, Lycurgan, through counsel, filed a complaint against the BATFE for deprivation of civil rights, and sought declaratory and injunctive relief. [Ex. A.] The complaint explained why EP Armory's polymer 80% lower receiver is not a firearm. [Ex. A ¶¶ 19-21.] Lycurgan requested a declaratory judgment affirming same. [Ex. A at 10:8-9.] Lycurgan also requested a temporary restraining order against the seizure of Lycurgan's EP Armory inventory and customer list. [Ex. A at 10:11-15.] On the same day, the Honorable Janis L. Sammartino of this Court granted the temporary restraining order. [Ex. B.]

On March 14, 2014, the United States Attorney's Office filed an ex parte application challenging the temporary restraining order. [Ex. C.] The application asserted that "[t]he receiver is the only part of the weapon that is considered a firearm." [Ex. C at 1:26-27.] This is misleading because Lycurgan does not sell receivers - it sells 80% lower receivers, which are not firearms. [Ex. A at Exs. 1-2.] On the same day, Judge Sammartino "clarified" the order, in a manner that essentially vacated the previously entered temporary restraining order which offered to protect Lycurgan from a search and seizure. [Ex. D.]

**C. Search and Seizure**

On March 15, 2014, numerous BATFE agents swarmed Lycurgan's four leased real estate properties located at: (1) 206/208 N. Freeman St., Oceanside, CA 92054; (2) 416 National City Blvd., Unit B, National City, CA; (3) 180 Roymar St., Suite D, Oceanside, CA 92058; and (4) 2420 Industry, Suite A, Oceanside, CA. [Karras Decl. ¶

9; Exs. E-H.] The search warrants granted the BATFE unbridled discretion to search everywhere and seize everything on or near the premises. [See Exs. E-H, attachments A(1)-(4), B.] The executed search warrants contained very little particularity or limitations. [See *id.*] Accordingly, the BATFE agents conducted a broad, sweeping search. [Karras Decl. ¶¶ 9, 12.] During its search, the BATFE seized and carried away a large number of polymer castings, among a multitude of other lawfully owned items that are necessary for the functioning of the business. [*Id* ¶ 9.; Exs. E-H.]

**D. Forfeiture**

On March 27, 2014, the BATFE mailed a "NOTICE OF SEIZURE AND ADMINISTRATIVE FORFEITURE PROCEEDING" to Mr. Karras, in an attempt to withhold the seized items with an estimated value of $290,200.00. [Ex. I]. The forfeiture notice incorrectly describes the seized items as "5,804 Unknown Manufacturer AR Type Receiver/Frame CAL: Unknown SN: None." [Karras Decl. ¶ 10; Ex. I.] Such items are the property of Lycurgan in fee simple absolute. [Karras Decl. ¶ 10.] And they are not "AR Type Receiver/Frame." [*Id.*] The items are not "receivers" or "frames" as such words are defined in the Gun Control Act of 1968, or prior interpretative determinations of the BATFE under such Act. [*Id.*; Ex. A at Exs. 1-2.] On April 5, 2014, Lycurgan, through counsel, filed a verified claim, contesting the forfeiture and requesting the initiation of a judicial proceeding to challenge such forfeiture. [Ex. J.]

The BATFE agents refused to disclose the affidavits and/or other documents supporting the search warrants ("Search Warrant Documents"). [McMillan Decl. ¶ 6.] The BATFE also refused to offer any reason for the non-disclosure. [*Id.*] The search and seizure caused significant and irreparable harm to Lycurgan. [Karras Decl. ¶ 11.] The BATFE confiscated approximately $300,000 worth of inventory. [*Id.*] Also, Lycurgan continues to lose $200,000 in gross sales per month since the raid. [*Id.*] Lycurgan is contacted on a regular basis via Facebook, email and telephonically by people who are worried about their privacy and are afraid to spend money with the business. [*Id.*] Lycurgan continues to struggle as much of its essential business

equipment remains in the possession of the government, and customers are extremely reluctant to do business with Lycurgan due to the ongoing BATFE investigation and forfeiture proceeding. [*Id.*]

