Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
**The McMillan Law Firm, APC**
4670 Nebo Dr., Suite 200
La Mesa, CA 91941-5230
Tel. 619-464-1500 x 14
Fax. 206-600-5095

Attorneys for Petitioner,
Lycurgan, Inc.



FILED

14 JUN 11 PM 1:30

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DS  DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of:

Ares Armor, 206/208 N Freeman St, Oceanside; Ares Armor, 416 National City Blvd; Ares Armor Warehouse, 180 Roymar St D; and 2420 Industry, Oceanside, CA

Case No.: '14 CV 1424 DMS JLB

ATF Case Number: 784090-13-0011-01
Asset ID: 14-ATF-009592

DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF MOTION TO UNSEAL SEARCH WARRANT DOCUMENTS

Judge: Hon. _____

Dept.: _____

Hearing Date: _____

Hearing Time: _____

## DECLARATION OF SCOTT A. MCMILLAN

I, Scott A. McMillan, declare as follows:

1. I am counsel for Petitioner/Movant Lycurgan, Inc. ("Lycurgan") in the above captioned case, and if called before this court or any other court I could and would testify competently to the following from my own personal knowledge, except as to those matters I state on information and belief, and as to those matters I believe them to be true.

2. This declaration is made in support of Lycurgan's motion to unseal

1  search warrant documents pursuant to the Fourth Amendment.

2       3. On Saturday, March 15, 2014, I received a text message from Dimitrios
3  Karras, a shareholder and the CEO of my client, Lycurgan: "ATF is executing a
4  search warrant."

5       4. I understood from that message that Agents purportedly from the
6  Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") were raiding
7  Lycurgan's four business locations in Oceanside and National City, California.
8  Mr. Karras requested me to come to his Oceanside facilities to monitor the raid
9  and be available to provide legal assistance. At that time I was working at my
10 office in La Mesa. I stopped work and took a 45 minute drive up to Oceanside.
11 Also attending the raid were three colleagues: Sean Smith, Esq., Sandy Meade,
12 Esq. and Bryan Rho, also members of the California Bar.

13      5. Lycurgan has three facilities in Oceanside. On arriving in Oceanside, I
14 dropped Ms. Meade off at Lycurgan's shipping location at 180 Roymar Road,
15 Oceanside, CA 92058. Then, Mr. Smith and I went to the Ares Armor Oceanside
16 Retail Shop at 206/208 N. Freeman Street, Oceanside CA 92054.

17      6. Upon arriving at Ares Armor Oceanside Retail Shop, I stood on the
18 sidewalk outside the business with Lycurgan's employees who had been ejected
19 from the shop. A male wearing a suit and with an ATF badge hanging from his
20 neck from a chain stood at the door, i.e., the Agent. I respectfully requested that
21 the Agent standing in the door, who appeared to be a person of authority, to
22 provide me a copy of the search warrant. I asked him if he would please also
23 provide the supporting affidavit. The Agent provided me a copy of the search
24 warrant but refused to provide me the supporting affidavits and any other
25 documents ("Search Warrant Documents"). I inquired into the reasoning for the
26 non-disclosure, but the Agent was unresponsive. I attempted to explain to the
27 Agent that some of the facilities had sub-tenants. I requested that any items
28 seized be catalogued with the location that they were seized from, in order to
determine who the owner was. The particular Agent was not just dismissive, but

overtly rude. While I spoke to him he chewed his gum with an open mouth, smacking it loudly, bearing a smirk on his face. Although I had introduced myself to him, he refused to give me his name. As I had explained to the Agent, I felt it was important that I be able to establish that Lycurgan had made it known to the officers that there were other entities in some of the locations besides Lycurgan.

7. While I was there, one of the female agents attempted to speak to one of the employees. The employee told her that he did not want to speak to her without my being present. She told him that he was not allowed to have me present. I do not believe that she spoke to him thereafter in my presence.

8. A short while after I had arrived at the Ares Armor Oceanside Retail Shop, Mr. Rho arrived. I introduced Mr. Rho to the employees waiting outside the Ares Armor Oceanside Retail Shop. Then I left to go to the Lycurgan "sewing factory" at 2420 Industry, Suite A, Oceanside, CA.

9. At the Lycurgan Sewing Factory, at 2420 Industry, Suite A, Oceanside, CA, the company has a number of sewing machines placed in rows. From my understanding the company manufactures backpacks, slings, and various textile equipment. Lycurgan's Sewing Factory is but one of a very small number of remaining manufacturers of American made merchandise.

10. When I pulled into the parking lot, I observed a pickup truck with a number of armed men surrounding it. I am informed and believe that the pickup truck is owned by Tyler Hughes. I am informed that Mr. Hughes was a sub-tenant of Lycurgan. I am informed that Mr. Hughes is a former United States Marine "Scout-Sniper" who honorably served this country in engagements in Iraq, Afghanistan, or both. I am also informed that Mr. Hughes presently teaches firearms handling techniques to law enforcement and military. I am informed that although Mr. Hughes was parked on private property, that the ATF agents had threatened Mr. Hughes with seizure of his vehicle unless he allowed the agents to search the locked boxes in the back of his truck. I am informed that Mr.

Hughes's pickup truck was neither owned or under the control of Ares Armor or Lycurgan, Inc. Thereafter, I am informed that the ATF agents took Mr. Hughes's firearms. I am informed that the ATF agents detained Mr. Hughes, ultimately handing him over to the Oceanside Police Department. Mr. Hughes was taken away in handcuffs by the Oceanside Police Department. I am informed that Mr. Hughes had a separately enclosed office adjacent to the sewing factory, with a sign on the door reflecting that it was an independent business. After the ATF agents returned the premises to Lycurgan's employees, I observed that someone, presumably the ATF agents, had beaten a hole with a battering ram through the door in order to gain entry.

