1  Scott A. McMillan, SBN 212506
2  Michelle D. Volk, SBN 217151
   Sean E. Smith, SBN 288973
3  **The McMillan Law Firm, APC**
   4670 Nebo Dr., Suite 200
4  La Mesa, CA 91941-5230
   Tel. 619-464-1500 x 14
5  Fax. 206-600-5095

6  Attorneys for Petitioner,
   Lycurgan, Inc.

7

FILED

14 JUN 11  PM 1:30

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

05                      DEPUTY

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                 '14 CV 1424 DMS JLB

11 | In the Matter of the Search of: | ATF Case Number: 784090-13-0011-01
12 | Ares Armor, 206/208 N Freeman | Asset ID:          14-ATF-009592
   | St, Oceanside; Ares Armor, 416 | **DECLARATION OF DIMITRIOS A.**
13 | National City Blvd; Ares Armor | **KARRAS IN SUPPORT OF MOTION TO**
   | Warehouse, 180 Roymar St D; | **UNSEAL SEARCH WARRANT**
14 | and 2420 Industry, Oceanside, | **DOCUMENTS**
   | CA |
15 |   | Judge: Hon.
   |   | Dept.:
16 |
17 |   | Hearing Date:
   |   | Hearing Time:
18

19          **DECLARATION OF DIMITRIOS A. KARRAS**

20

21 I, Dimitrios A. Karras, declare as follows:

22      1. I am the Chief Executive Officer of Lycurgan, Inc., a California corporation

23 d/b/a Ares Armor ("Lyrcurgan"), and if called before this court or any other court I could

24 and would testify competently to the following from my own personal knowledge,

25 except as to those matters I state on information and belief, and as to those matters I

26 believe them to be true.

27      2. This declaration is made in support of Lycurgan's motion to unseal search

28 warrant documents pursuant to the Fourth Amendment.

      3. Lycurgan is a small retail business with four locations: three in Oceanside,

1  California and one in National City, California.  In addition, it operates a website
2  (www.aresarmor.com). Lycurgan sells gun parts, holsters, cases, apparel, and
3  backpacks, and a product known as an 80% AR-15 lower receiver.  An 80% lower is an
4  industry term for an unfinished receiver, which is not a firearm according to prior
5  determinations from the Bureau of Alcohol, Tobacco, Firearms and Explosives
6  ("BATFE").  The BATFE previously determined that an item is not a firearm until it has
7  been machined in a particular location.  Since the products sold by Lycurgan are not
8  machined in this way, they are not firearms.  Accordingly, 80% lower receivers do not
9  require a federal firearms license and are not regulated under the Gun Control Act of
10 1968.  The sale of 80% lowers account for the vast amount of Lycurgan's sales and
11 revenue.

12      4.  Lycurgan purchases and resells 80% lower receivers that are manufactured by
13 EP Armory.  EP Armory uses polymer to make its 80% lower receivers, which are no
14 different from any other 80% lower receiver openly sold to the public.  EP Armory's
15 product is in compliance with previous BATFE determinations and is not a firearm.

16      5.  I am informed and believe that the BATFE raided EP Armory based on
17 incorrect information about EP Armory's manufacturing process.  I believe the BATFE
18 was under the false impression that EP Armory was making a firearm and then reverting
19 it back to the 80% stage by filling in the fire-control cavity.  At no point during the
20 manufacturing process by EP Armory is a weapon made and then reverted.  The solid
21 fire-control cavity is built first and the rest of the 80% casting is made around this "core"
22 specifically so that their product at no time could be considered a firearm.

23      6.  On March 10, 2014, my attorney Jason Davis notified me that the BATFE was
24 in the process of obtaining a warrant against Lycurgan based on the incorrect
25 determination of EP Armory's product.  The BATFE requested for me to turn over all of
26 EP Armory's 80% lowers and Lycurgan's confidential customer list in exchange for the
27 BATFE's agreement to forego applying for a warrant.  Otherwise, the BATFE indicated
28 it would raid Lycurgan's facilities and pursue criminal charges against me and
Lycurgan's employees.

784090-13-0011-01         Declaration of Dimitrios Karras                    2

7. On March 11, 2014, Lycurgan, through counsel, filed a complaint against the BATFE for deprivation of civil rights, and sought declaratory and injunctive relief. A true and correct copy of the complaint is attached hereto as **Exhibit "A."** The Honorable Janis L. Sammartino of this Court granted Lycurgan's request for a temporary restraining order. A true and correct copy of the Court's order granting the temporary restraining order is attached hereto as **Exhibit "B."**

8. On March 14, 2014, the United States Attorney's Office filed an ex parte application challenging the temporary restraining order. A true and correct copy of the government's ex parte application is attached hereto as **Exhibit "C."** On the same day, Judge Sammartino clarified her order, and effectively lifted the previously entered temporary restraining order which offered to protect Lycurgan from a search and seizure. A true and correct copy of the Court's order granting the government's ex parte application is attached hereto as **Exhibit "D."**

9. On March 15, 2014, numerous BATFE agents swarmed Lycurgan's four leased real estate properties located at: (1) 206/208 N. Freeman St., Oceanside, CA 92054; (2) 416 National City Blvd., Unit B, National City, CA; (3) 180 Roymar St., Suite D, Oceanside, CA 92058; and (4) 2420 Industry, Suite A, Oceanside, CA. True and correct copies of the four search warrants for the above-referenced addresses are attached hereto, respectively as **Exhibits "E," "F," "G," and "H."** The BATFE agents conducted a broad, sweeping search. During its search, the BATFE seized and carried away a large number of polymer castings, among a multitude of other lawfully owned items that are necessary for the functioning of the business. Lycurgan fully cooperated with the BATFE agents during the raid despite the intimidation and disrespect exhibited by the agents.

10. On March 27, 2014, the BATFE mailed me a "NOTICE OF SEIZURE AND ADMINISTRATIVE FORFEITURE PROCEEDING," stating it intends to withhold the seized items with an estimated value of $290,200.00. A true and correct copy of the forfeiture notice is attached hereto as **Exhibit "I."** The forfeiture notice incorrectly describes the seized items as "5,804 Unknown Manufacturer AR Type Receiver/Frame

784090-13-0011-01        Declaration of Dimitrios Karras

1  CAL: Unknown SN: None." Such items are the property of Lycurgan in fee simple
2  absolute. And they are not "AR Type Receiver/Frame." The items are not "receivers" or
3  "frames" as such words are defined in the Gun Control Act of 1968, or prior
4  interpretative determinations of the BATFE under such Act. On April 5, 2014,
5  Lycurgan, through counsel, filed a verified claim, contesting the forfeiture and
6  requesting the initiation of a judicial proceeding to challenge such forfeiture. A true and
7  correct copy of Lycurgan's verified claim, contesting the forfeiture is attached hereto as
8  **Exhibit "J."**

9         11. The BATFE raid of Lycurgan caused substantial and irreparable harm to the
10  business. Our direct losses can be easily calculated as follows: Approximately $300,000
11  in lost inventory plus a loss of $200,000 in gross sales per month since the raid. The
12  effect of customers who no longer want to purchase due to fear is very hard to calculate.
13  Our sales are down across the board and we are contacted on a regular basis via
14  Facebook, e-mail and telephonically by people who are worried about their privacy and
15  are afraid to spend money with us. Furthermore, I am informed customers are extremely
16  reluctant to purchase anything from the store due to the ongoing BATFE investigation
17  and forfeiture proceeding.

18         12. At the National City Ares Armor location, the BATFE agents damaged the
19  door frames of the glass doors in order to enter the building. Rather than simply break
20  the glass, which would be able to be replaced at a much more inexpensive manner the
21  ATF caused substantial destruction. Also, the BATFE agents took material that was not
22  on the warrant, or on any inventory. They were observed using the store's property to
23  pack up the documents that they seized. Specifically, apparently not bringing storage
24  boxes for the material that they intended to seize, the ATF agents took the plastic storage
25  bins the store used for its business. There was also missing Rudius unfinished handgun
26  frames missing, which were never accounted for in the inventory. In other words, the
27  raiders at the National City location engaged in looting and vandalism.
28

13. The continued operation of Lycurgan is at stake in the present forfeiture proceeding. The business employs approximately 30 employees whose livelihoods depend on the business. The unlawful search and seizure substantially depleted Lycurgan's inventory, and continues to negatively affect sales. The public has taken a substantial interest in the BATFE raid as demonstrated by the public protests conducted at the National City location that were against the BATFE. Also, various news networks have covered stories on the raid via online and television media.

I declare under the penalty of perjury according to the laws of the State of California, that the foregoing is true and correct and that this declaration was signed on June 5, 2014, in the County of San Diego, California.

Dimitrios A. Karras

ALAN BECK
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (619) 971-0414
Email: alan.alexander.beck@gmail.com

Attorney for Plaintiff Lycurgan Inc.

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTHERN CALIFORNIA

| | |
|---|---|
| Lycurgan Inc. DBA Ares Armor | ) |
| Plaintiff, | ) |
| vs. | ) |
| B. Todd Jones in his Official Capacity As Head of The BATFE. | ) |
| ; | ) |
| Defendant. | ) |
| | ) |

**'14CV0548 JLS  BGS**

CASE NO.
COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF

## COMPLAINT

COME NOW the Plaintiff, ARES ARMOR, on behalf of their customers, by and through their undersigned counsel, and complain against Defendants B. Todd Jones in his Official Capacity As Head of the San Diego Branch of the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE); and JOHN DOE 1-10 as follows:

ARES ARMOR PI - 1

## **INTRODUCTION**

1.     The *Gun Control Act of 1968* was enacted to reduce crime, not place an undue burden on legal firearms owners from legal enjoyment of firearms.  See GCA68, 90-618 sec. 101.

2.     The GCA regulates "firearms". Id.  The term **"firearm"** means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. See GCA68, 90-618, Ch. 44, Sec. 921(3).

3.     An 80% receiver is a piece of material that resembles a receiver/frame of a firearm but that is not complete and requires finish work to be considered a lawful firearm.

4.     80% receivers/frames account for a vast amount of the firearms industry's sales and revenue.  The most commonly sold 80% receiver is that for the AR-15 rifle.

ARES ARMOR PI - 2

5. Ares Armor is a dealer of firearms parts and accessories including 80% receivers, which do not require a federal firearms license and are **not** regulated under the GCA.

6. On or about March 10, 2014 Ares Armor discovered that EP Armory, a manufacturer of polymer AR-15 80% receivers, had it's facilities raided by the BATFE under the guise that EP Armory was unlawfully manufacturing firearms based on EP Armory's manufacturing of 80% polymer lower receivers. Shortly thereafter, Ares Armor attorney (Jason Davis) alerted Ares Armor that its facilities were to be raided for the sole reason that Ares Armor is a customer of EP Armory. This is despite the fact that Mr. Davis sent a letter the BATFE explaining that the BATFE's interpretation of the EP Armory manufacturing process to be incorrect.

7. Mr. Davis informed the CEO of Ares Armor, Dimitrios Karris that Ares Armor would be spared from having its facilities raided and criminal charges brought against its staff, if and only if, Ares Armor turn over all its inventory of EP Armory's products and the Ares Armor customer list with detailed information of all Ares Armor customers.

8. This recent attempt is the second attempt by the BATFE to attain the Ares Armor Customer list.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

10.     This Court has personal jurisdiction over the BATFE as it is a government agency.

11.     This Court also has personal jurisdiction over each of the Defendants because they, inter alia, acted under the color of laws, policies, customs, and/or practices of Oceanside and/or within the geographic confines of the Oceanside.

12.     Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

13.     Plaintiff, **Lycurgan Inc. DBA Ares Armor,** is a business in Oceanside, California that primarily deals in gun parts, holsters, cases, apparel, and backpacks and a product referred to as a "80% lower (receiver)".  These are semi formed pieces of metal or plastic that are shaped into the rough form of a lower receiver. These receivers require a special kit mounted in a drill press to finish the product or building the gun.  The time required to complete the project ranges from 3 to 5 hours, the remaining 20%. *Exhibits 9 &10: Store Products*

14.     Defendants John Doe 1-10 are sued in both their personal and official capacity as administrators of the Gun Control Act of 1968.  John Doe 1-10 are

ARES ARMOR PI - 4

responsible for executing, maintaining and administering the guidelines established in the Gun Control Act of 1968 and may be participants in the unconstitutional acts and practices discussed within this complaint.

