Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
**The McMillan Law Firm, APC**
4670 Nebo Dr., Suite 200
La Mesa, CA 91941-5230
Tel. 619-464-1500 x 14
Fax. 206-600-5095

Attorneys for Petitioner,
Lycurgan, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>Ares Armor, 206/208 N Freeman St, Oceanside; Ares Armor, 416 National City Blvd; Ares Armor Warehouse, 180 Roymar St D; and 2420 Industry, Oceanside, CA<br><br>LYCURGAN, INC. d/b/a ARES ARMOR,<br><br>            Petitioner,<br><br>            v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>            Respondent. | Case No.: 14-CV-1424-JLS<br><br>PETITIONER'S REPLY TO UNITED STATES' OPPOSITION IN SUPPORT OF PETITIONER'S MOTION TO UNSEAL SEARCH WARRANT DOCUMENTS<br><br>Date: July 31, 2014<br>Time: 1:30 p.m. |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO UNSEAL SEARCH WARRANT DOCUMENTS

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. Lycurgan Has a Fourth Amendment Pre-Indictment Right to Inspect the Search Warrant Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. The Government fails to support a compelling Governmental Interest.. . . . . . . 5

        2. <u>The Circumstances of this Case Indicate the Search Warrant Was Unlawfully Obtained and Executed</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C. Keeping the Warrant Affidavit Under Seal is Not the Least Restrictive Means. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D. An In Camera Review of the Search Warrant Affidavit Does Not Terminate the Search Subject's Fourth Amendment Right to Inspect the Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E. The forfeiture proceeding still is relevant, while Rule 41(g) is arguably not. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    F. Lycurgan deserves a remedy for the Government's gamesmanship.. . . . . . . . . 10

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

Federal Rules

Federal Rule of Criminal Procedure 41(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Statutory Authority

18 U.S.C. § 983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 983(a)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 USC § 985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 USCS § 921 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 USCS § 926(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2465. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Decisional Authority

*Askins v. United States Dep't of Homeland Sec.* (S.D. Cal. 2013) 2013 U.S. Dist. LEXIS 53208. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Center for Auto Safety v. E.P.A.*, 731 F.2d 16 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 9

*In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414 (D. Md. 2011) . . . . . . . . . . . . . . . . . 8

*In re Application of N.Y. Times Co. for Access to Certain Sealed Records*, 585 F. Supp. 2d 83, 91 (D. D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591 (D. Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*In re Searches & Seizures* (E.D. CA.) 2008 U.S. Dist. LEXIS 107087 *11-12. . . 1, 3, 5, 7

*In re Wag-Aero, Inc.* (E.D. Wis. 1992) 796 F. Supp. 394, 395. . . . . . . . . . . . . . . . . . . . 5, 7

*Ohel Rachel Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. Cal. 2007). . . . 9

*Rouzan v. Dorta* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 61012. . . . . . . . . . . . . . . . . . . 6

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. Cal. 1989). . . . . . . . . . . . . 3, 4

*United States v Barnhardt*, 555 F Supp 2d 184 (2008, DC Dist Col). . . . . . . . . . . . . . . . 9

*United States v. $16,978.29 in United States Currency*, 2013 U.S. Dist. LEXIS 124699 (D. Nev. Aug. 29, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Up North Plastics, Inc.*, 940 F. Supp. 229, 233-34 (D. Minn. 1996) . . . . . . . . . . . . . . . . . 5

## I. INTRODUCTION

On March 15, 2014, Respondent United States ("Respondent" or "the Government") executed an invasive and destructive search of Petitioner Lycurgan, Inc.'s ("Lycurgan") four separate facilities. [Karras Reply Decl. ¶ 5.] The Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") agents seized valuable and lawful business inventory. [*Id*. ¶¶ 6-7.] The Government also seized the list of Lycurgan's customers.[1] The Fourth Amendment of the United States Constitution prohibits seizures without probable cause. Federal law prohibits the ATF from maintaining a list of owners of non-NFA firearms. (18 U.S.C. § 926.)[2]

Lycurgan, and its principals – including Mr. Karras, have a pre-indictment Fourth Amendment right to know why the government tore through the small company's facilities and confiscated numerous essential, lawful business items, computer equipment and its customer lists. (*In re Searches & Seizures* (E.D. CA.) 2008 U.S. Dist. LEXIS

