Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
The McMillan Law Firm, APC
4670 Nebo Dr., Suite 200
La Mesa, CA 91941-5230
Tel. 619-464-1500 x 14
Fax. 206-600-5095

Attorneys for Petitioner,
Lycurgan, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE SEARCH OF:<br>Ares Armor, 206/208 N. Freeman St., Oceanside; Ares Armor, 416 National City Blvd.; Ares Armor Warehouse, 180 Roymar St. D; and 2420 Industry, Oceanside, CA. | CASE NO. 14-CV-1424 JLS (BGS)<br><br>Date: July 31, 2014<br>Time: 1:30 p.m. |
| LYCURGAN, INC. d/b/a ARES ARMOR,<br>                    Petitioner,<br>             vs.<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br>                    Respondent. | DECLARATION OF DIMITRI KARRAS IN SUPPORT OF REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO PETIONER'S MOTION TO "UNSEAL SEARCH WARRANT DOCUMENTS": |

## DECLARATION OF DIMITRI KARRAS

I, Dimitri Karras, declare under the penalty of perjury:

1. I am the Chief Executive Officer of Lycurgan, Inc., a California corporation d/b/a Ares Armor ("Lycurgan") and if called before this court or any other court I could and would testify competently to the following from my own personal knowledge, except as to those matters I state on information and belief, and as to those matters I believe them to be true.

2. I have known and interacted with Special Agent Gordon Geerdes for about two years. I have had a civil, professional relationship with Mr. Geerdes during that entire time. During the raid on March 15, 2014 I was located the

1    Roymar location.  Mr. Geerdes was in charge of the raid at that location.  Mr.

2    Geerdes and his fellow agents did not break any doors. As far as I can tell, they did

3    not fail to inventory any of Lycurgan's property.  Further, I have no reason to

4    believe that any merchandise or property was taken without being inventoried at

5    the Roymar location.   At the Roymar location, the agents left the premises mostly

6    as they found the premises.  There were no documents left in disarray.   I and my

7    fellow employees at the Roymar location were treated respectfully by Mr. Geerdes

8    and his fellow agents.  The agents at Roymar did their job as I would expect that a

9    prudent, well-trained, properly supervised agents would.   But, the same is not true

10   for the other facilities.

11        3. Mr. Geerdes was with me at the Roymar facility in the morning, to the

12   raid's conclusion at mid-afternoon. Thus, to the extent that his testimony suggests

13   knowledge about the methods, manner, and results of the searches at the three

14   other locations I respectfully suggest that he lacks personal knowledge.  I

15   appreciate that Mr. Geerdes made the effort to investigate the seizure made by the

16   other agents.

17        4. Mr. Haden seems to make light of the seizure of the plastic storage bins

18   at the National City store.  Although taking the storage bins may seem petty in

19   light of the relative expense of the bins themselves, what neither Mr. Geerdes or

20   Mr. Haden note is that those bins all held material at the National City store prior

21   to the raid.  I am informed and believe, that the contents of the storage bins ended

22   up strewn on the floor.

23        5. I am informed and believe, that when the ATF agents raided the National

24   City store, the aftermath would suggest that they intended to cause as much

25   destruction as possible.  The contents of the storage bins were dumped out on the

26   floor, mixed in and about with other material.  I understand that papers were

27   strewn all about the store.  When I learned of the aftermath of the store, it simply

28   appeared the agents had been over-eager to create a mess for us to clean up.   The

agents had taken our sledge hammer that was at the store which we had used to do our remodeling, and used that to beat open the safe.  There is a video of the agents beating the safe open which was published on Youtube.  The safe is destroyed, and the sledge hammer itself is damaged.   I am informed and believe that the restroom facilities were likewise abused.  One or more of the agents had left the results of a bowel movement in the toilet, without flushing.  The toilet worked before and after the raid, thus it was unnecessary to leave feces in the bowl.

6. With respect to the unfinished receivers for the pistols, i.e., the Rudius frames, some 19 that had been taken from the National City store were returned on April 23, 2014 to Lycurgan's former attorneys Michel and Associates.   The ATF provides no explanation why the other thirteen that were returned on June 12, 2014 had not been listed on any inventory.  Although reference in the opposition is made off-hand to the Rudius frames that had been removed from the National City store without inventory, those represented $4750 in value at $250.00 each.

