# EXHIBIT 'E'

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
HALL OF JUSTICE
TENTATIVE RULINGS - March 18, 2013

EVENT DATE: 03/22/2013        EVENT TIME: 01:30:00 PM        DEPT.: C-72
JUDICIAL OFFICER: Timothy Taylor

CASE NO.: 37-2010-00094816-CU-DF-CTL

CASE TITLE: CHAKER VS. MATEO

CASE CATEGORY: Civil - Unlimited        CASE TYPE: Defamation

EVENT TYPE: Motion Hearing (Civil)

CAUSAL DOCUMENT/DATE FILED:

---

**Tentative Ruling on Motion for Appellate Attorneys' Fees (SLAPP)**

*Chaker v. Mateo*, Case No. 2010-094816

March 22, 2013, 1:30 p.m., Dept. 72

### 1. Overview and Procedural Posture.

In October of 2010, this court granted defendant's special motion to strike pursuant to CCP section 425.16. Plaintiff appealed, and this gave rise to a published opinion, *Chaker v. Mateo*, 209 Cal. App. 4th 1138 (2012). The Court of Appeal affirmed in full, and awarded costs to the defendant. The remittitur issued 12/10/12.

On January 16, 2013, defendant's appellate counsel filed her motion for attorneys' fees on appeal. (ROA 57.) The motion provides timely January 16, 2013 proof of service by mail on the appellate and trial counsel for plaintiff in accordance with Code of Civil Procedure section 1005(b). Plaintiff failed to file opposition. Defendant filed and served a notice of non-opposition on March 13, 2013. (ROA 58.) Defendant's original special motion to strike was filed *in propria persona*, so this is the first time the court has addressed the issue of attorneys' fees in this case.

### 2. Applicable Standards.

California follows the "American rule," under which each party to a lawsuit ordinarily must pay his, her or its own attorney fees. *Trope v. Katz*, 11 Cal.4th 274, 278 (1995); *Gray v. Don Miller & Associates, Inc.*, 35 Cal.3d 498, 504 (1984). Code of Civil Procedure section 1021 codifies the rule, providing that the measure and mode of attorney compensation is left to the agreement of the parties "[e]xcept as attorney's fees are specifically provided for by statute." The so-called anti-SLAPP law is one such statute.

As noted above, defendant was the prevailing party on her special motion to strike. Thus, she is entitled to reasonable fees under CCP section 425.16(c). *See City of Los Angeles v. Animal Defense League*, 135 Cal. App. 4th 606, 627 (2006). The only question properly before the court today is how much.

---

Event ID: 1177748        TENTATIVE RULINGS        Calendar No.:
                         Page: 1

CASE TITLE: CHAKER VS. MATEO          CASE NUMBER: 37-2010-00094816-CU-DF-CTL

A trial court has broad discretion in determining a reasonable amount of attorney fees. (*PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *Id.*

The court must consider such factors as the nature and complexity of the case, the results obtained, the amount of work involved, the available resources, the nature of the issues and the burden of discovery, the skill required and the time consumed, the court's own knowledge and experience, the time spent, and rates charged in the community for similar work. See *Contractors Labor Pool, Inc. v. Westway Contractors*, 53 Cal. App. 4th 152, 168 (1997); see also *Ghirardo v. Antonioli*, 14 Cal. App. 4th 215, 219 (1993).

The case law is clear that fees for seeking fees are properly awarded. *Ketchum v. Moses*, 24 Cal. 4th 122, 133-34 (2001).

The fact that the McMillan firm initially took the case *pro bono* does not preclude an award of fees. See *Marriage of Ward*, 3 Cal. App. 4th 618, 623 (1992).

### 3. Ruling.

The motion is granted, although not in the amount sought. The court practiced law in San Diego for 20 years prior to 2005, and in the years since has had the duty to rule on hundreds of fee applications, in a variety of settings. This has provided the court the opportunity to have insight into the rates charged for lawyers of similar experience and expertise.

Using the very helpful table provided by defense counsel as the point of departure, the court makes the following determinations:

A. As to the fine appellate work, the court finds the hourly rates of Mr. McMillan ($500hr.) and Mr. Healy ($250/hr.) to be reasonable. In addition, considering the needs of the case (a letter brief specifically requested by the Court of Appeal), the time spent (about 30 hours each by the senior partner and the junior associate) was entirely appropriate. Although the record on appeal was not large, the case presented challenges in that the defendant had filed her motion *in propria persona*. There were time constraints, but that is true in any appeal. In addition, defendant was located in Texas, which no doubt presented some communication challenges. A lodestar for the McMillan/Healy time of $22,275.00 is appropriate in light of the results obtained. This yields a blended rate of about $370/hr., which is quite reasonable. The court disallows the time of transitory billers Kalooky, Tinder and Marshall. With transitory billers, there is a strong inference of inefficiency. Thus, the lodestar of $22,275.00 for the appellate work is granted.

B. Turning to the work on the fee request, the court disallows the Tinder and Marshall time for the reasons expressed above, and allows 5 hours at $500/hr. for Mr. McMillan and 5 hours for Mr. Kalooky at $350/hr. There is simply no basis for the 18 hours of "anticipated work" discussed in the moving papers, as no opposition was filed and there is no need for a reply brief. Thus, the lodestar of $4250.00 for the motion work is granted.