### D. Criminal Proceeding Against Tyler Hughes

During the raid of Lycurgan at 2420 Industry, Oceanside, CA, BATFE agents extended its search and seizure to Lycurgan's private parking lot. [McMillan Decl. ¶ 10.] The agents looked inside vehicles, including one that belonged to Tyler Hughes ("Mr. Hughes"), a subtenant of Lycurgan. [*Id.*] The agents demanded Mr. Hughes to open his vehicle. [*Id.*] Under duress, Mr. Hughes complied. [*Id.*] The agents then demanded Mr. Hughes to open a locked box inside his vehicle. [*Id.*] Again, under duress, Mr. Hughes complied. [*Id.*] The box contained certain gun parts. [*Id.*] The BATFE agents seized the items, which lead to criminal charges filed against Mr. Hughes by the San Diego District Attorney's Office. [*Id.* ¶ 16.] Mr. Hughes recently plead guilty to a a criminal charge without the benefit of examining the purported basis for "probable cause" in the search and seizure of his vehicle. [*Id.*]

## II.   LEGAL STANDARD FOR MOTION TO UNSEAL SEARCH WARRANT AFFIDAVIT

Courts have the duty to enforce the Fourth Amendment's protection against unreasonable searches and seizures of individuals, whether accused of a crime or not. (*Weeks v. United States* (1914) 232 U.S. 383, 391, overruled on other grounds by *Mapp v. Ohio* (1961) 367 U.S. 643, 655-56.) A search subject has a pre-indictment Fourth Amendment right to inspect the probable cause affidavit. (*In re Search Warrants Issued on April 26, 2004* (D. Md. 2004) 353 F. Supp. 2d 584, 591.) To deny the search subject of this right to inspection would severely undermine the Fourth Amendment. (*In re Up North Plastics, Inc.* (D. Minn. 1996) 940 F. Supp. 229, 232-33.) Accordingly, the sealing of search warrant materials is "an extraordinary action." (See *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589, omitting citations.)

1    "The search subject's Fourth Amendment right to access of a search warrant
2    affidavit is balanced against the government's right to oppose that access." (*Id.* at 591.)
3    The government must demonstrate that: "1) there is a compelling governmental interest
4    requiring materials to be kept under seal, and 2) there is no less restrictive means, such as
5    redaction, available." (*Id.*, citations omitted.) "[T]he burden is squarely placed upon the
6    government." (*In re Search of 8420 Ocean Gateway Easton*, (D. Md. 2004) 353 F.
7    Supp. 2d 577, 581.) General or conclusory affirmations of a compelling governmental
8    interest are insufficient. (*In re Search Warrants Issued on April 26, 2004*, 353 F. Supp.
9    2d at 591-92; *In re Wag-Aero, Inc.* (E.D. Wisc. 1992) 796 F. Supp. 394, 395.) The
10   government must make a specific factual showing that disclosure of the search warrant
11   affidavit would result in actual harm. (*In re Up North Plastics, Inc.*, 940 F. Supp. at
12   233.)

13        The decision whether to unseal search warrant documents lies within the sound
14   discretion of the court. (*In re Searches of Semtex Indus. Corp.* (E.D. N.Y. 1995) 876
15   F.Supp. 426, 429, citing *Gardner v. Newsday, Inc. (In re Newsday, Inc.)* (2d Cir. 1990)
16   895 F.2d 74, 80.) The court should construe the facts in favor of protecting the liberties
17   secured by the Fourth Amendment. (See *Boyd v. United States* (1886) 116 U.S. 616, 635
18   ["[C]onstitutional provisions for the security of person and property should be liberally
19   construed."].) An individual's Fourth Amendment right to inspect search warrant
20   documents must be carefully preserved, as one court noted:

> It remains the view of this Court that if citizens are
> guaranteed by the Fourth Amendment the right 'to be secure
> in their persons, houses, papers, and effects, against
> unreasonable searches and seizures,' it is inherently a part of
> that right that they be allowed to know whether the Fourth
> Amendment's mandate of probable cause, supported by oath
> or affirmation, has been satisfied. While it is not an
> unqualified right, it is nevertheless a right which should be
> carefully preserved.

26   (*In re Search Warrants Issued August 29, 1994* (S.D. Ohio 1995) 889 F. Supp. 296,
27   301.)