11. When I first arrived at the Lycurgan Sewing Factory, I was met at the door by two very tall men wearing street clothing with firearms strapped to their hips and ATF badges hanging from their necks. I introduced myself. They invited me in to the portion of the facility which I understand is the lunchroom. One of them pointed me to a chair and said "sit down." I told him that I found "this intimidating." They had a quizzical expression, and I pointed out that I was simply the lawyer for the company and they had guns and wanted me to sit down. I asked if they were going to sit down as well. They briefly chuckled. One of them pulled up a chair and sat down.

12. While I was at the Lycurgan Sewing Factory at 2420 Industry, Suite A, Oceanside, CA, I waited with Jonathan ZumMallen, the 28 year old President of Lycurgan Inc. I am informed that Mr. ZumMallen is a former United States Amphibious Reconnaissance Marine Sniper who honorably served this country in engagements through two tours in Iraq, and one tour in Afghanistan. Mr. ZumMallen served for six years in the Marines, honorably discharged with the rank of Staff Sergeant. Mr. ZumMallen was dressed wearing slacks, a shirt and a tie. He was seated in the lunchroom. When I first walked in, he had his head in his hands with his elbows on his knees. He looked dejected and depressed as the agents in the other room ravaged his Sewing Factory. We were joined in the

lunchroom by an older ATF agent, I believe his name is Agent Ernest Sanders. He was keeping us company. ATF Agent Sanders seemed sympathetic to Mr. ZumMallen.

13. While we waited in the lunchroom, we all could overhear one of the senior BATFE agents talking on his cell phone. Part of the conversation we all heard was "Searches are fun." I turned to Agent Sanders, and motioning to the forlorn Mr. ZumMallen, said to him words to the effect that: "Searches are fun? Look at this nice young man. Served his country and starts a business. It does not look like he is having fun." The older ATF agent tried to explain, "I think what he means is that searches are more fun than doing paperwork." I reminded him, "but that's not what he said." There was silence. The agent that had been speaking loudly on his cell phone came out from the other room where he had been speaking. It seemed like he had heard us discussing his comments about searches being fun. He began conversing with Jonathan ZumMallen. As it had turned out, the agent that thought "searches were fun" was a former Marine as well. They began discussing their experiences, which I thought was constructive. Indeed, I had hoped it would be therapeutic for Mr. ZumMallen in light of having watched his factory rousted. I was startled to hear the former Marine agent ask Mr. ZumMallen if he "ever got to shoot someone." It seemed like a troubling question for a law enforcement officer to ask. Throughout the course of the interaction with the BATFE agents, Mr. ZumMallen was polite, respectful, and reflected the qualities of a United States Marine in his dealings with the officers.

14. The BATFE raid of Lycurgan began to wane down in the late afternoon. I believe the agents eventually vacated Lycurgan's facilities except for the last one at 2420 Industry, where we were. At some point, Mr. Rho came to the Sewing Factory and joined us in the lunch room. While the BATFE agents discussed what they would do with the items that they had seized while detaining Mr. Hughes, they argued over what criminal charges to assign to Mr. Hughes. In the meantime, Mr. Rho, who is knowledgeable about the law regarding

possession of firearms, informed the BATFE agents that Mr. Hughes's possession of the seized magazines were not illegal, explaining the applicable California statutory authority. I then overheard the agents discussing amongst themselves with what crime they could charge Mr. Hughes. I also overheard the agents attempting to justify why Mr. Hughes's act of disabling the mag release of his firearm was an unlawful act. In essence, the agents seemed intent on making up a crime rather than applying a statute to some actual illegal conduct. Eventually, the Oceanside Police Department arrived and took Mr. Hughes away.

15. Indeed, it seemed during the discussion of what crimes to claim Mr. Hughes committed, some of the agents present dissented. From the sounds of the cursing and raised voices, it seemed that some of the agents present did not feel either the raid or the arrest of Mr. Hughes was justified.

16. I am informed and believe that Mr. Hughes was criminally prosecuted based on gun-related charges. I am informed and believe that Mr. Hughes plead guilty without having the opportunity to inspect the Search Warrant Documents to determine if the BATFE had "probable cause" to search his vehicle. Based on my personal observations, I found nothing about Mr. Hughes or his vehicle to warrant any level of suspicion of criminal activity. Rather, Mr. Hughes appeared to be just a small business person going about his business in a law abiding manner.

17. In the early evening of March 15, 2014, the last BATFE agents vacated the premises at 2420 Industry. My colleagues, together with the officers of Lycurgan, and I inspected the destruction caused by the BATFE raid. Papers were strewn about the desks in the office, contents of boxes were scattered about the Sewing Factory floor, Mr. Hughes's office had its door broken down, Mr. Hughes' storage locker had been pried open and was damaged.

18. I am representing Lycurgan, Inc., with respect to the forfeiture case the BATFE gave notice of. I have submitted the verified claim on behalf of Lycurgan with the BATFE. I anticipate that the BATFE will be promptly filing

its complaint in this Court for the forfeiture of the unfinished lower receivers. I intend to challenge the underlying bases for the seizure of the unfinished lower receivers. I will need the affidavit to do so.

19. I likewise expect that in order to obtain the subject search warrants, the affiant agent made material misrepresentations, prevarications, and engaged in dissembling to the Magistrate that issued the warrant. Depending on what was in the affidavit, and the material misrepresentations relied upon, Lycurgan and others may have rights arising from the improper issuance of the warrant.

I declare under the penalty of perjury according to the laws of the United States, that the foregoing is true and correct and that this declaration was signed on June _7_, 2014, in the County of San Diego, California.

_____
Scott A. McMillan