15.  Defendants John Doe 1-10, because of their enforcement actions, are accordingly liable to Plaintiffs for damages and other relief as set forth in this Complaint.

16.  Plaintiffs have reviewed all documents available to them and have made a diligent and good faith effort to ascertain said persons' full names and identities; however, Plaintiff has been unable to ascertain the identities of said Defendants. The names, capacities, and relationships of defendants named as Doe Defendants will be alleged by amendment to this Complaint when they are revealed and thus properly identified.

17.  Plaintiffs reserve the right to amend this Complaint to add such parties as his true identities and capacities are ascertained through discovery or otherwise.

18.  Defendant B. Todd Jones is the director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE) a federal agency established in 1972 and who enforces federal laws pertaining the regulation of firearms.

19.  Employees of the BATFE have attempted to extort Ares Armor out of its customer list and over $300,000 in lawfully obtained merchandise under threat of having its facilities raided and employees prosecuted criminally on their claim that

ARES ARMOR PI - 5

Ares Armor has been selling the EP Armory product which the BATFE recently deemed to be a firearm based on a faulty interpretation of how the product is manufactured.


### EP Armory's Polymer 80% Lower Receiver is Not a Firearm

19.  The BATFE has consistently determined that the machining operations that cannot be performed in order to not be considered a firearm are as follows:

      1. Milling out of fire-control cavity. (See Exhibit 3)
      2. Selector-lever hole drilled. (See Exhibit 7)
      3. Cutting of trigger slot. (See Exhibit 4)
      4. Drilling of trigger pin hole. (See Exhibit 6)
      5. Drilling of hammer pin hole. (See Exhibit 5)
(See Exhibit 1 and Exhibit 2 for BATFE letters regarding 80% Receivers)

20.  Additionally, the BATFE has consistently determined that operations interpreted to allowed such that the receiver is *not* considered to be a firearm are as follows:

      1. Front and rear assembly/pivot pin holes drilled.☐
      2. Front and rear assembly/pivot-detent pin holes drilled.☐
      3. Magazine-release and catch slots cut.☐
      4. Rear of receiver drilled and threaded to accept buffer tube.
      5. Buffer-retainer hole drilled.☐
      6. Pistol-grip mounting area faced off and threaded.☐
      7. Magazine well completed.☐
      8. Trigger guard machined.☐
      9. Receiver end-plate area machined.
      10. Pistol-grip mounting area threaded.
      11. Selector-lever detent hole drilled.
(See Exhibit 1 and Exhibit 2)

ARES ARMOR PI - 6

20 The EP Armory Polymer 80% lower receiver(s) conform to **all** the BATFE's parameters for a product that does not constitute a firearm under the GCA68 and **does not** have any of the illicit features which the BATFE would consider to push the receiver into a category that would classify it as a firearm.

21 (See Exhibits 3-8 **PHOTOS**)

### The BATFE's recent attempts to classify the EP Armory 80% lower receiver as a firearm is an attack on lawful sales of a product which is not a firearm.

22. The BATFE is attempting to acquire the Ares Armor customer list under the guise that one of the products sold is an unlawful firearm. The BATFE's explanation for requiring the email list is to ensure that no persons prohibited from firearms ownership have purchased the EP Armory Polymer 80% lower receivers. If the BATFE truly believes that the EP Armory 80% lower receiver is an unlawful firearm, why then are they only concerned with prohibited persons? One of the core objectives of the BATFE is to ensure that no illegal firearms are circulated in commerce. Thus, the BATFE should be concerned will all EP Armory products

ARES ARMOR PI - 7

sold if they truly believe it to be an illegally manufactured firearm. Since this is not the case it appears that the BATFE is seeking to acquire the Ares Armor customer list for some other non-disclosed reason which appears to be nefarious in nature.

23.    Ares Armor specifically states on the Aresarmor.com website that if the company discovers a customer is prohibited from firearms ownership that they will be reported to the authorities. Additionally, parties purchasing 80% products from the aresarmor.com website must check a box that they are not prohibited from owning firearms.    Ares Armor does not seek to promote individuals prohibited from firearms ownership attaining firearms. Thus, the BATFE has no reason to believe that Ares Armor has any people prohibited from owning guns on its list.

## FIRST CAUSE OF ACTION

### Violation of Fourth Amendment

24. Paragraphs 1 through 23 are incorporated as though fully stated herein.

25. "[T]he basic purpose of th[e Fourth] Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v Mun. Court*, 387 U.S. 523, 528 (1967).

ARES ARMOR PI - 8

26. Ares Armor has a protected privacy right in its customer list.

27. Ares Armor has a protected right to be free from seizure of its inventory and customer list.

21. Defendant's actions in enforcing the Code against Ares Armor is a violation of the Fourth Amendment to the United States Constitution and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

22. The actions described herein amount to a clear and present danger to civil liberties. The actions complained herein infringe upon the civil rights guaranteed by the Fourth Amendment to the United States Constitution and must be found unconstitutional and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## Second Cause of Action

23. **Ares Armor Sues on Behalf of Its Customers**

24. **Ares Armors Customers have a reasonable expectation of privacy in purchasing goods without government gaining their private information.**

25. **Accordingly, BATFE's planned action violates the rights of Ares Armor's Customers.**

ARES ARMOR PI - 9

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     That a jury be empaneled to decide contested factual issues in this matter.

2.     Declaratory judgment that the EP Armory 80% lower receiver is not a firearm.

3.     A temporary restraining order compelling Defendants and/or their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction from seizing the Ares Armor EP Armory Inventory and customer list.

4.     Preliminary and/or permanent injunctive relief compelling Defendants and/or their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from seizing the Ares Armor EP Armory Inventory and customer list.

5. Such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

6. Attorney's fees, statutory fees and costs pursuant to 42 U.S.C. § 1988.

ARES ARMOR PI - 10

Dated: March 11th, 2014 Respectfully Submitted,

By: /s/ Alan Beck

ALAN BECK Esq.
4780 Governor Drive
San Diego, California 92122
(619)971-0414

ARES ARMOR PI - 11

CERTIFICATE OF SERVICE On this, the 11th day of March , 2014 , I served the foregoing pleading by electronically filing it with the Court's CM/ECF system, which generated a Notice of Filing and effects service upon counsel for all parties in the case. I declare under penalty of perjury that the foregoing is true and correct.

s/ Alan Beck
Alan Beck



*Exhibit*

U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

www.atf.gov

903050:WJS
3311/300833

July 15, 2013

Mr. Tilden Smith
80 Percent Arms
202 East Alton Avenue
Suite A
Santa Ana, CA 92707

Dear Mr. Smith,

This is in reference to your correspondence, with enclosed samples, to the Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB).
In your letter, you asked for a classification of the partially completed AR-type receivers
your company is planning to manufacture (see enclosed photos). Specifically, you want
to know if the three submitted items, identified as samples 1, 2, and 3 (and reviewed
below) would be classified as "firearms" under the Gun Control Act of 1968 (GCA).

### SAMPLE #1

During the examination of this sample, FTB found that the following machining/drilling
operations had been performed:

1. Front and rear assembly/pivot pin holes drilled.
2. Front and rear assembly/pivot-detent pin holes drilled.
3. Magazine-release and catch slots cut.
4. Rear of receiver drilled and threaded to accept buffer tube.
5. Buffer-retainer hole drilled.
6. Pistol-grip mounting area faced off and threaded.
7. Magazine well completed.
8. Trigger guard machined.
9. Receiver end-plate area machined.
10. Pistol-grip mounting area threaded.
11. Selector-lever detent hole drilled.

Mr. Tilden Smith                                                    Page 2

The machining operations <u>not</u> yet performed are as follows:

1. Milling out of fire-control cavity.
2. Selector-lever hole drilled.
3. Cutting of trigger slot.
4. Drilling of trigger pin hole.
5. Drilling of hammer pin hole.

The FTB examination of your submitted casting found that <u>**SAMPLE #1**</u> is not sufficiently complete to be classified as the frame or receiver of a firearm and thus would <u>not</u> be a "firearm" as defined in the GCA.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_____

*Martinsburg, WV 25405*

www.atf.gov

903050: WJS
3311/300627

May 17, 2013

Mr. Doug Hughes
Operations Manager
Kenney Enterprises, Inc
4343 East Magnolia Street
Phoenix, AZ 85034

Dear Mr. Hughes,

This is in reference to your correspondence, with enclosed sample, to the Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB).
In your letter, you asked for a classification of the submitted, partially completed
AR-type receiver your company is planning to manufacture. Specifically, you wish to
know if this item would be classified as a "firearm" under the Gun Control Act of 1968
(GCA).

During the examination of your sample, FTB found that the following machining/drilling
operations performed on the submitted sample:

1. Front and rear assembly/pivot pin holes drilled.
2. Front and rear assembly/pivot detent pin holes drilled.
3. Selector-retainer hole drilled.
4. Magazine release and catch slots cut.
5. Trigger-guard holes drilled.
6. Rear of receiver drilled and threaded to accept buffer tube.
7. Buffer-retainer hole drilled.
8. Pistol-grip mounting area faced off, drilled, and threaded.
9. Magazine well completed.

The machining operations not yet performed are as follows:

1. Milling out of fire-control cavity.
2. Drilling of selector-lever hole.

3. Cutting of trigger slot.
4. Drilling of trigger pin hole.
5. Drilling of hammer pin hole.

The FTB examination of your submitted casting and diagrams found that your submitted item will not be sufficiently complete to be classified as the frame or receiver of a firearm and thus would <u>not</u> be a "firearm" as defined in the GCA.

In closing, we should point out that the information found in correspondence from our Branch is intended only for use by the addressed individual or company with regard to a specific scenario described within that correspondence.

To facilitate return of your sample, please provide FTB with the appropriate FedEx account information within 60 days of receipt of this letter.

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request. Please do not hesitate to contact us if additional information is needed.

Sincerely yours,

Earl Griffith

Chief, Firearms Technology Branch

Exhibits ARE Photographs OF a EP Armory Polymer 80% Lower Receiver.

## Exhibit 3



## Exhibit 4



## Exhibit 5



Exhibit 6



NO TRIGGER PIN HOLE.
EXCESS MATERIAL WHERE
HOLE WOULD BE

Exhibit 7



NO SELECTOR LEVER HOLE.
EXCESS MATERIAL WHERE HOLE
WOULD BE

Exhibit 8





Actual Ep ARmory
80% lower
Recievers



← Exhibit 9

Exhibit 10
←



# Declaration of Dimitrios Karras, CEO Ares Armor

In regards to the events surrounding Ares Armor's interaction with EP Armory's products and the threats made towards Ares Armor by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE.) The following declarations are true and correct to the best of my knowledge.

I, Dimitrios Karras, state:

1. During a meeting with the BATFE around the end of 2012 that was unrelated to EP Armory's product, the Agent that was present very strongly requested that I turn over Ares Armor's customer list. He intimidated me with the possibility of criminal charges if he was not satisfied. This was the first attempt the BATFE made to intimidate Ares Armor into turning over private customer information.

2. An 80% lower is an industry term for an unfinished receiver that is not considered to be a firearm.

3. EP Armory manufactures an 80% lower receiver made from polymer.

4. Ares Armor purchases and then resells many products one of which is the 80% Polymer Lowers that are made by EP Armory.

5. In the regular course of business I have seen many different 80% AR-15 receivers.

6. EP Armory's product is no different than standard 80% receivers that are sold openly and that the BATFE has consistently determined to not be a firearm. EP Armory's product is in compliance with previous BATFE Determinations and is not a firearm.

7. The BATFE has Raided EP Armory based on incorrect information about EP Armory's manufacturing process. The determination letter written by the BATFE incorrectly classified the EP Armory product as a firearm based on faulty information. The BATFE was under the impression that EP Armory was making a firearm and then reverting back to the 80% stage by filling in the fire-control cavity. At no point during the manufacturing process by EP Armory is a weapon made and then reverted. The solid fire-control cavity is built first and the rest of the 80% casting is made around this "core" specifically so that their product at no time could be considered to be a firearm.

    a. As can be seen in Exhibit 1-3. The BATFE has consistently determined that the machining operations that cannot be performed in order to not be considered a firearm are as follows:

        1. Milling out of fire-control cavity.

        2. Selector-lever hole drilled.

DECLARATION OF DIMITRIOS KARRIS PI - 1

3. Cutting of trigger slot.

4. Drilling of trigger pin hole.

5. Drilling of hammer pin hole.

b. EP Armory's product is consistent with the BATFE's many previous determinations

c. At no time during EP Armory's manufacturing process are any of the aforementioned 5 operations in a state that could cause a reasonable person to believe that EP Armory's product would be considered a firearm.