---

[1] The Court will recall that on March 11, 2014 Lycurgan sought the Court's protection in *Lycurgan Inc. v. Todd Jones*, So. Dist. Case No. 3:2014cv00548, after being threatened with a raid if Lycurgan did not provide its customer list. [Karras Dec., ¶ 7, Exh., A, 14-548, Doc., 2.] Accordingly, on March 11, 2014, the Court issued a TRO forbidding the ATF from depriving Ares Armor of its property pending hearing. [Karras Dec., ¶ 7, Exh., A, 14-548, Doc. 4.] The Court will recall that the Government acknowledged that Mr. Karras would have voluntarily relinquished the unfinished lower receivers, but Mr. Karras would not do so for Lycurgan's customer list. [Karras Dec., ¶ 8, Exh. C, 14-548, Doc., 5-1, ¶ 4, Dec. of Paul J. Ware.]
Director Jones, when questioned by Rep. Massie, testified in Congress regarding the raid on Lycurgan that ". . . generally speaking I think that in those circumstances where we are investigating ... one of the things that would be of interest for someone who may be illegally manufacturing firearms is the list of who they sold them to not necessarily to look at the list but to see if there are witness leads . . ."
That video is available here: https://www.youtube.com/watch?v=jYDAuaI8mCw

[2] The registry prohibition is set forth as ". . . No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act [enacted May 19, 1986] may require that records required to be maintained under this chapter [18 USCS §§ 921 et seq.] or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established. Nothing in this section expands or restricts the Attorney General's authority to inquire into the disposition of any firearm in the course of a criminal investigation. . . " 18 USCS § 926(a)(3).

107087 *11-12.) Lycurgan is entitled to sell the parts to customers, just as customers are entitled to home-build firearms under existing federal law.[3]   The Government attempts to misdirect the question posed by Lycurgan's motion to unseal the affidavit supporting the issuance of the search warrant warrant by posing other questions, none of which are relevant to the fundamental inquiry:

First, the Government argues that because it has voluntarily abandoned the administrative forfeiture proceedings, and thereby that it has negated a basis for disclosure of the affidavit[4]. [Oppo., II (1), p. 4.] Yet, now – in light of the revelation that the ATF's promise to seek forfeiture was insincere, Lycurgan has brought its own lawsuit under CAFRA, 18 U.S.C. § 983 to compel the return of its merchandise. [See, RFJN.] Moreover, the availability of other remedies to recover the seized unfinished lower receivers – such as through Federal Rule of Criminal Procedure 41(g) – although premised on incorrect application of the law – is likewise immaterial.

Second, the Government suggest that reference to Tyler Hughes's unfair prosecution initiated by the ATF agent is inappropriate because the motion lacks an "endorsement." [Oppo., II (2), p. 5.] But now Tyler Hughes has executed his own declaration, and seeks to determine the contents of the affidavit as well. [See, Hughes Dec.]

Third, the Government infers that because there was sufficient probable cause for issuance of the search warrant, i.e., that there was criminal conduct afoot — thus Lycurgan and the Court should just take the Government's word for it that the ATF's grounds claimed for issuance search warrant were proper. [Oppo., II (3), p. 5 - 9.]  But, the Government seeks to skip discussion over the central question – whether the hunks

---

[3] Even the ATF itself acknowledges that "non-disabled" persons may assemble their own Non-NFA firearm at home. https://www.atf.gov/firearms/faq/general.html

[4] The Government apparently forgets that it informed the Court by way of the declaration of Paul Ware, that the ATF intended to initiate forfeiture proceedings from the outset. [Karras Dec., ¶ 8, Exh. C / 14-548, Doc., 5-1, ¶ 4, Dec. of Paul J. Ware.]

of plastic known as unfinished AR15 receivers are "firearms." The Government repeats the word "firearm" like a *shiboleth* to make its point, but it does not substantiate the claim with any analysis or law, or even reference to the ATF's own past rulings as to what comprises a firearm receiver. In stark contrast, Lycurgan demonstrates sufficient basis through its evidence that the plastic parts are not firearms to shift the burden to the ATF. [Doc 1-2, e.g., Karras Dec ¶¶ 3-5 & ¶ 10 - Exh. 'J' (pg. 77).] These proceedings are now past the one-sided probable cause showing for the issuance of the warrant. This is where the Government should demonstrate the *why* of its argument.[5] Certainly the "why" will be contained within the affidavit, no? Thus, if the Government is unable to substantiate its claim that the plastic parts were receivers under the law, there is no basis for the claim of any "ongoing criminal investigation."