7. While $4,750 may seem inconsequential to the ATF and the agents that took that merchandise without noting it in the inventory, it is not inconsequential to me.   To start this business I sold my car, and my couch and almost every possession I had to raise capital. $4,750 is a large amount of money to me, and I would imagine any small business owner.  Further, I do not understand why items so clearly of value were not placed on the inventory initially.  I do not understand why the items were not with those that were initially returned on April 23, 2014.  By this declaration, I request an explanation.

8. Lycurgan Inc. has many customers who are law enforcement officers that enjoy building their own personal firearms from parts that Ares Armor provides.  Some of those are ATF agents.  I do not doubt that there are other ATF agents that likewise enjoy the hobby of homebuilding firearms, some of those may have participated in the raid.  I can only surmise that the Rudius frames were taken so that those that took the items could build their own 1911 style pistol.

1    9. To the extent that a complaint for theft is required to initiate an internal

2    investigation, I request that the ATF consider my declaration here as such.

3    10. With respect to the life-sized cut-out of the ATF agent referred to in the

4    Government's Opposition at page 9, footnote 5, it is true that I have such a

5    depiction in my possession.   The photograph that was the source of the life-sized

6    cut-out was taken out on a public sidewalk, the agent knew in advance that the

7    photo was going to be taken, and our use of the photograph is consistent with my

8    understanding of my and Lycurgan's rights under the First Amendment to the

9    United States Constitution.  Although the Government claims some sort of

10   unspecified "officer safety" concerns with respect to the life-sized depiction, that

11   concern is without basis.   There are no voodoo practitioners among us that would

12   use the life-sized depiction to cast incantations upon or place needles in.

13   11. Further, as a former Marine infantryman and combat veteran, I have had

14   enough first hand experience with violence in that role to be repulsed by it.  I

15   advocate that the best "weapon" for change is laughter and reasoned discussion.

16   The life-sized cut-out of the ATF agent is a prop for my advocacy, which I

17   understand is protected by the First Amendment to the United States Constitution.

18   12. I am frustrated that the ATF has aborted its intended forfeiture.  We had

19   anticipated demonstrating through the judicial forfeiture proceeding that our

20   merchandise that the ATF seized on March 15, 2014 was neither a "firearm" or

21   otherwise prohibited by the Gun Control Act of 1968.   Lycurgan engaged counsel

22   and spent money on preparing its demand for judicial forfeiture, which the ATF

23   should only have initiated in good faith.

24   13. I believe that the ATF's efforts to obtain the warrant were merely a

25   pretext to avoid the Court's scrutiny of the then pending preliminary injunction.  It

26   seems that the March 15, 2014 raid and the abortive forfeiture were both

27   undertaken to punish me and Lycurgan for refusing to turn over the customer list

28   when it was demanded and then filing the lawsuit styled *Lycurgan, Inc. v. Todd*

1  *Jones*, 3:14-cv-00548-JLS-BGS.  I believe that the raid on March 15, 2014 was

2  conducted to moot the lawsuit of *Lycurgan, Inc. v. Todd Jones*,  rather than as a

3  sincere "crime control" effort.  Now, I believe that the ATF abandoned the

4  forfeiture effort to avoid the unsealing of the affidavit.  In light of its past conduct,

5  I expect that no matter what the outcome of this proceeding, the ATF will escalate

6  their retaliation against me and Lycurgan.

7      14.  I maintain my belief that the ATF intentionally deceived Magistrate

8  Judge Skomol by describing the unfinished AR15 receivers as a "firearms."  I

9  request that the Court order the affidavit unsealed.  Further, if so inclined, I

10  request that the Court command the ATF to return the unfinished receivers or

11  show cause why such return should not be made.

12      I declare under penalty of perjury under the laws of the United States that

13  the foregoing is true and correct.  Executed on July 14, 2014, at the City of La

14  Mesa, County of San Diego, State of California.

Dimitri Karras