C. The request for a 2.0 multiplier is denied. Fee enhancements by means of multipliers or otherwise are well recognized in California. *E.g., Serrano v. Priest*, 20 Cal. 3d 25 (1977) (*Serrano III*); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991); *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78 (1988); *Kern River Public Access Com. v. City of Bakersfield* 170 Cal. App. 3d 1205 (1985). Under California law, the trial court begins by fixing the "lodestar" reflecting a compilation of the time spent and reasonable hourly compensation of each attorney or legal professional involved in the presentation of

CASE TITLE: CHAKER VS. MATEO          CASE NUMBER: 37-2010-00094816-CU-DF-CTL

the case. The court then adjusts this figure in light of a number of factors that militate in favor of *augmentation or diminution. Serrano III*, 20 Cal. 3d at 48-49 (emphasis by this court).

The purpose of a fee enhancement is not to reward attorneys for litigating certain kinds of cases, but to fix a reasonable fee in a particular action. Statutes allowing fee awards authorize an award of *reasonable* attorney fees, not an award of reasonable fees plus an enhancement. Nonetheless, the courts recognize that some form of fee enhancement may be appropriate and necessary to attract competent representation in cases meriting legal assistance. In *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 322 (1983), our Supreme Court implicitly found that it would be appropriate to enhance an award by means of a multiplier "'to reflect the broad public impact of the results obtained and to compensate for the high quality of work performed and the contingencies involved in undertaking this litigation.'" This does not mean, however, that the trial courts should enhance the lodestar figure in every case of uncertain outcome or where the work performed was of high quality. The challenge for the trial courts is to make an award that provides fair compensation to the attorneys involved in the litigation at hand and encourages litigation of claims that in the public interest merit litigation, without encouraging the unnecessary litigation of claims of little public value.

The classic situation justifying an upward adjustment of the lodestar figure was seen in the *Serrano* cases [*Serrano v. Priest*, 5 Cal. 3d 584 (1971)(*Serrano I*), *Serrano v. Priest*, 18 Cal. 3d 728 (1976)(*Serrano II*), and *Serrano III, supra*, 20 Cal. 3d 25]. The litigation there revolved around California's system for financing public schools. The plaintiffs succeeded in overturning the existing system, obtaining an order that it be replaced by a system designed to provide an equitable distribution of state funds between all public schools. The litigation resulted in no fund of money from which attorney fees might be paid, nor did it result in any monetary recovery by the plaintiffs. The plaintiffs were under no obligation to pay their attorneys for their efforts. It appears that the attorneys did, however, receive some funding from charities or public sources for the purposes of prosecuting cases of the character involved in that action--a factor the court found to be relevant in determining the size of an award of fees. (*Serrano III, supra*, 20 Cal. 3d at p. 49, fn. 24.) Finally, an award of fees was uncertain not only because of the complexity and difficulty of the legal issues involved, but because there was no clear statutory authority for shifting attorney fees to the defendant.

The court in *Weeks* contrasted that case with the situation in *Serrano III*: "the present case is in essence a personal injury action, brought by a single plaintiff to recover her own economic damages. Weeks and her attorneys had a fee agreement by which her attorneys were assured of a portion of any recovery. In addition, because of the availability of attorney fees under the FEHA, the attorneys had reason to assume that the amount of Weeks's recovery would not limit the amount of fees they ultimately received. Thus, the risk that Weeks's attorneys would not be compensated for their work was no greater than the risk of loss inherent in any contingency fee case; however, because of the availability of statutory fees the possibility of receiving full compensation for litigating the case was greater than that inherent in most contingency fee actions." 63 Cal. App. 4th at 1174.

The court finds that this case resembles *Weeks* more than it resembles *Serrano III*. Given the fee shifting provisions of the SLAPP statute, the McMillan firm had a reasonable opportunity to recover fees (unlike the lawyers in *Serrano III*). While the McMillan firm has gone unpaid for the better part of a year, that happens all the time in contingent fee work such as that regularly undertaken by the McMillan firm, and presumably is a factor in rate design. While the quality of the work here was undeniably good, this too is a factor in rate design. While it is true there may be future litigants relying on the published decision, at bottom this was a case about vindication of Ms. Mateo's individual rights – not a situation such as that encountered in *Serrano III*. And while there may not have been much in the way of precedent as far as internet expression is concerned, the law relating to special motions to strike is well-developed and not particularly novel.

There is an underlying theme in the moving papers of punishing Mr. Chaker for having been adjudicated a vexatious litigant, for having two sets of lawyers, or for his conduct in relation to Ms. Mateo. While perhaps tempting, this is not the proper role of a fee multiplier.

Event ID: 1177748          TENTATIVE RULINGS          Calendar No.:
                                Page: 3

CASE TITLE: CHAKER VS. MATEO          CASE NUMBER: 37-2010-00094816-CU-DF-CTL

In light of the foregoing, the motion is granted in the amount of $26,525.00. This is in line with fees awarded by this court in other SLAPP settings. The clerk is directed to add this amount, plus the amounts claimed in the Memorandum of Costs filed 12/21/12, to the Judgment filed 12/10/12.