28

III.   **ARGUMENT**

    **A. There is a Significant Need to Examine the Search Warrant Documents.**

        1. <u>Lycurgan Needs to Examine the Search Warrant Documents to</u>
           <u>Challenge the Government's Forfeiture Proceeding.</u>

    The United States Supreme Court "h[e]ld that the constitutional exclusionary rule does apply to such forfeiture proceedings." (*One 1958 Plymouth Sedan v. Pa* (1965) 380 U.S. 693, 696.) There, police officers searched a suspicious-looking vehicle, and found 31 cases of liquor not bearing Pennsylvania tax seals. (*Id.* at 694.) The officers arrested the vehicle owner, and seized the car and liquor. (*Id.*) The government filed a petition for forfeiture of the automobile. (*Id.*) The trial court dismissed the petition for forfeiture because the seizure was unlawfully conducted without "probable cause." (*Id.* at 694-95.)

    The United States Supreme Court affirmed the trial court's holding, relying on *Boyd v. United States* (1886) 116 U.S. 616 (overruled on other grounds) for the proposition that "the Government could not seize evidence in violation of the Fourth Amendment for use in a forfeiture proceeding." (*One 1958 Plymouth Sedan,* 380 U.S. at 698.) The Court also reasoned that a forfeiture proceeding is quasi-criminal in nature, which demands similar constitutional protections as recognized in standard criminal proceedings. (*Id.* at 700-02.) The Court noted that the vehicle, although used to further criminal activity, was not contraband *per se.* (*Id.* at 699.)

    Similarly here, the BATFE initiated a forfeiture proceeding of unlawfully seized items, which are not contraband *per se.* [Ex. I; Ex. A at Exs. 1-2.] On April 5, 2014, Lycurgan filed a verified claim, contesting the forfeiture and requesting the initiation of a judicial proceeding to challenge such forfeiture. [Ex. J.] Lycurgan is entitled to due process under the Fifth and Fourteenth Amendments of the United States Constitution to challenge the legality of the Search and Seizure in the forfeiture proceeding. (*One 1958 Plymouth Sedan,* 380 U.S. at 696; *United States v. James Daniel Good Real Prop.* (1993) 510 U.S. 43, 51 ["[T]he Government seized property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself . . . [which]

must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments."].)
Lycurgan's present challenge of the lawfulness of the Search and Seizure militates in
favor of unsealing the affidavits and any other search warrant documents ("Search
Warrant Documents"). (See *In re Search of Flower Aviation, Inc.* (D. Kan. 1992) 789 F.
Supp. 366, 369 [ordering the search warrant affidavits sealed for 90 days in part because
the movant did not challenge the lawfulness of the search].)

The continued operation of Lycurgan is at stake in the present forfeiture
proceeding. [Karras Decl. ¶ 13.] The business employs approximately 30 employees
whose livelihoods depend on the business. [*Id.*] The unlawful Search and Seizure
substantially depleted Lycurgan's inventory. [*Id.*] Furthermore, the forfeiture
proceeding continues to deter many of Lycurgan's customers, who are now in fear of
being contacted by the BATFE or being subjected to criminal charges. [*Id.*]

Lycurgan's constitutional right and immediate need to challenge the Search and
Seizure is "obviously seriously encumbered by the present seal." (Cf. *In re Wag-Aero,
Inc.,* 796 F. Supp. at 395; *In re Search of Up North Plastics, Inc.*, 940 F. Supp. at 233.)
The significant and needless hardship being suffered by Lycurgan warrants disclosure of
the Search Warrant Documents. (See *id.* ["[T]he harm to the United States of disclosure
at this time is significantly outweighed by the injury to Wag-Aero's due process rights
flowing from nondisclosure."]; see also *In re Search Warrants for 14 Straight Street,
S.W.* (W.D. Mich. 1987) 117 F.R.D. 591, 595 [ordering the government to provide the
movants with copies of all seized documents to protect the movants from suffering
unnecessary hardship].)

2. Unsealing of the Search Warrant Documents to would allow non-party
Tyler Hughes to Evaluate Possible Post-Conviction Relief.

"The very premise of the Fourth Amendment is the right of a citizen to challenge
the intrusion of government authority into his home or workplace." (*In re Search
Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 587; see also *In re Search
Warrant for 2934 Anderson Morris Road* (N.D. Ohio 1999) 48 F. Supp. 2d 1082, 1083;

*In re Up North Plastics, Inc.*, 940 F. Supp. at 232 ["[A] person whose property has been seized pursuant to a search warrant has a right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued."].)