8. The BATFE has been appropriately informed of their mistake. However, even though they have no determination that is based on fact, they are knowingly using their fiction based determination to intimidate Ares Armor with threats in order to inappropriately gain access to information that is private and should be protected.

9. I received communication on or about 3/10/2014 from our legal counsel (Jason Davis) that the BATFE was in the process of obtaining a warrant against Ares Armor based on their incorrect determination of EP Armory's Product. I was advised that the BATFE had offered to forego obtaining a warrant if Ares Armor was willing to:

a. Hand over all of EP Armory's 80% Lowers

b. Turn over Ares Armor customer's private information to the BATFE.

In exchange for turning over our customer's private information the BATFE said that they would not "raid" Ares Armor's facilities and would not pursue "criminal" charges. This made me feel as if **I was being extorted**. I agreed to their terms in order to delay an impending and unjust raid against Ares Armor long enough to obtain legal protection under the law.

10. I have been unjustly threatened with raids and criminal charges in an attempt by the BATFE to obtain information that is private and protected. The BATFE has expressed interest in obtaining Ares Armor's customer list in the past and is now attempting to strong-arm us with undue threats based on information they know to be incorrect.

11. I am now in constant fear for the safety of my employees, my customers and myself.


Executed March, 10, 2014 Oceanside, CA

I declare under penalty of perjury that the foregoing is true and correct.


DECLARATION OF DIMITRIOS KARRIS PI - 2

1
2
3
4
5
6
7
8
9            **UNITED STATES DISTRICT COURT**

10         **SOUTHERN DISTRICT OF CALIFORNIA**

11   LYCURGAN INC. DBA            CASE NO. 14-CV-548 JLS (BGS)

12   ARES ARMOR,

                         **ORDER: (1) GRANTING**

13                  Plaintiff,    **TEMPORARY RESTRAINING**

        vs.                 **ORDER; (2) SETTING**

14                          **BRIEFING SCHEDULE; AND**

                         **(3) ORDERING PRELIMINARY**

15   B. TODD JONES in his official      **INJUNCTION HEARING**

  capacity as Head of the San Diego

16   Bureau of Alcohol, Tobacco, Firearms   (ECF No. 2)

  and Explosives; and DOES 1–10,

17

                 Defendants.

18

19      Presently before the Court is Plaintiff Lycurgan Inc. DBA Ares Armor's ("Ares

20 Armor") Motion for Temporary Restraining Order ("TRO"). (Mot. for TRO, ECF No.

21 2.) Ares Armor seeks to restrain Defendants B. Todd Jones—Head of the San Diego

22 Field Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives—and Does

23 1 through 10 (collectively, "ATF") from seizing the Ares Armor customer list and

24 approximately $300,000 in inventory ("the Property") at 11 a.m. on Wednesday, March

25 12, 2014. (*Id.* at 1–2.)

26      Having reviewed the materials submitted, the Court **HEREBY ORDERS** that

27 any steps to deprive Ares Armor of the Property **SHALL NOT** be executed until after

28 the Court holds a hearing as to whether a preliminary injunction should issue. ATF

**SHALL FILE** an opposition to Ares Armor's Motion for TRO <u>on or before Friday,</u>
<u>March 14, 2014</u>. Ares Armor **MAY FILE** a reply, if any, <u>at or before 9 a.m. on</u>
<u>Monday, March 17, 2014</u>. The parties are **HEREBY ORDERED** to appear for a
preliminary injunction hearing on <u>Thursday, March 20, 2014</u>, at 1:30 p.m. in Courtroom
4A.

      **IT IS SO ORDERED**.

DATED: March 11, 2014

                                Honorable Janis L. Sammartino
                                United States District Judge

14cv548

1  LAURA E DUFFY
   United States Attorney
2  DANIEL E. BUTCHER
   Assistant U.S. Attorney
3  California Bar No. 144624
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101
5  Tel: (619) 546-7696
   Fax: (619) 546-7751
6  Email: Daniel.Butcher@usdoj.gov

7  Attorneys for the United States

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  LYCURGAN INC. dba ARES ARMOR,            Case No.: 14CV548 JLS (BGS)

12          Plaintiff                        EX PARTE APPLICATION FOR
                                             ORDER (1)) EXTENDING
13          v.                               INJUNCTION TO PREVENT
                                             DIVESTMENT OF SUBJECT MATTER
14  B. TODD JONES, in his official capacity  OF TEMPORARY RESTRAINING
    as Head of the San Diego Bureau of       ORDER, AND (2) CLARIFYING THAT
15  Alcohol, Tobacco, Firearms and           TEMPORARY RESTRAINING ORDER
    Explosives; and DOES 1-10,               DOES NOT RESTRAIN LAWFUL
16                                           CRIMINAL PROCEEDINGS
          Defendants.
17

18

19

20

21      The Bureau of Alcohol, Tobacco and Firearms (ATF) is conducting a lawful

22  criminal investigation of the illegal manufacture, distribution, sale, and possession of

23  AR-15 variant lower receivers, which are considered firearms under the Firearms

24  Control Act, 18 U.S.C. 921(a)(3).

25      An AR-15 is the semi-automatic, civilian version of the .223 caliber M-16

26  machine gun used by the United States Military.  The receiver is the only part of the

27  weapon that is considered a firearm; therefore, it is the part of the weapon that must

28  bear a manufacturer's mark and a serial number. (All other parts of the firearm are

1  considered parts, not firearms.)  But the lower receivers at issue in ATF's

2  investigation do not bear either a manufacturer's mark or serial number.

3      Dealing in firearms without a license is illegal under 18 U.S.C. § 922(a)(1)(A).

4  Dealers of firearms are required to conduct a background check prior to transfer under

5  18 U.S.C. § 922(t)(1).  And, because these firearms were manufactured for sale, they

6  are required to have a manufacturer's marking and a serial number.  Otherwise, there

7  is no way to track them if they are involved in a crime.  18 U.S.C. § 923(i).

8      Plaintiff Lycurgan Inc, dba Ares Armor ("Ares Armor") is part of ATF's

9  investigation because it is in possession of approximately 6,000 of these unserialized

10  AR-15 lower receivers.  Further, Ares Armor is not a federal firearms licensee, so it

11  cannot legally engage in the business of dealing firearms, let alone ones that do not

12  bear the required manufacturer's mark and serial number.

13      On March 10, 2014, ATF Division Counsel contacted an attorney representing

14  Ares Armor about the AR-15 lower receivers and Ares Armor agreed to voluntary

15  surrender them.  See Declaration of Paul Ware.  This was in lieu of obtaining a search

16  warrant for these items pursuant to Fed. R. Crim. P. 41.  Id.  Ares Armor's attorney

17  agreed that it would turn over the firearms on March 12, 2014.  Id. This agreement

18  was confirmed at 5:00 p.m. on March 11, 2014.  Id.

19      But, while representing to ATF that an agreement was in place for the voluntary

20  surrender of the firearms, Ares Armor was simultaneously preparing a lawsuit and

21  applying for a temporary restraining order preventing ATF from taking possession of

22  this contraband.  Indeed, Ares Armor's CEO freely admits to this ruse.  See

23  Declaration of Dimitrios Karras (ECF #1-2 at 2, par. 9(b) ("I agreed to their terms in

24  order to delay an impending and unjust raid against Ares Armor long enough to obtain

25  legal protection under the law.").  When an ATF agent appeared to take possession of

26  the illegal firearms as agreed on March 12, 2014, the ATF agent was presented with a

27  copy of the Temporary Restraining Order issued by the Court on March 11, 2014.[i]

28

*Ex Parte Motion*

2

*14cv548*

The illegal firearms thus remain in possession of Ares Armor. And while this Court's order prevent ATF from taking "any steps" to deprive Ares Armor of this contraband, the order does not reciprocally prohibit Ares Armor from destroying, transferring, selling, or otherwise divesting itself of this evidence and contraband, and, further, allows Ares Armor to remain in possession of this contraband.

The United States therefore moves this Court for an order (1) prohibiting Ares Armor from divesting itself of the subject matter of the Court's temporary restraining order, and (2) clarifying that the temporary restraining order does not enjoin lawful criminal proceedings, including the seizure of this evidence and contraband pursuant to a lawfully executed search warrant issued by a sworn United States Magistrate Judge pursuant to Fed. R. Crim. P. 41.

The issuance of a warrant eliminates any arguable Fourth Amendment objection to ATF taking possession of the contraband. Compare Plaintiff's Memorandum in Support of Tempoary (sic) Injunction at 4 (arguing that ATF's planned seizure would violate the Fourth Amendment), with Marks v. Clarke, 102 F.3d 1012, 1030 (9th Cir. 1996) (obtaining particularized search warrant satisfies Fourth Amendment). And allowing ATF to proceed with its lawful criminal investigation would also avoid having Plaintiff wrongfully use a civil proceeding to enjoin a criminal proceeding. See Younger v. Harris, 401 U.S. 37, 45 (1971) (only when the moving party demonstrates equitable relief is "absolutely necessary for [the] protection of constitutional rights," and only "under extraordinary circumstances, where the danger of irreparable loss is both great and immediate," may a court civilly enjoin a criminal prosecution.); Henkel v. Bradshaw, 483 F.2d 1386, 1388 (9th Cir. 1973) (same). See also Stefanelli v. Minard, 342 U.S. 117, 120 (1951) ("the maxim that equity will not

1  enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-
2  American law.").

3         DATED:    March 14, 2014           Respectfully submitted,

5                           LAURA E. DUFFY
                         United States Attorney

7                         s/ Daniel E. Butcher
                       DANIEL E. BUTCHER
8                         Assistant United States Attorney
                       Attorneys for Defendant

---

9  [i]    ATF received no notice of either the complaint or the application for a
10  temporary restraining order.  Although plaintiff's counsel attached a "Certificate of
11  Service" to the complaint representing that the mere filing of the complaint generated
a "Notice of Filing and effects service upon counsel for all parties in the case," see
12  Complaint (ECF #1) at 12, no such counsel are exist in the ECF system when the
complaint is filed.

Declaration of Paul J. Ware

1. I am the Division Counsel for the Los Angeles Field Division, Bureau of Alcohol, Tobaccos, Firearms and Explosives (ATF). In my capacity as the Division Counsel, I provide legal advice and assistance to ATF Special Agents in the performance of their law enforcement duties.

2. On or about 7 March 2014, I received a phone call from Attorney Jason Davis asking if my Division was executing a search warrant in Fresno on one of his clients, EPS Arms. I informed Attorney Davis that Fresno was in the San Francisco Field Division and that I did not have any information concerning the search warrant but was aware that ATF had recently determined that EPS Arms was manufacturing receivers without a Federal Firearms Manufacturing license. Attorney Davis explained that ATF's determination letter incorrectly described the manufacturing process and that he had requested reconsideration of the determination. I responded that ATF HQ would have to address that concern but because Fresno was in the San Francisco Field Division, he should call that Division Counsel if he wanted to discuss the search warrant further. I then provided him the name and phone number for the San Francisco Division Counsel.

3. On or about 10 March 2014, I received a call from ATF Special Agent Gordon Geerdes informing me that records seized at EPS Arms indicated that several thousand receivers had been shipped to Ares Armor in Oceanside/National City. He wanted my opinion on calling Attorney Davis to see if Ares Armor would consent to turn over the firearms and records of sales of those firearms. In the past we had a good working relationship with both Attorney Davis and Ares Armor so I thought the idea had merit. I discussed reaching out to Attorney Davis with the Resident Agent in Charge and the Assistant Special Agent in Charge and it was decided that I should call Attorney Davis to see if Ares Armor would like to voluntarily surrender the firearms and records.