Finally, the Government attempts to trivialize its off-the-books seizure of thousands of dollars of Lycurgan's merchandise by focusing on the plastic bins is troubling. [Oppo., fn. 4.] The destructive – if not outright juvenile – vandalism at the National City store speaks for itself. The ATF's utter lack of professionalism with respect to the National City raid blemishes any claim of legitimate law enforcement purpose.

## II. ARGUMENT

### A. Lycurgan Has a Fourth Amendment Pre-Indictment Right to Inspect the Search Warrant Affidavit.

The majority of jurisdictions recognize a general "right to pre-indictment access to search warrant affidavits." (*In re Searches & Seizures* (E.D. Ca.) 2008 U.S. Dist. LEXIS 107087, 13-14, citing cases.) Government contends otherwise, relying on *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213-14, for the proposition that "search warrant applications are frequently not unsealed until post-indictment discovery.'" [Opp'n at 8:8-9:9, 10:1-5.] *Times Mirror Co.*, and every other case cited by

---

[5] In Lycurgan's first lawsuit against Director Jones, the Government even made sensational references to "contraband" and "machine guns." [Karras Dec., ¶ 8, Exh. C / 14-548, Doc., 5, pg. 1, Ex-Parte App..] The Government had no basis in fact to make such references or draw any parallels.

Government, is inapposite because it analyzes the media's access to search warrant documents under the First Amendment and common law. This is not a "media" case. This is a "victim-of-a-search" case.

The government made this same invalid argument that search warrant applications are not available to the public in the early stages of criminal proceedings in *In re Searches and Seizures*, 2008 U.S. Dist. LEXIS 107087, 8-10.

> As noted above, the government argues that in *Times Mirror Co.* the Ninth Circuit held that sealed warrant affidavits should not be ordered unsealed before an indictment is returned. [*9] The court disagrees. In *Times Mirror Co.* the court was faced with attempts by various media organizations to unseal search warrants and supporting affidavits that had previously been ordered sealed by the district court. The issues presented in that case were whether the media has a qualified right of access to search warrants and supporting affidavits during the pre-indictment stage of a criminal investigation under the First Amendment, Federal Rule of Criminal Procedure 41 or pursuant to common law. 873 F.2d at 1212. The Ninth Circuit merely held that the media had no such right of access and affirmed the district courts' orders maintaining the warrant materials under indefinite seal. Id. at 1212-21. 3 The court did not address the entirely different question of a property owner's "abiding interest in challenging the reasonableness of the government's invasion of his property and/or privacy" which is left unanswered by inquiries into the general public's right of access to search warrants materials.

[*Id*.] The court cited seven cases that addressed the question unanswered by *Times Mirror Co.*, which all recognized "a search subject's pre-indictment Fourth Amendment right to inspect the probable cause affidavit." (*Searches and Seizures*, 2008 U.S. Dist. LEXIS 107087, 8-10, quoting *In re Search Warrants Issued on April 26, 2004* (D. Md. 2004) 353 F. Supp. 2d 584, 591, and collecting cases.)

Not only are *Times Square Co.* and the other First Amendment cases cited by Government inapposite as stated above, but their reasoning is inapplicable under the circumstances of this case. *Times Mirror Co.* cautions against public access to search warrant documents during an ongoing criminal investigation because: (1) the search subject could learn of the existence of the warrant and then "destroy evidence of criminal activity ***before the warrant could be executed***," and (2) other suspected individuals "might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." [*Id*. at 1215, emphasis added, quoted by Government, Opp'n at 9:1-9.]

Lycurgan is fully aware of the existence of the warrant.