"[T]he Fourth Amendment requirement of probable cause is meaningless without some way for targets of the search to challenge to the lawfulness of that search." (*In re Search of Up North Plastics, Inc.*, 940 F. Supp. at 231-32.)

During the Search and Seizure, the BATFE agents searched a vehicle belonging to Lycurgan's subtenant, Tyler Hughes. [McMillan Decl. ¶ 10.] The agents seized incriminating evidence, which the San Diego District Attorney's Office used to criminally prosecute Mr. Hughes. [*Id.* ¶ 16.] The government procured a guilty plea from Mr. Hughes without revealing the basis for probable cause in searching his vehicle. [*Id.*] There was no apparent reason to suspect Mr. Hughes of any criminal activity, nor was there any apparent reason to suspect his vehicle contained evidence of a crime. [*Id.*]

If the Search and Seizure was illegal, Mr. Hughes may withdraw his guilty plea and adequately defend against the charges. (*People v. Leblanc* (1997) 60 Cal.App.4th 157, 168-70 [reversing the defendant's conviction based an illegal search and seizure, and remanding the case for further hearing on Fourth Amendment exceptions].) An inspection of the Search Warrant Documents would provide Mr. Hughes' an opportunity to withdraw his erroneous guilty plea. (See *id.*)

**B. The Search Warrant Documents Must Be Unsealed to Curb Governmental Misconduct.**

In order to curb governmental misconduct, the Search Warrant Documents must be disclosed. (See *In re Search Warrant for Secretarial Area Outside Office of Gunn* (8th Cir. 1988) 855 F.2d 569, 573 ["[P]ublic access to documents filed in support of search warrants . . . may operate as a curb on prosecutorial or judicial misconduct."]. The BATFE agents unlawfully executed the Search and Seizure without restraint. [McMillan Decl. ¶ 17; Karras Decl. ¶ 12.] The search warrants lacked sufficient particularity. [Exs. E-H.] Numerous agents spent nearly a full day searching every inch

of the premises in each of Lycurgan's four facilities. [McMillan Decl. ¶ 17.]
Furthermore, the BATFE agents expanded their search to Lycurgan's private parking
where they searched a vehicle owned by an individual loosely affiliated with Lycurgan.
[*Id.* ¶ 10.] As discussed above, there was no apparent probable cause for the search of
Mr. Hughes' vehicle that lead to his criminal conviction. [*Id.* ¶ 16.]

The BATFE previously attempted to extort Lycurgan out of its customer list and
over $300,000 in lawfully obtained merchandise under the threat of having its facilities
raided and employees criminally prosecuted. [Ex. A ¶ 19.] Soon after Lycurgan refused
to give in to these unreasonable demands, the BATFE conducted the Search and Seizure
in a seeming act of retaliation and spite. [*Id.*; McMillan Decl. ¶¶ 6, 7, 11, 13, 14, 17.]
Several of the BATFE agents unnecessarily exhibited harassment and intimidation. [*Id.*;
Karras Decl. ¶ 9.] One agent even expressed enjoyment in toppling the business during
the raid. [McMillan Decl. ¶ 13.] The BATFE conducted the Search and Seizure with
carte blanche in an unnecessarily destructive and hostile manner. [*Id* ¶ 17; Karras Decl.
¶ 12.]

Keeping search warrants and their supporting documents open to the public is
vital to maintain public confidence and the proper functioning of the law enforcement
and judicial processes. (See *In re Search Warrant for Secretarial Area Outside Office of
Gunn*, 855 F.2d at 573.) "Search warrants are at the center of pre-trial suppression
hearings, and suppression issues often determine the outcome of criminal prosecutions."
(*Id.*) The major impact that search warrants generally have on a person's freedom and
liberties demands that search warrants are properly obtained and executed. Allowing the
government to seal the search warrant affidavit and other supporting documents
dangerously shields government officials from the risk of accountability. It is unfair for
the BATFE to raid Lycurgan, seize a multitude of its necessary business assets, initiate a
forfeiture proceeding, and arrest and charge an individual, while concealing the basis for
probable cause to conduct the Search and Seizure. (See *In re Search of Up North
Plastics, Inc.*, 940 F.Supp. at 232-33.)