4. I called Attorney Davis on 10 March 2014 and explained that records at ESP Arms indicated several thousand firearms had been sent to one of his clients, Ares Armor, and that we would allow Ares Armor to surrender the firearms and records of sales of those firearms in lieu of ATF seeking a search/seizure warrant for those items. Attorney Davis expressed concerns about what would happen to the firearms as he still wanted to contest the determination that the receivers were in fact firearm under the Gun Control Act of

1968. I explained that we would take the firearms into custody and would seek to forfeit them, however his client would not be asked to abandon the property or waive any right to make a claim for its return. I further advised that I would do my best to expedite ATF's reconsideration of the determination that the receivers were firearms and if ATF determined they were not firearms, ATF would return the product to his client. I also requested the records of any customers who had purchased EPS Arms receivers to ensure they were not distributed to persons prohibited by Federal law from possessing a firearm. I also made it clear that we are limiting our request to only the EPS Arms receivers and records of sales of those receivers.

5.  Attorney Davis thanked me for the courtesy of working with him and his client and he said he would get back to me, but he thought his client would be happy to consent. Later that day Attorney Davis informed me that his client would turn over the "products" and the records and agreed to do so at 11:00 on 12 March 2014. He followed that up with an email providing a point of contact, Dimitri, and his phone number.

6.  On 11 March 2014, we attempted to contact Dimitri to confirm the location to receive the firearms and records and after misdialing the contact phone number a couple of times, I was informed that our Special Agent was able to speak to Dimitri and confirm the details. Later that evening, at approximately 17:00 Attorney Davis called me and informed me that his client had no problem with giving ATF the firearms, but was concerned about giving up the sales records for the EPS Arms receivers. We discussed options and I made it clear that we did not have a search warrant but we would apply for a search warrant if we could not come to an agreement. After some additional discussion, Attorney Davis called me and said his client agreed to provide him the customer list and that he would turn over the list to ATF. I informed Attorney Davis that this was an acceptable arrangement and emailed Special Agent Geerdes that Attorney Davis would have the records and he could pick up the firearms as scheduled.

7.  On 12 March 2014, at approximately 13:00 I was informed that Ares Armor had hired a new attorney and that a Federal Judge had issued a temporary restraining order preventing ATF from seizing any evidence from Ares Armor.

Paul J. Ware

1

2

3

4

5

6

7

8

9       **UNITED STATES DISTRICT COURT**

10      **SOUTHERN DISTRICT OF CALIFORNIA**

11  | LYCURGAN INC. DBA | CASE NO. 14-CV-548 JLS (BGS) |

12  ARES ARMOR,

**ORDER: (1) EXTENDING INJUNCTION TO PREVENT**
13                          Plaintiff,    **DIVESTMENT OF SUBJECT MATTER OF TEMPORARY**
14      vs.                                **RESTRAINING ORDER; (2) CLARIFYING THAT**
15                                         **TEMPORARY RESTRAINING ORDER DOES NOT RESTRAIN**
16                                         **LAWFUL CRIMINAL PROCEEDINGS; AND**
17  B. TODD JONES in his official          **(3) MODIFYING BRIEFING SCHEDULE**
    capacity as Head of the San Diego
18  Bureau of Alcohol, Tobacco, Firearms
    and Explosives; and DOES 1–10,         (ECF No. 5)
19
                            Defendants.
20

21         Presently before the Court is Defendants' *Ex Parte* Application for Order: (1)

22  Extending Injunction to Prevent Divestment of Subject Matter of Temporary

23  Restraining Order; and (2) Clarifying that Temporary Restraining Order Does Not

24  Restrain Lawful Criminal Proceedings. (ECF No. 5.)

25         Having reviewed Defendants' *Ex Parte* Application, the Court finds Defendants'

26  requested relief to be reasonable and equitable. Accordingly, the Court **HEREBY**

27  **ORDERS** that:

28  (1)    Plaintiff Lycurgan Inc. DBA Ares Armor ("Plaintiff") and its owners, officers,

- 1 -

14cv548

managers, employees, and agents **ARE HEREBY PROHIBITED** from taking any steps to destroy, transfer, sell, or otherwise divest themselves of the items that are the subject matter of the Court's March 11, 2014 Temporary Restraining Order ("TRO") (*see* ECF No. 4);

(2) the Court's March 11, 2014 TRO **DOES NOT ENJOIN** lawful criminal proceedings, including the application for or lawfully executed seizure of evidence and contraband pursuant to a search warrant issued by a sworn United States Magistrate Judge pursuant to Federal Rule of Criminal Procedure 41; and

(3) the hearing on Plaintiff's motion for TRO **SHALL REMAIN SCHEDULED** for 1:30 p.m. on Thursday, March 20, 2014. However, so that the parties may fully address all of the facts and circumstances as alleged by one another, the Court now orders that Defendants **SHALL FILE** a response to Plaintiff's motion at or before 9 a.m. on Monday, March 17, 2014. Plaintiff **SHALL FILE** a reply at or before 12 p.m. on Tuesday, March 18, 2014.

**IT IS SO ORDERED**.

DATED: March 14, 2014

Honorable Janis L. Sammartino
United States District Judge

- 2 -

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. |
| Ares Armor, 206/208 N Freeman St, Oceanside; Ares Armor, 416 National City Blvd; Ares Armor Warehouse, 180 Roymar St D; and 2420 Industry, Oceanside,CA | ) ) ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Southern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A(1), A(2), A(3), A(4).

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before       *3/28/14*
       *(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.       ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_____Bernard Skomal_____.
       *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐for _____ days *(not to exceed 30)*.
       ☐until, the facts justifying, the later specific date of _____.

Date and time issued:  *3/14/14   8:20 p.m.*       _____
       *Judge's signature*

City and state:  *Bonita, CA.*       *Bernard Skomal*
       *Printed name and title*

## ATTACHMENT A (1)

### PREMISES TO BE SEARCHED



The TARGET LOCATION-1 is located at 206/208 N. Freeman Street, Oceanside, California 92054, in the County of San Diego, California. The business is described as a commercial building located within a strip of commercial buildings. The facing is red brick with white framed windows. There is a shingled overhang. There is a black sign with "Ares Armor" printed it hanging over the door with number the number "208" affixed to it. Space "206" is located directly next door. The door contains a "206" and Ares Armor decals.

The search shall include all rooms, attics, crawl spaces, computers, electronic storage devices, safes, briefcases, storage areas, containers, garages, sheds, and containers such as safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, cans, bags, trash cans and other vehicles located on or near the premises, that are owned or under the control of ARES ARMOR or LYCUGRAN inc.,

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization is sought to search for and seize items that constitute evidence, fruits, proceeds, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (dealing of firearms without a license); 18 U.S.C. § 922 (t)(1) (failure to conduct background checks during firearms transfer); and 18 U.S.C. § 371 (conspiracy to commit the foregoing offenses), including:

1.  Any firearm that does not have a lawful manufacturer stamp and serial number, any unregistered firearm (where registration is required by Title 26 of the United States Code), and variant lower receivers of any kind (including AR-15 variant lower receivers).

2.  Any items pertaining to the possession, manufacture, or distribution of illegal firearms, including but not limited to, lower receivers, upper receivers, grips, stocks, magazines, trigger assemblies, and barrels for AR-15-style firearms.

3.  Photographs developed and undeveloped and/or videotapes or DVDs/CDs of firearms and/or variant lower receivers, firearm transactions, firearm parts, large sums of money and/or co-conspirators and paperwork showing the purchase, storage, disposition, or dominion and control over any firearms, firearm parts, ammunition, or any of the items described in Attachment B.

4.  Records, including electronically stored data, relating to the acquisition and distribution and repair of firearms and/or variant lower receivers, including but not limited to ATF Forms 4473, California Dealer Of Record Sale (DROS) records, books, receipts, invoices, notes, ledgers, and pay/owe sheets. The records should also include, but not be limited to, bank records, vendor lists, customer lists, mailings, and purchase invoices/receipts.

5.  Personal telephone books, telephone records, telephone bills, address books, correspondence, notes, and papers containing names and/or telephone numbers that tends to establish communication between co-conspirators.

6.  Correspondence to and from/or from actual or prospective customers or suppliers.

7.  Evidence and records relating to the accumulation of proceeds derived from illegal firearms trafficking and manufacturing including, but not limited to, money order receipts, money transfer documents, bank records, and sales invoices/receipts.

8.  Rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them.

9.  Indicia of occupancy, residency, and/or ownership of the items noted above and of the premises, including but not limited to, papers, correspondence, canceled envelopes, canceled postcards, bills, and registration documents.

10. Any safes, locked cabinets, and/or other secured containers and/or devices at the locations identified in Attachments A-1, A-2, A-3, and A-4. Law enforcement shall be permitted to open such locked containers by force or through the use of a locksmith if necessary.

206/208 A FREEMAN OCEANSIDE

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: 1100  3/15/14 | Copy of warrant and inventory left with: ATTY JEREMY TUMA / SEAN Smith |
| Inventory made in the presence of : SA HERNANDEZ | | |
| Inventory of the property taken and name of any person(s) seized: | | |

See attached

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## RECEIPT FOR PROPERTY AND OTHER ITEMS

PAGE _____ OF _____

| CASE/INSPECTION NUMBER | CASE/INSPECTOR TITLE | OFFICE |
|---|---|---|
| | | |

| TAKEN FROM: (Name, title, address, if appropriate) | RECIPIENT: (Name, title, address, if appropriate) |
|---|---|
| 206/208 N. Freeman Oceanside | |

| LOCATION OF TRANSFER OR SEIZURE: | BASIS FOR TRANSFER OR SEIZURE OF ITEMS: |
|---|---|
| | |

| AMOUNT OR QUANTITY | DESCRIPTION OF ITEM(S) |
|---|---|
| 1 | GENERIC TOWER COMPUTER SN 0108 7756 |
| 1 | MSI ALL-IN-ONE COMPUTER W/ ADAPTER |
| 1 | MISC. DOCUMENTS - PRICE LISTS INVOICES SALES RECEIPTS INDICIA FINANCIAL DOCS EX. |
| 2 | USB DONGLE |
| 1 | GENERIC TOWER COMPUTER SN 011 59172 |
| 1 | ASUS LAPTOP W/ POWER CORD S/N 09 NOC XISR3727 |
| 1 | HP LAPTOP W/ POWER CORD S/N 2 CE 9075 L3H |
| 1 | BINDER W/ SALES DOCS |
| 1 | WESTERN DIGITAL HARD DRIVE S/N WX71A6175694 |
| | NETRO |

I hereby acknowledge receipt of the above item(s) into my custody.

| RECEIVED BY: (Signature) | | | DATE |
|---|---|---|---|
| | | | |

| TRANSFERRED BY: (Signature, if appropriate) | DATE | WITNESSED BY: (Signature) | DATE |
|---|---|---|---|
| | | | |

ATF F 3400.23 (12-96)

*U.S. GPO: 2002/496-845/60810

*416 NATIONAL CITY BLVD.*

AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Ares Armor, 206/208 N Freeman St, Oceanside; Ares<br>Armor, 416 National City Blvd; Ares Armor Warehouse,<br>180 Roymar St D; and 2420 Industry, Oceanside, CA | )<br>)<br>)    Case No.<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Southern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A(1), A(2), A(3), A(4).

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 3/28/14 _____
                                                                        *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_____ Bernard Skomal _____.
              *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
                                ☐ until, the facts justifying, the later specific date of _____

Date and time issued: _3/14/14  8:20 p.m._                                                     *Judge's signature*

City and state: _Bonita, CA._                          Bernard Skomal
                                                  *Printed name and title*

## ATTACHMENT A(2)

### PREMISES TO BE SEARCHED

TARGET LOCATION-2 is located at 416 National City Blvd, Unit B, National City, CA, located on the west side of National City Blvd.  Unit B is located on the north side of a single story duplex.  The building is described as a tan building with a glass front and a flat roof. The storefront has a welcome mat with "Ares Armor" printed on the mat and the Ares Armor logo decal is placed on the glass front.  The number "416" is affixed to the entry door on the north unit of the duplex.

The search shall include all rooms, attics, crawl spaces, computers, electronic storage devices, safes, briefcases, storage areas, garages, sheds, carports, storage facilities and containers such as safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans and other vehicles located on or near the premises, that are owned or under the control of ARES ARMOR or LYCUGURAN Inc.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization is sought to search for and seize items that constitute evidence, fruits, proceeds, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (dealing of firearms without a license); 18 U.S.C. § 922 (t)(1) (failure to conduct background checks during firearms transfer); and 18 U.S.C. § 371 (conspiracy to commit the foregoing offenses), including:

1.     Any firearm that does not have a lawful manufacturer stamp and serial number, any unregistered firearm (where registration is required by Title 26 of the United States Code), and variant lower receivers of any kind (including AR-15 variant lower receivers).