The general concerns of destruction of evidence and flight risk outlined by *Times Square Co.* are not present here. The BATFE agents seized all the purported criminal evidence, and then some. [Opp'n at 5, n. 4; Karras Reply Decl. ¶ 4.] Lycurgan is still operating at its four facilities, albeit with a substantially reduced inventory. [Karras Decl. ¶ 13.] The Government impliedly admits its initially filed forfeiture action has no merit. [Opp'n at 4:1-2.] Now, the Government admits that despite the passage of four months since the raid, "an indictment has not been sought or obtained." [Opp'n at 9:11-12.] It is time for Government to stop playing "blind man's bluff," stop playing keep-away, and recognize Lycurgan's and Mr. Hughes' Fourth Amendment right to inspect the warrant affidavit.

**B. The Government fails to support a compelling Governmental Interest.**

The Government may keep the search warrant affidavit under seal only if it can demonstrate "that a compelling government interest requires the materials to be kept under seal and that there is no less restrictive means, such as redaction, capable of serving that interest." (*In re Searches & Seizures*, 2008 U.S. Dist. LEXIS 107087 *13-14, citing cases.) The Government must support a compelling government interest with particular facts and evidence. (*In re Searches & Seizures*, 2008 U.S. Dist. LEXIS 107087 *14; *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 591-92; *Up North Plastics, Inc.* (D. Minn. 1996) 940 F. Supp. 229, 233-34; *In re Wag-Aero, Inc.* (E.D. Wis. 1992) 796 F. Supp. 394, 395. General assertions about protecting an ongoing criminal investigation is insufficient to meet the government's burden. (*Id*.)

Here, the Government offers the following general reasons for keeping the affidavit under seal:

> Unsealing the affidavit at this time would: alert the targets (in this district and others) of the investigation; reveal the investigative strategy or undercover operations that have taken place; expose the potential criminal charges being pursued; cause the potential destruction of evidence; create the ability to coordinate stories before testifying; or even cause flight.

[Opp'n at 9:13-18.][6] A declaration from an ATF official would have been helpful in demonstrating the truth of the suggestions. But, the Government does not even trouble itself with offering an affidavit to the effect set forth.

First, the targets of the investigation have already been alerted by the executed search and seizure. Second, there is no reason for the government to be conducting an "undercover" investigation in this matter. Lycurgan openly advertises, markets, and sells its products to the general public. [Karras Decl. ¶ 3.] Lycurgan is a lawfully operating public business that has been fully cooperative with the government. [Karras Decl. ¶ 9.] Third, the Government's very public seizure of "5,804 Unknown Manufacturer AR Type Receiver/Frame CAL: Unknown SN: None" has already alerted any prospective targets of potential criminal charges. [Karras Decl. ¶ 10; Ex. 1.] Fourth, the Government seized all the potential evidence in its expansive raid of all four Lycurgan facilities. Fifth, any hypothetical "suspects" have had over four months of notice since the raid to destroy any potential further "evidence," coordinate stories or flee the jurisdiction. Unsealing the affidavit at this point will have no further effect on the ongoing investigation.

In its opposition, the Government failed to assert a single, legitimate government interest. Furthermore, the Government failed to offer any support for its purported interests to keep the search warrant affidavit sealed. Therefore, The Government has failed to meet its burden. As explained in Searches and Seizures:

The court has carefully reviewed the declaration filed under seal by the

---

[6] The Government inserts in a footnote a concern about officer safety because Lycurgan created a life-sized cut-out of one of the many BATFE agents involved in the raid. [Opp'n at 9, n. 5.] The Government leaves the Court and Lycurgan to surmise how a blown-up photograph of an officer "put[s] the agents in unnecessary personal jeopardy." [*Id*.] Mr. Karras obtained the photograph of the BATFE agent lawfully pursuant to the "First Amendment right to photograph police officers performing their responsibilities in public places." *Askins v. United States Dep't of Homeland Sec*. (S.D. Cal. 2013) 2013 U.S. Dist. LEXIS 53208, 11-12, collecting cases; *Rouzan v. Dorta* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 61012, 34-35; Karras Reply Decl. ¶¶ 10-11; McMillan Reply Decl. ¶¶ 2-3. To the extent that The Government is concerned that agents of Lycurgan will conduct voodoo rituals or cast incantations upon the cut-out, Mr. Karras has vowed to refrain from doing so under the penalty of perjury. [Karras Reply Decl. ¶ 10.] Clearly, even now, the Government still seeks to punish Lycurgan for its principals exercise of their Constitutional rights.

government in support of continued sealing. To a limited extent the government's showing consists of general assertions that unsealing of the supporting affidavits would prematurely reveal its' theory of the case and the direction of the investigation, thereby likely obstructing that investigation in its early stages. ***The expression of such general and conclusory concerns, potentially present in any investigation, are insufficient to meet the government's burden of demonstrating a compelling government interest in continued sealing***. See *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 591-92; *Up North Plastics, Inc.*, 940 F. Supp. at 233-34; *Wag-Aero, Inc.*, 796 F. Supp. at 395. The court will therefore not rely on such general concerns raised by the government.