## C. There is No Compelling Governmental Interest to Seal the Search Warrant Documents.

The government cannot prove it has a compelling interest to seal the Search Warrant Documents. It is not incumbent upon Lycurgan to show the Government cannot meet its burden. "The target is not charged with demonstrating his or her urgent need for the affidavit . . . . Rather, the burden is squarely placed upon the government." (*In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d at 581.) Nevertheless, Lycurgan will show why its interest in disclosure outweighs the government's interest in non-disclosure.

The government may have a compelling interest to keep search warrant documents sealed if, for examples, non-disclosure is necessary to maintain an ongoing criminal investigation or the confidentiality of informants whose lives would be endangered if their identities were known. (*In re 14416 Coral Gables Way* (D. Md. 2011) 946 F. Supp. 2d 414, 419-20.) No confidentiality or secrecy is necessary in the instant investigation of Lycurgan. Lycurgan is not an underground weaponry dealership involving a complex network of unknown members. (Contra *In re Searches of Semtex Indus. Corp.*, 876 F. Supp. at 429 [finding a compelling interest "for secrecy [] in a complex, multi-state investigation prior to indictment."].) Rather, Lycurgan is an incorporated business that openly sells 80% lower receivers to the public. [Karras Decl. ¶ 3.] The only issue is whether the 80% lower receivers constitute illegal firearms. Lycurgan contests they do not. [*Id.*] Lycurgan relies on the BATFE's prior determinations that an item is not a firearm until it has been machined in a particular location. [*Id.*] Since the items seized were not machined in this way, it must follow that the items did not meet the definition of a firearm and should not have been seized. [*Id.*]

Lycurgan fully cooperated with the BATFE during the Search and Seizure. [Karras Decl. ¶ 9.] No ongoing investigation or informants are needed. (Cf. *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296 at 301 [denying the government's request to keep the search warrant affidavit sealed because there was no

1   indication any informant's lives were endangered]; *In re Search Warrants Issued on*

2   *April 26, 2004*, 353 F. Supp. 2d at 591-92). The BATFE currently has all the available

3   information in its possession to conclude this investigation. There is no question as to

4   what items Lycurgan sells. The investigation and criminal proceeding with respect to

5   Mr. Hughes has ended with Mr. Hughes' guilty. There is no legitimate reason for the

6   Search Warrant Documents to be sealed. The only plausible purpose for non-disclosure

7   is to conceal the misconduct of the BATFE's unlawful Search and Seizure. The Court

8   must protect the Fourth Amendment, and afford Lycurgan due process to adequately

9   challenge the government's invasion of its properties. [McMillan Decl. ¶¶ 18-19.]

10       In *In re 14416 Coral Gables Way*, the government unsuccessfully attempted to

11  demonstrate a compelling interest for the continued sealing of a search warrant affidavit.

12  (946 F. Supp. 2d at 420.) The government asserted that disclosure of the affidavit

13  would:

14       (1) reveal an ongoing criminal investigation, (2) reveal
         ongoing independent investigations of the Office of Personnel
15       Management ("OPM") and Northrop Grumman; (3)
         undermine the secrecy of grand jury materials; and (4)
16       potentially endanger a cooperating witness.

17  (*Id.*) The court thoroughly analyzed and discussed each basis. (*Id.* at 420-21.) In

18  rejecting each basis, the court reasoned that "the government has provided no evidence

19  specific to this case beyond a general concern that could justify the sealing of affidavits

20  in every criminal investigation." (*Id.* at 421.)