2.     Any items pertaining to the possession, manufacture, or distribution of illegal firearms, including but not limited to, lower receivers, upper receivers, grips, stocks, magazines, trigger assemblies, and barrels for AR-15-style firearms.

3.     Photographs developed and undeveloped and/or videotapes or DVDs/CDs of firearms and/or variant lower receivers, firearm transactions, firearm parts, large sums of money and/or co-conspirators and paperwork showing the purchase, storage, disposition, or dominion and control over any firearms, firearm parts, ammunition, or any of the items described in Attachment B.

4.     Records, including electronically stored data, relating to the acquisition and distribution and repair of firearms and/or variant lower receivers, including but not limited to ATF Forms 4473, California Dealer Of Record Sale (DROS) records, books, receipts, invoices, notes, ledgers, and pay/owe sheets. The records should also include, but not be limited to, bank records, vendor lists, customer lists, mailings, and purchase invoices/receipts.

5.     Personal telephone books, telephone records, telephone bills, address books, correspondence, notes, and papers containing names and/or telephone numbers that tends to establish communication between co-conspirators.

6.     Correspondence to and from/or from actual or prospective customers or suppliers.

7.     Evidence and records relating to the accumulation of proceeds derived from illegal firearms trafficking and manufacturing including, but not limited to, money order receipts, money transfer documents, bank records, and sales invoices/receipts.

8.     Rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them.

9.     Indicia of occupancy, residency, and/or ownership of the items noted above and of the premises, including but not limited to, papers, correspondence, canceled envelopes, canceled postcards, bills, and registration documents.

10.     Any safes, locked cabinets, and/or other secured containers and/or devices at the locations identified in Attachments A-1, A-2, A-3, and A-4.   Law enforcement shall be permitted to open such locked containers by force or through the use of a locksmith if necessary.

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Receipt for Property and Other Items**

| Page 1 of 2 | Case/Inspection Number 764010 74-0009 | Case/Inspection Title | Office SAN DIEGO IV |
|---|---|---|---|

| Taken from: (name, title, address, if appropriate) ATF's FFL#### 416 National City Blvd. National City CA 91150 | | Recipient: (name, title, address, if appropriate) ATF |
|---|---|---|

| Location of Transfer or Seizure | Basis for Transfer or Seizure of Items: Search Warrant |
|---|---|

| Amount or Quantity | Description of Item(s) |
|---|---|
| 1 | E MAIL LIST |
| 12 | PISTOL RECEIVERS |
| 1 | GREEN NOTE BOOK CONTAINING HANDWRITTEN NOTES |
| | FIREARM RECEIPTS FROM TOP DRAWER & TOM BOX |
| | PHONE RECORDS |
| | AR-TYPE JIG |
| | AR UPPER RECEIVER RECEIPTS FROM TOOL BOX |
| 1 | LARGE COMP PAD CONTAINING HANDWRITTEN NOTES |
| | AR CO ____ (___) CONTAINING HANDWRITTEN NOTES |
| | SMALL COMP PAD CONTAINING HANDWRITTEN NOTES |
| | RECEIPTS FOR GUN RECEIVERS |
| | _____ RECEIPTS |
| | _____ |
| | BLACK FINISH JIG |
| | _____ & _____ _____ SN 2752____ ____ |
| | AR-TYPE _____ RECEIVER _____ |
| | TE ENVELOPES CONTAINING RECEIPTS |
| | RECEIPTS FROM RECEIVER INK |
| 13 | AR-TYPE LOWER RECEIVERS _____ |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: (signature) 5234 | | | Date 3/15/2014 |
|---|---|---|---|
| Transferred by: (signature, if appropriate) | Date | Witnessed by: (signature) | Date 3/15/14 |

ATF E-Form 3400.23
Revised March 2005

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Receipt for Property and Other Items

Page 2 of 2 | Case/Inspection Number 184090-14-009 | Case/Inspection Title | Office SAN DIEGO IV

Taken from: (name, title, address, if appropriate)
Ares Armor
416 National City Blvd.
National City, CA 91950

Recipient: (name, title, address, if appropriate)
ATF

Location of Transfer or Seizure

Basis for Transfer or Seizure of Items:
Search Warrant

| Amount or Quantity | Description of Item(s) |
|---|---|
| 2 | WHITE ENVELOPES CONTAINING RECEIPTS |
|  | RECEIPTS W/ INVOICES |
| 1 | PRICE LIST |
| 1 | RECEIPT |
| 1 | BROKEN RECEIVER |
| 1 | BROKEN RECEIVER |
| 2 | JIGS FROM WORKBENCH |
| ASST | DOCUMENTS FROM STORAGE |
| 1 | LENOVO PC  S/N ES07158594 |
| 1 | THUMB DRIVE |
| ASST | RECEIPTS |
|  | RECEIPT |
| 1 | PROOF OF SERVICE TRO |
| 1 | BLITZKRIEG AND SD Sample |
| 1 | GREEN POLYMER RECEIVER |
| 1 | JUPITER RECEIVER GIVEAWAY LIST |
| 1 | EXTERNAL HARDDRIVE |
| ASST | LOTS IF RECEIVER |

I hereby acknowledge receipt of the above item(s) into my custody.

Received by: (signature) _____ SA 24 | Date 3/15/14

Transferred by: (signature, if appropriate) | Date | Witnessed by: (signature) M.M. | Date 3/15/14

ATF E-Form 3400.23
Revised March 2005

*180 ROYMAR, SUITE D*

AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |  Case No. |
| | ) |
| Ares Armor, 206/208 N Freeman St, Oceanside; Ares | ) |
| Armor, 416 National City Blvd; Ares Armor Warehouse, | ) |
| 180 Roymar St D; and 2420 Industry, Oceanside,CA | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Southern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A(1), A(2), A(3), A(4).

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 3/28/14 _____
                                                                                              *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been
                                                                  established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_____ Bernard Skomal _____ .
                  *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐for _____ days *(not to exceed 30).*
                                                    ☐until, the facts justifying, the later specific date of _____ .

Date and time issued: 3/14/14  8:20 p.m.          _____
                                                                                      *Judge's signature*

City and state:  Bonita, CA.          Bernard Skomal
                                                    *Printed name and title*

## ATTACHMENT A(3)

## PREMISES TO BE SEARCHED



TARGET LOCATION-3 is Ares Armor warehouse location located at 180 Roymar Street, Suite D, Oceanside California, 92058. The location is described as a commercial building located within a commercial area. It is a multi-business building and can be described as single story and white in color. Suite D is the fourth glass entry door from the west on the south side of the building. The letter "D" is affixed above the entry door on the south side of the building.

The search shall include all rooms, attics, crawl spaces, computers, electronic storage devices, safes, briefcases, storage areas, containers, garages, sheds, and containers such as safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, cans, bags, trash cans and other vehicles located on or near the premises, that are owned or under the control of ARES ARMOR or LYCUGRAN Inc.,

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization is sought to search for and seize items that constitute evidence, fruits, proceeds, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (dealing of firearms without a license); 18 U.S.C. § 922 (t)(1) (failure to conduct background checks during firearms transfer); and 18 U.S.C. § 371 (conspiracy to commit the foregoing offenses), including:

1.     Any firearm that does not have a lawful manufacturer stamp and serial number, any unregistered firearm (where registration is required by Title 26 of the United States Code), and variant lower receivers of any kind (including AR-15 variant lower receivers).

2.     Any items pertaining to the possession, manufacture, or distribution of illegal firearms, including but not limited to, lower receivers, upper receivers, grips, stocks, magazines, trigger assemblies, and barrels for AR-15-style firearms.

3.     Photographs developed and undeveloped and/or videotapes or DVDs/CDs of firearms and/or variant lower receivers, firearm transactions, firearm parts, large sums of money and/or co-conspirators and paperwork showing the purchase, storage, disposition, or dominion and control over any firearms, firearm parts, ammunition, or any of the items described in Attachment B.

4.     Records, including electronically stored data, relating to the acquisition and distribution and repair of firearms and/or variant lower receivers, including but not limited to ATF Forms 4473, California Dealer Of Record Sale (DROS) records, books, receipts, invoices, notes, ledgers, and pay/owe sheets. The records should also include, but not be limited to, bank records, vendor lists, customer lists, mailings, and purchase invoices/receipts.

5.     Personal telephone books, telephone records, telephone bills, address books, correspondence, notes, and papers containing names and/or telephone numbers that tends to establish communication between co-conspirators.

6.     Correspondence to and from/or from actual or prospective customers or suppliers.

7.     Evidence and records relating to the accumulation of proceeds derived from illegal firearms trafficking and manufacturing including, but not limited to, money order receipts, money transfer documents, bank records, and sales invoices/receipts.

8.     Rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them.

9.     Indicia of occupancy, residency, and/or ownership of the items noted above and of the premises, including but not limited to, papers, correspondence, canceled envelopes, canceled postcards, bills, and registration documents.

10.    Any safes, locked cabinets, and/or other secured containers and/or devices at the locations identified in Attachments A-1, A-2, A-3, and A-4. Law enforcement shall be permitted to open such locked containers by force or through the use of a locksmith if necessary.

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>7cf Y690−13 2011 | Date and time warrant executed:<br>3|15|14   @ 1100 | Copy of warrant and inventory left with:<br>Jonathan Zunnalen |

Inventory made in the presence of :
A≥P   SA Ludow Panent   & SA  BRAHIN

Inventory of the property taken and name of any person(s) seized:

See   Attached   List

---

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the
designated judge.


Date: _____          _____
                                                             *Executing officer's signature*


                                                             _____
                                                             *Printed name and title*

93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | 3/15/2014   11:00AM | Dimitri Karras |

Inventory made in the presence of : RAC Bod Cowan

Inventory of the property taken and name of any person(s) seized:

- 5804 - AR-15 ~~pistoles~~ lower receivers (No Serial #s)

1 - Computer Tower Aper   IA22P2IIS-L0013L0021F230A

1 - Misc. Documents of purchase orders for Ares Armor

1 - 1911 polymer Frame with no serial number

_Gordon Greenlee  16:10 hrs_

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title

Location Address: 180 Rex Mar

Location/Person Name: Oceanside CA

Other:

Evidence Tech:

Photograph:

Schematic Artist:

| Item # | NForce # | Photo # | Description | | | | Foun |
|---|---|---|---|---|---|---|---|
| | | | Location Found: | | Make/Model: | Serial/Unique # | |
| 1 | | | Description: | | | | |
| 2 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 3 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 4 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 5 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 6 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 7 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 8 | | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |

Sub - 624

Location Address: 180 Rey Mar

Location/Person Name: Escondido

Other: _____

Evidence Tech: _____

Photograph: _____

Schematic Artist: Arcs Armes

| Item # | NForce # | Photo # | Description | | | | |
|---|---|---|---|---|---|---|---|
| | | | Location Found: | Make/Model: | | Serial/Unique # | Found |
| 9 | 6 | | Description: | | | | |
| 10 | 70 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |
| 11 | 90 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |
| 12 | 06 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |
| 13 | 50 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |
| 14 | 08 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |
| 15 | 90 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |
| 14 | 151 | | Location Found: | Make/Model: | | Serial/Unique # | |
| | | | Description: | | | | |

(2)

SMS-449

Location Address:
Location/Person Name: Oceanside, CA

180 Roy May

Evidence Tech:

Photograph:

Schematic Artist:

Other:

| Item# | NForce# | Photo# | Description — Location Found: | Description — Make/Model: | Description — Serial/Unique# | Found |
|-------|---------|--------|------------------------------|---------------------------|------------------------------|-------|
| 17 | 150 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 18 | 150 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 19 | 150 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 20 | 180 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 22 | 180 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 28 | 150 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 23 | 170 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |
| 24 | 190 | | Location Found: / Description: | Make/Model: | Serial/Unique # | |