*In re Searches & Seizures*, 2008 U.S. Dist. LEXIS 107087 *14.

1. <u>Lycurgan and Mr. Hughes Need to Inspect the Search Warrant Affidavit</u>.

The Government provided no legitimate basis, much less a compelling interest, to keep the search warrant affidavit sealed. On the other hand, Lycuran and Mr. Hughes have an extraordinarily compelling interest to inspect the affidavit. Lycurgan and Mr. Hughes are the victims of a potentially unlawful search and seizure. As The Government acknowledges, "without the aid of what is contained in the search warrant affidavit," Lycurgan and Mr. Hughes are relegated to invoking only "the generalized protections of the Fourth Amendment." [Opp'n at 6:3-5.] In order to effectively challenge the search and seizure, and to breath life into the Fourth Amendment, the affidavit must be unsealed. (*In re Wag-Aero, Inc.* 796 F. Supp. at 395 ["Wag-Aero has a right to consider whether it wishes to challenge the issuance of the search warrant and whether it wishes to seek to obtain the return of its property. These rights are obviously seriously encumbered by the present seal."].)

The Government claims this motion should be denied because Tyler Hughes did not endorse this motion. [Opp'n at 5:6-7.] In support of this reply brief, Mr. Hughes endorses the application. [Hughes Decl. ¶¶ 2-3.] The circumstances of the search and seizure are suspect, particularly with respect to Mr. Hughes' office and vehicle. [Karras Reply Decl. ¶¶ 13-14; Hughes Decl. ¶ 2.] Mr. Hughes was merely a sub-tenant at one of Lycurgan's facilities. [Hughes Decl. ¶ 2.] Mr. Hughes was not an employee, agent, or otherwise affiliated with Lycurgan's business. [See *id.*] Accordingly, there was no apparent reason for the BATFE agents to beat down the door to his clearly marked office

or to search his vehicle. Mr. Hughes "request[s] that the affidavit be released so that [he] may determine if [he] ha[s] any post conviction remedies in light of the circumstances. [*Id.* ¶ 3.]

### 2. The Circumstances of this Case Indicate the Search Warrant Was Unlawfully Obtained and Executed.

Given the context of the search and seizure, there is good reason to suspect the Government obtained and executed the warrant in bad faith and with an improper motive. At the time the Government obtained the warrant, Lycurgan had a pending preliminary injunction hearing to enjoin the ATF from accessing Lycurgan's confidential customer list. [See Karras Reply Decl. ¶ 13.] The BATFE's efforts to obtain the warrant were merely a pretext to avoid the Court's scrutiny of the then pending preliminary injunction. [*Id.*] It seems that the March 15, 2014 raid and the abortive forfeiture were both undertaken to punish Lycurgan for refusing to turn over the customer list when it was demanded and then filing the lawsuit styled *Lycurgan, Inc. v. Todd Jones*, 3:14-cv-00548-JLS-BGS. [*Id.*] The raid on March 15, 2014 was likely conducted to moot the lawsuit of *Lycurgan, Inc. v. Todd Jones*, rather than serve as a sincere "crime control" effort. [*Id.*]

### C. Keeping the Warrant Affidavit Under Seal is Not the Least Restrictive Means.

The Government vaguely and conclusorily states: "Given the depth of the various concerns, redacting the affidavit would not be helpful." [Opp'n at 9:19-20.] The Government offers absolutely no support for this statement, nor engages in any further discussion on this necessary element. The Government failed to meet its burden to demonstrate that there are no less restrictive means to serve its purposes other than sealing the affidavit. *In re Application of N.Y. Times Co. for Access to Certain Sealed Records* (D. D.C. 2008) 585 F. Supp. 2d 83, 91; *In re 14416 Coral Gables Way* (D. Md. 2011) 946 F. Supp. 2d 414, at 428.