21       Similarly here, nothing about the instant case sets it apart from the average

22  criminal investigation. There is no specific or unique concern that justifies the

23  extraordinary action of sealing the Search Warrant Documents. This is a routine

24  investigation of a publicly operated business. Furthermore, the BATFE raid has

25  generated a great public interest and media coverage. [Karras Dec. ¶ 13]; (See *In re*

26  *Search of 1993 Jeep Grand Cherokee* (D. Del. 1996) 958 F. Supp. 205, 210-11

27  [overruling objections to the court-ordered disclosure of four search warrant affidavits in

28  connection with an ongoing investigation because much of the information was already

1  in the public domain].)  The public has a First Amendment right to access the documents
2  supporting the BATFE's raid of Lycurgan. (See *In re Search Warrant for Secretarial*
3  *Area Outside Office of Gunn*, 855 F.2d at 573.)  More importantly, "the subject of a
4  search warrant is entitled to know the investigative bases for the significant invasion of
5  his or her privacy that a search entails." (*In re 14416 Coral Gables Way*, 946 F. Supp.
6  2d at 423.)  The government can offer no more than general concerns and speculation
7  about the harm that may ensue if the Search Warrant Documents are disclosed.  This is
8  insufficient to override the Fourth Amendment. (*Id.* at 424; *In re Search Warrants*
9  *Issued August 29, 1994*, 889 F. Supp. at 301.)

10  **D.  Sealing the Search Warrant Documents Is Not the Least Restrictive**
11  **Means.**

12      As discussed above, the Search Warrant Documents must be disclosed due to the
13  government's inability to establish a compelling interest in keeping the documents
14  sealed.  Even if the Court finds a compelling governmental interest, the Search Warrant
15  Documents must be disclosed because completely sealing the documents is not the least
16  restrictive means. (*In re Application of N.Y. Times Co. for Access to Certain Sealed*
17  *Court Records* (D. D.C. 2008) 585 F. Supp. 2d 83, 91 ["In this case, the Court agrees
18  that the government has demonstrated a compelling interest – promoting effective law
19  enforcement-in keeping the identity of informants secret.  However, that interest can be
20  accomplished by simply redacting the identity and personal identifiers of the
21  informants."].)  For instance, limited redactions are a less restrictive available means to
22  protect the government's interests. (See *id.*; *In re 14416 Coral Gables Way*, 946 F.
23  Supp. 2d at 428; *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. at
24  592.)

25  **E.  The Continued Sealing of the Search Warrant Documents Is**
26  **Unreasonable.**

27      The search subject's right to inspect the documents supporting a search warrant is
28  qualified. (*In re Search of Up North Plastics, Inc.*, 940 F.Supp. at 232.)  If the

1  government can establish a compelling governmental interest to seal the search warrant

2  documents, and there are no available less restrictive means, the court may seal search

3  warrant documents. (*Id.*) ***Nevertheless***, "[t]he time period to continue the sealing must

4  be both reasonable and definite." (*Id.* at 233; see also *In re Matter of the Search of a*

5  *Residence* (E.D. Wisc. 1988) 121 F.R.D. 78, 80; *In re 14416 Coral Gables Way*, 946 F.

6  Supp. 2d at 420 ["In any event, the subject's Fourth Amendment right must only yield to

7  the government's compelling interest for a reasonable period of time."].)

8          The Search and Seizure occurred on March 15, 2014. [McMillan Decl. ¶ 3.]  By

9  the time this motion is considered, approximately three months will have passed.  This is

10  an unreasonably excessive length of time to seal the Search Warrant Documents.

11  Furthermore, the BATFE has given no indication that it ever intends to disclose the

12  Search Warrant Documents. (See *In re Searches of Semtex Indus. Corp.*, 876 F.Supp.

13  426, 429 ["[D]isclosure should not be postponed indefinitely."]  Despite the

14  government's possession of all the pertinent information in this investigation for about

15  three months, neither Lycurgan's owner, nor Lycurgan's managers or employees, have

16  been indicted.  Accordingly, the continued sealing of the Search Warrant Documents is

17  unnecessary and unreasonable. (See *id.*)

18  / / /

19  / / /

20  / / /

21

22

23

24

25

26

27

28

1

IV.   **CONCLUSION**

2           For the foregoing reasons, Petitioner Lycurgan, Inc. respectfully requests the

3    Court to order the documents supporting the search warrant of Lycurgan, Inc.'s business

4    premises be immediately disclosed in their entirety.  Alternatively, it is respectfully

5    requested that the Court order the government to promptly disclose a limited redacted

6    version of the search warrant documents.

7                                        Respectfully submitted,

8                                        THE MCMILLAN LAW FIRM, APC

9

10   Dated:   6/07/14

11                                        Scott A. McMillan
                                          Attorneys for Petitioner/Movant
12                                        Lycurgan, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28