Location Address: 180 Roy Mar
ation/Person Name: Oceanside

Evidence Tech:
Photograph:
Schematic Artist:

| tem # | NForce # | Photo # | Description | | | | Foun |
|---|---|---|---|---|---|---|---|
| | | | Location Found: | | Make/Model: | Serial/Unique # | |
| 25 | 60 | | Description: | | | | |
| 24 | 90 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 7 | 040 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 28 | 89 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 29 | 080 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 30 | 90 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 3 | 150 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |
| 3 | 2/50 | | Location Found: | | Make/Model: | Serial/Unique # | |
| | | | Description: | | | | |

Location Address: 180 Roy Mar

Location/Person Name: Oceanside, CA

Evidence Tech:

Photograph:

Schematic Artist:

Other:

| Item # | NForce # | Photo # | Description | | | | Found |
|--------|----------|---------|-------------|---|---|---|-------|
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 33 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 34 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 35 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 36 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 37 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 38 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 39 | 150 | | Description: | | | | |
| | | | Location Found: | Make/Model: | | Serial/Unique # | |
| 40 | 120 | | Description: | | | | |

1120

Location Address: 180 Rox May

Location/Person Name: Oceanside, CA

Evidence Tech:

Photograph:

Schematic Artist:

Other:

| Item # | NForce # | Photo # | Description | | | | Foun |
|---|---|---|---|---|---|---|---|
| | | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 41 | 150 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 42 | 09 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 43 | 10 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 44 | 100 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 45 | 150 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 46 | 147 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 47 | 020 | | Location Found: | Description: | Make/Model: | Serial/Unique # | |
| 48 | 054 | | Location Found: | Description: | | | |

Location Address: 180 Roy Mar

Location/Person Name: Oceanside, CA

Evidence Tech:

Photograph:

Schematic Artist:

Other:

| Item # | NForce # | Photo # | Description | | Foun |
|---|---|---|---|---|---|
| | | | Location Found: | Make/Model: | Serial/Unique # |
| 49 | 150 | | | | |
| | | | Description: | | |
| 50 | 151 | | Location Found: | Make/Model: | Serial/Unique # |
| | | | Description: | | |
| 51 | 100 | | Location Found: | Make/Model: | Serial/Unique # |
| | | | Description: | | |
| 52 | 89 | | Location Found: | Make/Model: | Serial/Unique # |
| | | | Description: | | |
| 53 | 100 | | Location Found: | Make/Model: | Serial/Unique # |
| | | | Description: | | |
| 54 | | | Location Found: Gill polymer channel | Make/Model: | Serial/Unique # |
| | | | Description: | | |
| 55 | | | Location Found: Computer tower Acer | Make/Model: | Serial/Unique # LA22 PT11S-600DT8L00211R2Rcee |
| | | | Description: | | |
| 56 | | | Location Found: Misc docs | Make/Model: | Serial/Unique # |
| | | | Description: | | |
| 57 | | | | | |

KSA 49 of received evidence raof pwund 51-57

*2420 INDUSTRY, SUITE A*

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| Ares Armor, 206/208 N Freeman St, Oceanside; Ares Armor, 416 National City Blvd; Ares Armor Warehouse, 180 Roymar St D; and 2420 Industry, Oceanside,CA | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the      Southern      District of      California      *(identify the person or describe the property to be searched and give its location)*:

See Attachment A(1), A(2), A(3), A(4).

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before      3/28/14
                                                                                                       *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge      Bernard Skomal      .
                                                                             *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                                             ☐ until, the facts justifying, the later specific date of _____

Date and time issued: 3/14/14  8:20 p.m.                                _____
                                                                                                       *Judge's signature*

City and state: Bonita, CA.                                 Bernard Skomal
                                                                             *Printed name and title*

## ATTACHMENT A(4)

### PREMISES TO BE SEARCHED



TARGET LOCATION-4 is the previous location of Ares Armor Metal Works, LLC, located at 2420 Industry, Suite A, Oceanside, CA. The location is described as a large commercial building, located on the north side of Industry Avenue. It is a multi-business building and can be described as tan in color with lighter colored trim. The numbers "2420" appears on the façade above the door. The space associated with Ares Armor is accessed through the regular sized door (that is closed) on the left in the picture listed above, closest to the stairs.

The search shall include all rooms, attics, crawl spaces, computers, electronic storage devices, safes, briefcases, storage areas, garages, sheds, carports, storage facilities and containers such as safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans and other vehicles located on or near the premises, that are owned or under the control of ARES ARMOR or LYCUGURAN Inc.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization is sought to search for and seize items that constitute evidence, fruits, proceeds, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (dealing of firearms without a license); 18 U.S.C. § 922 (t)(1) (failure to conduct background checks during firearms transfer); and 18 U.S.C. § 371 (conspiracy to commit the foregoing offenses), including:

1.      Any firearm that does not have a lawful manufacturer stamp and serial number, any unregistered firearm (where registration is required by Title 26 of the United States Code), and variant lower receivers of any kind (including AR-15 variant lower receivers).

2.      Any items pertaining to the possession, manufacture, or distribution of illegal firearms, including but not limited to, lower receivers, upper receivers, grips, stocks, magazines, trigger assemblies, and barrels for AR-15-style firearms.

3.      Photographs developed and undeveloped and/or videotapes or DVDs/CDs of firearms and/or variant lower receivers, firearm transactions, firearm parts, large sums of money and/or co-conspirators and paperwork showing the purchase, storage, disposition, or dominion and control over any firearms, firearm parts, ammunition, or any of the items described in Attachment B.

4.      Records, including electronically stored data, relating to the acquisition and distribution and repair of firearems and/or variant lower receivers, including but not limited to ATF Forms 4473, California Dealer Of Record Sale (DROS) records, books, receipts, invoices, notes, ledgers, and pay/owe sheets. The records should also include, but not be limited to, bank records, vendor lists, customer lists, mailings, and purchase invoices/receipts.

5.      Personal telephone books, telephone records, telephone bills, address books, correspondence, notes, and papers containing names and/or telephone numbers that tends to establish communication between co-conspirators.

6.      Correspondence to and from/or from actual or prospective customers or suppliers.

7.      Evidence and records relating to the accumulation of proceeds derived from illegal firearms trafficking and manufacturing including, but not limited to, money order receipts, money transfer documents, bank records, and sales invoices/receipts.

8.      Rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them.

9.      Indicia of occupancy, residency, and/or ownership of the items noted above and of the premises, including but not limited to, papers, correspondence, canceled envelopes, canceled postcards, bills, and registration documents.

10.     Any safes, locked cabinets, and/or other secured containers and/or devices at the locations identified in Attachments A-1, A-2, A-3, and A-4. Law enforcement shall be permitted to open such locked containers by force or through the use of a locksmith if necessary.

Case 3:14-cv-01424-JLS-BGS   Document 1-2   Filed 06/11/14   Page 71 of 93

# ATF Evidence Log

**Case #:** 784090-13-0011

**Case Title: Ares Armor**

**Seizure Date:** 3/15/14    **Time On Site:** _____

**Location Address:** [illegible] Federal St, Oceanside, CA (L4)

**Location/Person Name:** Ares

**Team Leader:** _____

**Evidence Tech:** _____

**Photograph:** _____

**Schematic Artist:** _____

| Item # | NForce # | Photo # | Description | | Foun |
|--------|----------|---------|-------------|---|------|
| 1 | | | **Location Found:** Main Area, West wall / filter<br>**Description:** [illegible] colored / Aluminum | **Make/Model:** [illegible]<br>**Serial/Unique #** | |
| 2 | | | **Location Found:** [illegible] white Area, in desk<br>**Description:** Tshirt / white Area in desk | **Make/Model:** [illegible] PIC DPW (N) 7ALF63 OPW w/ lower (cal)<br>**Serial/Unique #** | |
| 3 | | | **Location Found:** Front office, on desk<br>**Description:** [illegible] | **Make/Model:** 80"/0 purchase<br>**Serial/Unique #** | |
| 4 | | | **Location Found:** Back Area / Entrance<br>**Description:** [illegible] Ar15 lower, purchase<br>[illegible] A Arcoscreen Ar Lower | **Make/Model:**<br>**Serial/Unique #** | |
| 5 | | | **Location Found:** Main Area, west wall, in tool chest<br>**Description:** Acer Laptop model C710-2847 [illegible] N: 0147120C08926163-00 269360 w/ cd | **Make/Model:**<br>**Serial/Unique #** | |
| | | | **Location Found:**<br>**Description:** Dwilling tenplate w/ partially completed AR Lower | **Make/Model:**<br>**Serial/Unique #** | |
| 6 | | | **Location Found:** Back Area / Entrance<br>**Description:** tablet Device, model OmvJ [illegible] (w/charger) | **Make/Model:**<br>**Serial/Unique #** | |
| | | | **Location Found:**<br>**Description:** | **Make/Model:**<br>**Serial/Unique #** | |



**U.S. DEPARTMENT OF JUSTICE**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**

Dimitrios Karras
208 N Freeman St
Oceanside, CA 92054-2819

| | |
|---|---|
| Asset ID: | 14-ATF-009592 |
| Case Number: | 784090-13-0011-01 |
| Property: | 5.804 Unknown Manufacturer AR Type Receiver/Frame CAL:Unknown SN:None |
| Asset Value: | $290,200.00 |
| Seizure Date: | 03/15/2014 |
| Seizure Place: | Oceanside, CA |
| Judicial District: | Southern District of California |

## NOTICE MAILING DATE: March 27, 2014

## NOTICE OF SEIZURE AND ADMINISTRATIVE FORFEITURE PROCEEDING

The above-described property was seized by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for forfeiture pursuant to Title 18, United States Code (U.S.C.), Section 3051(c), 19 U.S.C., Sections 1602-1618, 28 C.F.R., Part 8, 18 U.S.C., Section 983 and/or 21 U.S.C., Section 881, because the property was used or acquired in violation of 18 USC Section 921 et seq. (Gun Control Act). The seizure date and place, as well as other pertinent information regarding the property, are listed above. Pursuant to Title 18, U.S.C., Sections 983 and 3051, and Title 19, U.S.C., Sections 1602-1618, the ATF has commenced an administrative forfeiture proceeding against this property. You may contest the seizure and forfeiture of the property in Federal court, and/or you may petition ATF for return of the property or your interest in the property (remission or mitigation). **PLEASE REVIEW THE FOLLOWING PROCEDURES VERY CAREFULLY.**

## TO CONTEST THE FORFEITURE

You may contest the forfeiture of the seized property in court by filing a claim with ATF Forfeiture Counsel by May 1, 2014. A Seized Asset Claim Form is enclosed for your convenience for use in filing a claim. You may submit your claim in a different form but the claim must identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury. A frivolous claim may subject the claimant to a civil fine in an amount equal to ten percent (10%) of the value of the forfeited property, but in no event will the fine be less than $250, or greater than $5,000. Upon the filing of a claim, a claimant may request release of the seized property during the pendency of the forfeiture proceeding due to hardship, as provided at Title 18, U.S.C., Section 983(f). Requests must be sent to ATF Forfeiture Counsel. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of violation of the law; property by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the property, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding, either civil or criminal, even if such a proceeding has already been commenced or is commenced in the future.

## TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

In addition to, or in lieu of filing a claim, you may file a petition requesting the remission (pardon) or mitigation of the forfeiture with ATF Forfeiture Counsel within thirty (30) days of your receipt of this notice. A petition form is also enclosed for your convenience. The petition must include proof of your interest in the property and state the facts and circumstances in clear and concise terms which you believe justify remission or mitigation. This petition must be by the claimant under oath, under penalty of perjury. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations (C.F.R.), Part 9.

## WHERE TO FILE CORRESPONDENCE

All submissions must be filed with Forfeiture Counsel, Asset Forfeiture and Seized Property Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, 99 New York Avenue, NE, Mail Stop 3N600, Washington, DC 20226. If you have any questions regarding this matter, you may contact Asset Forfeiture Seized Property Division at (202) 648-7890. The Asset ID and Case Number referenced above should be used with all submissions. Failure to include the Asset ID and Case Number may cause a delay in processing your submission(s). **A CLAIM, PETITION, OR OTHER CORRESPONDENCE SHALL BE DEEMED FILED WITH FORFEITURE COUNSEL, ASSET FORFEITURE AND SEIZED PROPERTY DIVISION, WHEN RECEIVED BY ATF AT THE ADDRESS NOTED ABOVE. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED.**



FOR GOVERNMENT AGENCY USE ONLY

DATE CLAIM RECEIVED: _____

CLAIM FILED TIMELY?   Y ☐     N ☐

# SEIZED ASSET CLAIM FORM

Name: _____

Address:_____     Telephone No. ( ___ )_____

Agency Case No.:_____

Asset ID No.:_____

Date & Place of Seizure:_____

## PART I

List the items in which you claim an interest. Include sufficient information to identify each item, such as make, model, and serial numbers, tail numbers, photographs, and so forth. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.