### D. An In Camera Review of the Search Warrant Affidavit Does Not Terminate the Search Subject's Fourth Amendment Right to Inspect the Affidavit.

From review of the attachments to the opposition, the Government apparently

provided the subject affidavit to the Court. But, the in camera review authority offered by the Government is inapposite. In describing the general procedure for obtaining a search warrant, the Government correctly states that an impartial judicial officer must determine whether the warrant is supported by probable cause. [Opp'n at 6:17-7:12.] However, that has no effect on Lycurgan's and Mr. Hughes' right to inspect the affidavit. The reviewing magistrate had no interest in the premises searched and the items seized, and has no type of recourse in the event the raid was unlawful; whereas, Lycurgan and Mr. Hughes do. Furthermore, Lycurgan has a good faith belief that the BATFE intentionally deceived Magistrate Judge Skomol by describing the unfinished AR15 receivers as "firearms." [Karras Reply Decl. ¶ 14.]

Citing FOIA cases, the Government urges the Court to conduct an *in camera* review of the warrant affidavit *in lieu* of allowing the victims of the BATFE raid to inspect the affidavit. [Opp'n at 7:13-27.] The Government relies exclusively on *Center for Auto Safety v. E.P.A.* (D.C. Cir. 1984) 731 F.2d 16, 20, a civil case that held the court may examine the contents of documents requested under the Freedom of Information Act (FOIA), 5 U.S.C.S. § 552. [Opp'n at 7:13-19.] This is not a FOIA case. FOIA has no application here. The comparison between a FOIA case and the instant circumstances trivializes the trauma ATF inflicted upon Lycurgan.

### E. The forfeiture proceeding still is relevant, while Rule 41(g) is arguably not.

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") implemented a comprehensive revision of civil asset forfeiture law in the United States through the amendment of three statutes: 18 U.S.C. §§ 983 and 985, and 28 U.S.C. § 2465. *Ohel Rachel Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. Cal. 2007). Under CAFRA, once the Government files its notice of administrative forfeiture pursuant to 18 USCS § 983(a) the Court handling the criminal proceedings loses jurisdiction. See, cf. *United States v Barnhardt,* 555 F Supp 2d 184 (2008, DC Dist Col)[Holding that Rule 41(g) was inapplicable where forfeiture notice issued.] The general rules for civil forfeiture proceedings are set forth in 18 U.S.C. § 983. These rules require that the

government and potential claimants comply with certain procedures and do so within an established timeline. Once a claim is filed in the government's nonjudicial foreclosure proceedings, the government must initiate judicial foreclosure proceedings within ninety (90) days **or return the seized property pending the filing of a complaint**. 18 U.S.C. § 983(a)(3)(A). *United States v. $16,978.29 in United States Currency*, 2013 U.S. Dist. LEXIS 124699 (D. Nev. Aug. 29, 2013)(Emphasis added.). Lycurgan has filed its complaint to obtain recovery of its seized property.

### F. Lycurgan deserves a remedy for the Government's gamesmanship.

Abandoning the judicial forfeiture proceeding and then refusing to return Lycurgan's property and customer lists merits a stern response from the Court. Presumably, the Government made serious allegations of criminal conduct in its effort to take possession of the Lycurgan customer list and unfinished polymer receivers. So far, those accusations against Lycurgan and its principals and its product have not been borne out by the proceedings. Indeed, the entire search warrant effort now appears to be nothing more than tactical positioning for the ATF. Yet, is unfair to require a law abiding small business such as Lycurgan to confront a moving target such as that posed by the Government here. The ATF will punish Lycurgan again for now asserting its rights.

## III. CONCLUSION

Petitioner Lycurgan, Inc. respectfully requests the Court to order the affidavit and documents supporting the issuance of a search warrant of Lycurgan, Inc.'s business premises be immediately disclosed in their entirety. Alternatively, it is respectfully requested that the Court perform the redaction of the search warrant documents.

Respectfully submitted,

THE MCMILLAN LAW FIRM, APC

Dated: July 17, 2014                /s/ Scott A. McMillan

Scott A. McMillan
Attorneys for Petitioner/Movant
Lycurgan, Inc.