1._____

2._____

3._____

4._____

5._____

6._____

## PART II

State your interest in each item of property listed above. Please provide any documents that support your claim of interest in these items. Supporting documentation includes titles, registrations, bills of sale, receipts, etc. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.

_____

_____

_____

_____

_____

_____

_____



FOR GOVERNMENT AGENCY USE ONLY

DATE PETITION RECEIVED: _____

PETITION FILED TIMELY?   Y ☐      N ☐

# REMISSION OR MITIGATION OF FORFEITURE PETITION FORM

Name: _____     SSN or TIN: _____

Address: _____     Telephone No. (     )_____

Agency Case No.: _____

Asset ID No.: _____

Date & Place of Seizure: _____

## PART I

List the items in which you claim an interest. Include sufficient information to identify each item, such as make, model, and serial numbers, tail numbers, photographs, and so forth. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

## PART II

Describe your interest in each item of property as owner, lienholder, or otherwise, for which you seek remission or mitigation of forfeiture. Please provide any documents that support your petition for each item. Supporting documentation includes original or certified bills of sale, title, registration, receipts, etc. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.

_____

_____

_____

_____

_____

_____

_____

Before the U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

## VERIFIED CLAIM

| UNITED STATES | ATF Case Number: 784090-13-0011-01 |
|---|---|

UNITED STATES

v.

That personal property seized
from Lycurgan, Inc., and
identified by the BATFE as
"5,804 Unknown Manufacturer
AR Type Receiver/Frame
CAL:Unknown SN:None"

ATF Case Number: 784090-13-0011-01
Asset ID: 14-ATF-009592
Asset Value: $290,200.00
Seizure Date: 03/15/2014
Seizure Place: Oceanside, CA
Judicial District: Southern District of
California
Notice of Mailing Date: March 27,2014
Notice mailed to:
Dimitrios Karras
208 N Freeman St
Oceanside, CA 92054-2819

TO:   Forfeiture Counsel, Asset Forfeiture and Seized Property Division,
Bureau of Alcohol, Tobacco, Firearms and Explosives, 99 New York Avenue, NE,
Mail Stop 3N600, Washington, DC 20226.

FROM:   Scott A. McMillan, The McMillan Law Firm, APC, 4670 Nebo
Drive, Suite 200, La Mesa, CA 91941-5230, phone (619) 464-1500 x 14, email:
scott@mcmillanlaw.us, Attorneys for Lycurgan, Inc., a California corporation,
claimant.

Please take notice that Lycurgan, Inc., a California corporation, doing
business as Ares Armor, **hereby contests the forfeiture of the above designated
property and requests the initiation of a judicial proceeding to challenge such
forfeiture**.  Such identification of the property seized set forth in this claim is
made without prejudice to challenging the incorrectly characterized property
description.  Specifically, the items taken from the premises located at 180
Roymar Road, Suite D, Oceanside, California were not "AR Type
Receiver/Frame".  The items were not "receivers" or "frames" as such words are
defined in the Gun Control Act of 1968, or prior interpretative determinations of
the BATFE under such Act.

Please also take notice that Lycurgan, Inc., a California corporation, doing business as Ares Armor, in addition to filing this claim, reserves the right to file a separate or supplemental petition requesting the remission (pardon) or mitigation of the forfeiture with ATF Forfeiture Counsel. Please also take notice that in addition to filing this claim, Lycurgan Inc., reserves the right to file a separate or supplemental request for return of the property.

Please also take notice of the attached correspondence between attorney Jason Davis and Earl Griffith, Chief, Firearms Technology Branch, BATFE, included as Exhibits "A," "B," and "C." I respectfully direct counsel to Exhibit B, the letter dated February 7, 2014, from Mr. Griffith, which states:

"In interpreting the GCA and implementing regulations as applied to AR-type firearms, ATF has long held that any machining of the fire-control cavity is the legally significant step in making a receiver."

[Letter, Earl Griffith, Exh. B]

Mr. Griffith's letter recognizes that castings that lack machining of the fire control cavity would not be considered a frame or a receiver under the Gun Control Act of 1968. **The seized castings lack any machining to the fire-control cavity.** The BATFE's incorrect classification of these castings arises from a misapprehension of the manufacturing process of the castings. That misapprehension was identified and addressed by attorney Jason Davis in his letter of March 4, 2014 to Mr. Griffith.

Please take notice that the below declaration Dimitrios Karras is submitted in satisfaction of the requirements of 28 C.F.R. 8.10, and in accordance with the above identified Notice of Seizure And Administrative Forfeiture Proceeding mailed on March 27, 2014.

Dated:  April 5, 2014

Respectfully submitted,
The McMillan Law Firm, APC

Scott A. McMillan
California Bar Number 212506
Attorneys for Lycurgan, Inc.
Claimant

2

# DECLARATION OF DIMITRIOS KARRAS PURSUANT TO 28 U.S.C. § 1746

I, Dimitrios Karras, declare as follows:

1.     I am over the age of eighteen.  If called before any court I would testify from my own personal knowledge to the following:

2.     I am the Chief Executive Officer of Lycurgan, Inc., a California corporation.  On March 15, 2014, agents purporting to be from the Bureau of Alcohol, Tobacco, Firearms and Explosives entered Lycurgan's leased real property and proceeded to search Lycurgan's premises.

3.     During its search, the BATFE agents seized and carried away a number of polymer castings which the BATFE "NOTICE OF SEIZURE AND ADMINISTRATIVE FORFEITURE PROCEEDING" mailed on March 27, 2014, incorrectly describes as "5,804 Unknown Manufacturer AR Type Receiver/Frame CAL:Unknown SN:None."  Such items *are* the property of Lycurgan, Inc., in fee simple absolute.

4.     On behalf of Lycurgan, Inc., I am authorized to contest the forfeiture of such property and hereby do so.  Lycurgan, Inc., requests initiation of judicial forfeiture, and demands trial by jury.

5.     I request that the BATFE release all property taken from Lycurgan, whether or not identified in the inventories issued, and whether or not forfeiture of such property is intended.

I, Dimitrios Karras, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury that the foregoing is true and correct and that this was executed on April 5, 2014, at the City of La Mesa, County of San Diego, State of California.

Dimitrios Karras

3

## CERTIFICATE OF SERVICE

I, Scott A. McMillan, declare:

On April 5, 2014, I placed the foregoing VERIFIED CLAIM in envelope, addressed as follows:

Forfeiture Counsel,
Asset Forfeiture and Seized Property Division,
Bureau of Alcohol, Tobacco, Firearms and Explosives,
99 New York Avenue, NE,
Mail Stop 3N600,
Washington, DC 20226

I then sealed such envelope.   I affixed the requisite postage for Express Mail, Item EQ 942350642US, and deposited said envelope it the United States Mail.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was signed in accordance with 28 U.S.C. § 1746, at the City of La Mesa, County of San Diego, State of California, United States.

Scott A. McMillan

4

# Exhibit A



*The Law Offices of*
# DAVIS & ASSOCIATES

27201 Puerta Real, Suite 300, Mission Viejo, CA 92691
Direct (949) 310-0817/Fax (949) 288-6894 Jason@CalGunLawyers.com
www.CalGunLawyers.com

July 20, 2013

Earl Griffith
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Firearms Technology Branch
244 Needy Road
Martinsburg, West Virginia 25405 USA
VIA FED-EX

Re:   In re: EP ARMS, LLC

Dear Mr. Griffith:

I write regarding my client, EP ARMS, LLC (EPA) and their intent to manufacture a partial lower receiver. Specifically, we are asking for clarification as to whether the incomplete AR-type lower that my client intends to manufacture is a "firearm" as defined in 18 U.S.C. §921(a)(3) or a merely a casting.

We have enclosed an exemplar EPA AR-15 type casting for your review and examination. The following features are included on the AR-15 casting:

- Magazine well;
- Magazine catch;
- Receiver extension/buffer tube;
- Pistol-grip area;
- Pistol-grip screw hole;
- Pistol-grip upper receiver tension hole;
- Pistol-grip tension screw hole;
- Bolt catch;
- Front pivot-pin takedown hole;
- Rear-pivot pin takedown hole.

We believe that these features molded into the raw casting do not render the casting a firearm for the reasons detailed below. But, in an abundance of caution, we request clarification from the Bureau of Alcohol, Tobacco, Firearms, and Explosives – Firearms Technology Branch.

*The Law Offices of*
**DAVIS & ASSOCIATES**

Re:     **In re: EP ARMS, LLC**
July 20, 2013
Page 2

## DEFINITION OF FIREARM

Title I of the Gun Control Act, 18 U.S.C. §§ 921 *et seq.*, primarily regulates conventional firearms (i.e., rifles, pistols, and shotguns). Title II of the Gun Control Act, also known as the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.*, stringently regulates machine guns, short barreled shotguns, and other narrow classes of firearms. "Firearm" is defined in § 921(a)(3) as:

> (B) Any weapon (including a starter gun) which will or is designed to or may readily be converted expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

As noted, the term "firearm" means a "weapon . . . which will or is designed to or may readily be converted to expel a projectile," and also "the *frame or receiver* of any such weapon." (18 U.S.C. §921(a)(3).) Both the "designed" definition and the "may readily be converted" definition apply to a weapon that expels a projectile, not to a frame or receiver. A frame or receiver is not a "weapon," will not and is not designed to expel a projectile, and may not readily be converted to expel a projectile.

The issue therefore becomes whether the raw material "casting," with the specified features, may constitute a "frame or receiver."

ATF's regulatory definition, 27 C.F.R. §478.11, provides: "*Firearm frame or receiver*. That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel. (The same definition appears in 27 C.F.R. §479.11.) "Breechblock" is defined as the locking and cartridge head supporting mechanism of a firearm that does not operate in line with the axis of the bore." (*Glossary of the Association of Firearms and Toolmark Examiners* (2nd Ed. 1985, 21).)

Assuming that a lower receiver is deemed a "frame or receiver" for licensing purposes, the statute refers to "the frame or receiver of any such weapon," not raw material which would require further milling, drilling, and other fabrication to be usable as a frame or receiver. Referring to ATF's definition in §478.11, an unfinished piece of metal is not a "part" that "provides housing" (in the present tense) for the hammer, bolt, or breechblock, and other components of the firing mechanism, unless and until it is machined to accept these components. The definition does not include raw materials that "would provide housing" for such components ". . . if further machined." Nor may it be said that such piece of metal "is . . . threaded at its forward portion" so that a barrel may be installed.

*The Law Offices of*
**DAVIS & ASSOCIATES**

Re:    **In re: EP ARMS, LLC**
July 20, 2013
Page 3

In ordinary nomenclature, the frame or receiver is a finished part which is capable of being assembled with other parts to put together a firearm." (*Receiver*. The basic unit of a firearm which houses the firing and breech mechanism and to which the barrel and stock are assembled. *Glossary of the Association of Firearm and Toolmark Examiners* (2nd ed. 1985), 111.) Raw material requires further fabrication. The Gun Control Act recognizes the distinction between "Assembly and "fabrication." (Compare 18 U.S.C. §921(a)(29) (defining "handgun" in part as "any combination of parts from which a firearm described in subparagraph (A) can be *assembled*") with §921(a)(24) (referring to "any combination of parts, designed or redesigned, and intended for use in *assembling or fabricating* a firearm silencer or firearm muffler" (emphasis added.).) The term "assemble" means "to fit or join together (the parts of something, such as a machine): to assemble the parts of a kit." (Assemble. *Dictionary.com. Collins English Dictionary - Complete & Unabridged 10th Edition*. HarperCollins Publishers. http://dictionary.reference.com/browse/assemble (accessed: January 23, 2013).) The term "fabricate" is broader, as it also synonymous with manufacture: "to make, build, or construct." (Fabricate. *Dictionary.com. Collins English Dictionary - Complete & Unabridged 10th Edition*. HarperCollins Publishers. http://dictionary.reference.com/ browse/fabricate (accessed: January 23, 2013).) Thus, drilling, milling, and other machining would constitute fabrication, but assembly more narrowly means putting together parts already fabricated.

Moreover, "Congress did not distinguish between *receivers integrated into an operable weapon and receivers sitting in a box, awaiting installation*." (*F.J. Vollmer Co., Inc. v. Higgins*, 23 F.3d 448, 450 (D.C. Cir. 1994)(Emphasis added.) The absence of a single hole and the presence of a piece of extra metal may mean that an item is not a frame or receiver." (*Id*. at 452 ("In the case of the modified HK receiver, the critical features were the lack of the attachment block and the presence of a hole"; "welding the attachment block back onto the magazine and filling the hole it had drilled" removed the item from being a machinegun receiver.).)

## ANALOGOUS DETERMINATIONS

In an analogous situation, ATF has defined a receiver in terms of whether it was "capable of accepting all parts" necessary for firing. Like the term "firearm," the term "machinegun" is also defined to include the "frame or receiver of any such weapon." (26 U.S.C. §5845(b). The same definition is incorporated by reference in 18 U.S.C. §921(a)(3).) The Chief of the ATF Firearms Technology Branch wrote in 1978 concerning a semiautomatic receiver which was milled out to accept a full automatic sear, but the automatic sear hole was not drilled. He opined: "in such a condition, the receiver is not capable of accepting all parts normally necessary for full automatic fire. Therefore, such a receiver is not a machinegun. . . . As soon as the receiver is capable of accepting all parts necessary for full automatic fire, it would be subject to all the provisions of the NFA." (Nick Voinovich, Chief, ATF Firearms Technology Branch, Feb. 13, 1978, T:T:F:CHB, 7540. Similar opinions were rendered by the Chief, ATF Firearms Technology

*The Law Offices of*
**DAVIS & ASSOCIATES**

Re:     **In re: EP ARMS, LLC**
July 20, 2013
Page 4

Branch, Aug. 3 1977 (reference number deleted); and C. Michael Hoffman, Assistant Director (Technical and Scientific Services), May 5, 1978, T:T:F:CHB, 1549?).)

That being said, the ATF has taken differing opinions as to what extent raw material must be machined in order to be deemed a firearm.

In a 2002 determination, ATF stated the following about an unfinished lower receiver for an AR 15 that "by performing minor work with hand tools, this receiver can be assembled into a complete rifle." (Curtis H.A. Bartlett, Chief, Firearms Technology Branch, Oct. 22, 2002, 903050:RV.)  The letter continues:

> The minor work includes:
> 1. Drilling the holes for the takedown/assembly pins;
> 2. Drilling the holes for the trigger and hammer pins;
> 3. Drilling the holes for the magazine catch; and
> 4. Drill and tap the holes for the pistol grip screw.
>    Our evaluation reveals that the submitted receiver can be readily converted to expel a projectile by the action of an explosive," and is, therefore, a firearm . . . .

The above assumes that the "can be readily converted" clause refers to a frame or receiver, when actually that clause refers to a *weapon* that can be so converted.  A frame or receiver cannot, by itself, be converted to a weapon that expels a projectile.  That would require the presence of all the other firearm parts, and even then the above machine work would be required, together with assembly.

By contrast, and more recently, ATF determined the following "unfinished AR15 lower" not to be sufficiently machined to constitute a frame or receiver:

> The FTB examination of your submission confirmed that machining operations have been performed for the following:
>
> - Magazine well;
> - Magazine catch;
> - Receiver extension / buffer tube;
> - Pistol grip;
> - Bolt catch;
> - Trigger guard;
> - Pivot pin and take down holes (drilled).

*The Law Offices of*
**DAVIS & ASSOCIATES**

Re:   **In re: EP ARMS, LLC**
July 20, 2013
Page 5

The FTB examination found that this item, in its current condition, has not reached a point in manufacturing to be classified as a "firearm" per the GCA definition, Section 921(a)(3).

(John R. Spencer, Chief, Firearms Technology Branch, November 19, 2012, 903050:MRC 3311/2012-1034.) (See also: 903050:AG 3311/2011-703; 903050:KB 3311/300863; 903050:KB3311/300862)

It is important to note that each side of the submitted casting includes three extrusions. As you are aware, these extrusions do not exist on completed AR-15 type lowers. They have been added to the component and must be removed prior to installation of any parts or components. While these extrusions do contain slight depressions, these depressions are not of sufficient depth to cross the plane of the either side of the completely machined lower receiver.

It is clear that the EPA casting does not provide housing for the "hammer, bolt or breechblock, and firing mechanism." In this regard, the operations performed on the exemplar casting are more akin to the later examination than the former. As such, it is our belief that the exemplar casting does not constitute a "receiver" or a "firearm." But, again, we request your clarification on this point.

Thank you for taking the time to address this issue. We look forward to hearing from you. Please let us know if you have any further questions or concerns.

Sincerely,

**DAVIS & ASSOCIATES**

s/ *Jason Davis*

JASON DAVIS

# Exhibit B



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg, WV 25405_

_www.atf.gov_

903050:MRC
3311/301179

February 7, 2014

Mr. Jason Davis
Davis & Associates
27201 Puerta Real
Suite 300
Mission Viejo, CA 92691

Dear Mr. Davis,

This is in reference to your correspondence, along with an AR-15 type "incomplete lower," to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). You have submitted this casting on behalf of your client, EP Arms, for classification under the Gun Control Act of 1968 (GCA).

As you are aware, the GCA, 18 U.S.C. § 921(a)(3), defines the term "firearm" as follows: ...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. Further, GCA implementing regulations, 27 CFR § 478.11 define "firearm frame or receiver" as "that part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."

The FTB examination of this casting confirmed that it has the following features and characteristics:

1. Magazine well.
2. Magazine catch.
3. Bolt catch.
4. Pistol grip.
5. Forming and tapping for receiver-extension/buffer tube.
6. Front pivot-pin hole.

Mr. Jason Davis                                                                Page 2

7. Rear take-down hole.
8. Holes drilled for the detent take-down and pivot pin, retainer buffer, detent
   fire-control selector, and pistol-grip screw.

Further examination by FTB revealed that excess material extends past the exterior walls
of the casting, indicating the approximate locations of the holes to be drilled for the
selector, hammer, and trigger pins. We further noted that the fire-control cavity has been
formed and then, at a later time, filled in with plastic material.

It is our determination that when the fire-control cavity was formed during the
manufacturing process, the submitted casting reached a point in its manufacture to be
classified as a "firearm" as defined in 18 U.S.C. 921(a)(3).

You argue that to be classified as a "firearm frame or receiver," the GCA and
implementing regulations require that the item be completed so that all fire control
components may presently be installed in the frame or receiver. In interpreting the GCA
and implementing regulations as applied to AR-type firearms, ATF has long held that any
machining of the fire-control cavity is the legally significant step in making a receiver.

Further, the filling of the cavity at a later point does not change our classification.
Although the fire-control cavity was filled with plastic material that must be removed
before fire control components may be installed, ATF has long held that this is not
sufficient to destroy the receiver and remove the item from classification as a "frame or
receiver." For your reference we have included the destruction diagram for AR-type
firearms.

Finally, although the definition of "machinegun" includes "frame or receiver,"
determination of what constitutes a machinegun receiver often requires a different
analysis than determining whether something is a firearm under the GCA. In some cases,
machineguns are made from semiautomatic firearms with extra components, and if is the
modification of a receiver to accept these extra components that creates the machinegun
receiver. Although FTB has determined that a semiautomatic receiver was not made into
a machinegun receiver "until the receiver is capable of accepting all parts necessary for
full automatic fire," that reasoning doesn't apply to making a determination of whether
the item is a firearm under the GCA. This is because classifying a semiautomatic receiver
as a machinegun simply because it may be machined to accept machinegun parts would
regulate all such firearms as "machineguns." Therefore ATF's classification of
machinegun receivers is not premised on the fact that the receiver must be capable of
housing all parts necessary for automatic fire, but that a semiautomatic copy of a
machinegun becomes a machinegun only when this occurs. See Sendra Corp. v. Magaw,
111 F.3d 162, 163 (D.C. Cir. 1997).

In closing, we caution that the information found in this correspondence with regard to
the evaluation described above is intended only for use by the addressed recipient(s).

Please provide our Branch with a FedEx account number or a UPS shipping label
addressed to yourself so that we may return your sample. Please be advised that we do

Mr. Jason Davis

not ship via the U.S. Postal Service. If you don't need to have us return your sample, you may fax FTB at 304-616-4301 with authorization to destroy it on your behalf.

We thank you for your inquiry and sample, regret that our findings could not be more positive, but trust the foregoing has been responsive to your request. If you require further information concerning our findings, we can be contacted at any time.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch

# Exhibit C



*The Law Offices of*
## DAVIS & ASSOCIATES

27201 Puerta Real, Suite 300, Mission Viejo, CA 92691
Direct (949) 310-0817/Fax (949) 288-6894 Jason@CalGunLawyers.com
www.CalGunLawyers.com

March 4, 2014

Earl Griffith
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Firearms Technology Branch
244 Needy Road
Martinsburg, West Virginia 25405 USA
**VIA FED-EX**

Re:     <u>In re: EP ARMS, LLC</u>

Dear Mr. Griffith:

I write regarding my client, EP ARMS, LLC (EPA).  Specifically, we write to request reconsideration of your conclusion that the product sample submitted is a "firearm" in the response to your letter dated, February 7, 2014, which was based on a fundamental misunderstanding of the manufacturing process.  (Enclosed.)

Specifically, your letter was a response to our letter dated July 30, 2013 (enclosed), which requested clarification as to whether a product submitted is a firearm.  In your letter you stated that:

> It is our determination that when the *fire-control cavity was formed during the manufacturing process,* the submitting casting reached a point in its manufacturer to be classified as a "firearm" as defined in 18 U.S.C. 921(a)(3).
>
> \*\*\*
>
> Further, the filling of the cavity at a later point does not change our classification. *Although the fire-control cavity was filled with plastic material that must be removed before fire control components may be installed,* ATF has long held that this is not sufficient to destroy the receiver and remove the item from classification as a "frame or receiver." . . .

(Emphasis added.)

As stated above, this response is based on a fundamental misunderstanding of the process by which the submitted sample is manufactured.  Specifically, the letter is based on the assumption

*The Law Offices of*
**DAVIS & ASSOCIATES**

Re:   In re: EP ARMS, LLC
March 4, 2014
Page 2

that the receiver is formed, and then it is filled with additional plastic. This is inaccurate. At no time is a fire-control cavity formed during the manufacturing process, nor is the fire-control cavity "filled" with plastic material. In fact, at no time does a fire-control cavity exist in the manufacturing process.

The actual process of manufacturing the sample is the converse of your assumed method, and takes place in two stages:

**Stage 1:**
The manufacturing process starts with the production of a core, dubbed a "biscuit." (Enclosed with this letter are two sample core "biscuits" for your examination and evaluation.) It is made of a material close to Nylon 66 and is the first part of the manufacturing process. Once the biscuit is manufactured it has a 2 day curing process before proceeding to Stage 2.

**Stage 2:**
After the curing has taken place with the biscuit it is placed inside the cavity of a secondary mold. The secondary mold bonds additional material to the biscuit and creates the overall shape of the product by means of mold injection. (The previously submitted sample still in your possession represents the result of Stage 2 production). Thus, at no time does a fire-control cavity exist.

We believe that these features molded into the raw casting do not render the casting a firearm for the reasons detailed below. But, in an abundance of caution, we request clarification from the Bureau of Alcohol, Tobacco, Firearms, and Explosives – Firearms Technology Branch. It is clear that the EP.A casting does not provide housing for the "hammer, bolt or breechblock, and firing mechanism." In this regard, the operations performed on the exemplar casting are more akin to the later examination than the former. As such, it is our belief that the exemplar casting does not constitute a "receiver" or a "firearm." But, again, we request your clarification on this point.

Thank you for taking the time to address this issue. We look forward to hearing from you. Please let us know if you have any further questions or concerns. When complete, please return the submitted parts via Fed-Ex using account number: 321690653.

Sincerely,

**DAVIS & ASSOCIATES**

s/ *Jason Davis*

JASON DAVIS