1  LAURA E DUFFY
   United States Attorney
2  ANDREW R. HADEN
   Assistant U.S. Attorney
3  California Bar No.: 258436
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101
5
   Attorneys for the United States
6

7               **UNITED STATES DISTRICT COURT**

8             **SOUTHERN DISTRICT OF CALIFORNIA**

9  IN RE THE SEARCH OF:              Case No.: 14-CV-1424-JLS

10 Ares Armor, 206/208 N. Freeman    **Date:  November 20, 2014**
   St., Oceanside; Ares Armor,       Time:  1:30 p.m.
11 416 National City Blvd.; Ares
   Armor Warehouse, 180 Roymar
12 St. D; and 2420 Industry,         **UNITED STATES' RESPONSE IN**
   Oceanside, CA.                    **OPPOSITION TO PETITIONER'S MOTIONS**
13 ─────────────────────────────     **FOR NEW TRIAL AND MOTIONS FOR**
                                     **ATTORNEY'S FEES**
14 LYCURGAN, INC. d/b/a ARES
   ARMOR,
15                  Petitioner,

16        v.

17 BUREAU OF ALCOHOL,
   TOBACCO, FIREARMS AND
18 EXPLOSIVES,
                     Respondent,
19

20

21        COMES NOW the respondent, the Bureau of Alcohol, Tobacco,

22 Firearms, and Explosives, by and through its counsel, LAURA E.

23 DUFFY, United States Attorney, and Andrew R. Haden, Assistant

24 United States Attorney, and hereby responds to Petitioner's above-

25 captioned motions.  This response in opposition is based upon the

26 files and records of the case together with the attached memorandum

27 of points and authorities.

28

**STATEMENT OF THE CASE**

**A.** <u>The AR-15 Lower Receiver</u>

The AR-15 is a semi-automatic, civilian version of the .223-caliber M16 machine gun used by the United States military. <u>See</u> Doc. No. 14-1 at ¶ 10. The AR-15 is comprised of many parts, including the (1) lower receiver, (2) upper receiver, (3) stock, (4) barrel, and (5) magazine. <u>Id.</u> at ¶ 11.

Most firearm parts are not subject to regulation and can be bought and sold without a background check. The lower receiver, however, is different. The lower receiver is the body of the firearm to which the other parts are attached. It is considered the "firearm" and, therefore, is subject to firearms laws enforced by the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). <u>Id.</u> at ¶ 14. Only Federal Firearms Licensees can manufacture firearms for sale and the licensee is required to mark all such firearms with a serial number. <u>See</u> generally 18 U.S.C. §§ 922(a) and 923(i). Federal Firearms Licensees are also required to perform a background check prior to the transfer of any firearm to a non-licensee.

**B.** <u>The Seizure of 5,804 EP80 Lower Receivers from Plaintiff</u>

EP Armory is under investigation in the Eastern District of California for illegally manufacturing "EP80" lower receivers, which are commonly used to make AR-15 style rifles. <u>See</u> Doc. No. 14-1 at ¶ 24; Doc. No. 14-4 (under seal). ATF has determined that the EP Armory EP80 lower receivers are firearms. <u>See</u> Doc. No. 14-1 at ¶ 19, 22, 23.

EP Armory does not have a Federal Firearms License to lawfully manufacture firearms for sale, and therefore, cannot legally engage in the sale and transfer of firearms.

On March 7, 2014, ATF Special Agents served a search warrant at EP Armory, pursuant to warrant no: 5:14-sw-00013-JLT, obtained in the United States District Court for the Eastern District of California, from United States Magistrate Judge Jennifer L. Thurston. See Doc. No. 14-1 at ¶ 24. Significantly, that search warrant was issued under seal. And it remains sealed.

Business records obtained from the search indicated that Plaintiff Ares Armor – which also does not have a Federal Firearms License to sell firearms – was receiving and selling EP80s manufactured by EP Armory in violation of federal law. Id. at 25-27, 38.[1]

On March 14, 2014, a search warrant was signed in the Southern District of California by United States Magistrate Judge Bernard G. Skomal. Doc. No. 14-1. The search warrant was supported by an affidavit signed by an ATF Special Agent. Id. at 3-25. The final page of the affidavit included a request for sealing the application and warrant. Id. at 25. One of the reasons proffered to justify the sealing order was that items were going to be seized that were "relevant to an ongoing investigation into criminal activity." Id. at 25.

---

[1] For a more complete explanation of the threat that unregistered AR-15's pose, and to see Mr. Karras explain that he hopes "to get as many of them onto the streets as humanly possible" watch: https://www.youtube.com/watch?v=u-m0RRbfvh4

Magistrate Judge Skomal concluded that there was sufficient probable cause, signed the warrant, and granted the motion to seal. The warrant authorized the search of four separate locations that were all related to Ares Armor.  See 14-MJ-962.

Because the search warrant had been issued outside of regular business hours, it was not assigned a case number until Monday, March 17, 2014.  Id.

On Saturday, March 15, 2014, ATF agents seized 5,804 EP80s from Plaintiff pursuant to the search warrant issued by Judge Skomal.  See Doc. 1-2 at 73.  The 5,804 EP80s seized from Ares Armor have been classified as firearms.  See 14-CV-1679-JLS, Doc. No. 7-3 at ¶ 4, *Decl. Resident Agent in Charge of the Fresno Field Office Brice P. McCracken*.  As such, they are contraband and are presently being held as evidence in connection with the Eastern District of California's investigation of EP Armory.  Id. at ¶ 6.

C.  **Plaintiff's Lawsuits Against ATF**

This is the second of three lawsuits that Plaintiff Ares Armor has filed over ATF's seizure of the EP80 lower receivers.

The first lawsuit, Lycurgan, Inc. dba Ares Armor v. Jones, 14-cv-0548-JLS (BGS) ("Ares Armor I"), sought an injunction prohibiting ATF from taking any action to seize the EP80 lower receivers.  That lawsuit was mooted by ATF's seizure of the lower receivers pursuant to the search warrant issued by Magistrate Judge Skomal.  Ares Armor has a pending motion to amend its complaint in that case.  Among other things, Ares Armor's motion requests leave to sue (in his individual capacity) the ATF employee who examined the EP Armory EP80s and opined that they are firearms for allegedly

violating Ares Armor's First Amendment right to free speech. See Ares Armor I (ECF #35-4) at 38. That lawsuit is being handled by the Civil Division of the United States Attorney's Office.

The third lawsuit, Lycurgan, Inc. dba Ares Armor v. Jones, 14-cv-1679-JLS (BGS) ("Ares Armor III"), seeks to compel the return of the lower receivers seized in the search warrant. The complaint invokes CAFRA, 18 U.S.C. § 983, as the jurisdictional basis for seeking this relief. Id. at 2-4. The United States has moved to dismiss that case because CAFRA is a civil asset forfeiture statute and provides no jurisdictional basis for ordering the return of property seized pursuant to a criminal search warrant. That motion is scheduled to be heard November 6, 2014. That lawsuit is also being handled by the Civil Division.

### D. **Ares Armor II – Ares' Motion to Unseal the Seach Warrant**

The instant lawsuit, which was the second filed case (Ares Armor II), sought to unseal the criminal search warrant affidavit issued under seal by Magistrate Judge Bernard G. Skomal. Although it was attacking a criminal search warrant, it was filed as a civil lawsuit.[2] Despite its civil designation, this lawsuit is being handled by the Criminal Division of the United States Attorney's Office.

---

[2] As mentioned above, at the time of service on Saturday, March 15, 2014, the search warrant at the various Ares Armor locations was valid but had not been assigned its ultimate case number. See 14-MJ-962 (filed Monday, March 17, 2014). It appears that the instant "lawsuit" might have been filed under the criminal case number if that number had been known by Ares at the time of filing. If it had been, this case would be a criminal matter, not a civil action.

The motion to unseal was fully briefed by the parties. A motion hearing was conducted on July 31, 2014. See Doc. No. 11. At the motion hearing, the Court requested additional information from ATF. Id. The additional information – now openly understood to be additional information regarding the ongoing criminal investigation into EP Armory taking place in the Eastern District of California – was to be filed on or before August 29, 2014. Id.

Instead, on August 14, 2014, the United States Attorney's Office in the Eastern District of California and ATF determined that their continued interest in the ongoing sealing had subsided to some degree since the early days of July, and thus, they elected to allow a redacted copy of the search warrant affidavit to be unsealed. Doc. No. 14. The only items redacted were the names of the various ATF agents mentioned in the affidavit. Id.

On August 21, 2014, this Court denied as moot Petitioner's motion to unseal. Doc. No. 16. A judgment was issued the same day. Doc. No. 17. The judgment also indicates that Petitioner's motion was simply denied as moot. Id.

The instant motions followed.

## II

### ARGUMENT

Petitioner's litigation strategy has been to file lawsuits and motions with this Court frequently and often.

In the instant matter, Ares Armor II, Petitioner filed its motion for attorney's fees on three separate occasions with multiple hearing dates. See Doc. No. 18 (motion hearing date of

October 9, 2014); Doc. No. 21 (motion hearing date of October 30, 2014); Doc. No. 29 (motion hearing date of October 30, 2014).

After unilaterally declaring themselves the prevailing party and requesting attorney's fees, Petitioner then filed a motion for new trial. Doc. No. 23. Shortly thereafter, Petitioner filed a Notice of Appeal with the Ninth Circuit. Doc. No. 26. On October 1, 2014, the Ninth Circuit ordered the appellate proceedings to be held in abeyance pending the resolution of the various motions Ares Armor continued to file. Doc. No. 33.

On September 29, 2014, this Court granted the parties' motion to consolidate the various pending motions to a single hearing date – November 20, 2014 at 1:30 pm. Doc. No. 32.

In sum, now pending before the Court is Petitioner's motion for new trial (Doc. No. 23) and their motion for attorney's fees (Doc. No. 29 appears to be the operative version).

The motions are interrelated, in that, the outcome of the motion for new trial dictates the viability of the motion for attorney fees. As such, and to aid the Court in its resolution of the matters, ATF has elected to consolidate its briefing on the motions into this single filing.

For the reasons explained below, each claim lacks merit. The motions should be denied.


A. <u>Petitioner's Motion For New Trial (Doc. No. 23)</u>

As a preliminary matter, lest it be forgotten, this matter is not a civil "case" in the traditional sense. Unlike Ares I and Ares III, a complaint was never filed. Instead, this "case" was opened by the filing of a single motion. Doc. No. 1. That motion

was denied as moot and a judgment was entered. If this case was labeled as a criminal matter, the instant request would be a criminal motion for reconsideration.

In any event, based on the unique circumstances of this matter, this "case" is labeled as civil. And Petitioner has moved for a "new trial" related to their motion under Federal Rule of Civil Procedure 59(a). Doc. No. 23 at 2.

Rule 59(a) does empower the district court to grant a new trial to any party on all or some of the issues previously presented. Specifically, Rule 59(a)(2) states that after "a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

In the Ninth Circuit, a district court may only grant a new trial or amend its judgment for three reasons: "(1) manifest error of law; (2) manifest error of fact; and (3) newly-discovered evidence." Knapps v. City of Oakland, 647 F.Supp.2d 1129, 1174 (N.D. Cal. 2009); citing Brown v. Wright, 588 F.2d 708, 710 (9th Cir.1978).

On appeal, a district court's denial of a motion for a new trial is reviewed for abuse of discretion. California Sansome Co. v. United States Gypsum, 55 F.3d 1402, 1405 (9th Cir. 1995).

Focusing upon the legal justifications listed above, Petitioner claims that a new trial is warranted based upon newly discovered evidence. Doc. No. 23 at 4:17-19. The newly discovered evidence is the redacted-affidavit. Petitioner claims that the

affidavit warrants a new trial for two reasons: (1) because the redacted affidavit is insufficient, and (2) because this issue between Ares Armor and ATF is capable of repetition. Neither claim warrants the requested relief.

### 1. The Redacted Affidavit is Sufficient

In contrast to Petitioner's claims, the redacted affidavit is sufficient. In their original filing – and at oral argument on July 31 (discussed in further detail below) – Ares Armor indicated that they needed to see the affidavit to assess whether sufficient probable cause existed for the search. Most importantly, according to them, they wanted to see the technical assertions by ATF that led to the classification of the lower receivers as firearms. The redacted version of the affidavit supplied Ares Armor with all of that information. The instant controversy is over.

The redaction of the case agents' names does not resuscitate this controversy for at least three reasons. First, at the July 31st oral argument, ATF expressed its desire to redact the case agents' names. If memory serves, this Court seemed receptive to that proposed solution. On August 14, 2014, ATF filed the redacted-affidavit. This Court reviewed the supplied information, balanced the redacted-affidavit against what Petitioner had been seeking, and concluded the controversy was moot. In other words, this Court has already considered the sufficiency of the redacted version and concluded that it was. That decision should not be disturbed and Petitioner's motion should be denied.

Second, having switched their focus, Ares Armor now indicates that it needs the names of the case agents so that it can conduct

research about them. Doc. No. 23 at 5-6; see also Doc. No. 29 at 6 (where they mention a possible Bivens action). Obviously, that research is not needed in the instant single-motion that has already been resolved. Instead, the names of the case agents appear to be most relevant as they relate to Ares I and Ares III.

Those lawsuits – which were filed with complaints and are proceeding in the normal course of civil litigation – are the best and most appropriate vehicle through which discovery should be requested and received. That vehicle would also allow for a Magistrate Judge to make decisions regarding the propriety of such a discovery request and to potentially *place limitations* on the dissemination of that information prior to its production. Phrased differently, a Magistrate Judge could take steps to make sure that Petitioner does not share the names with the general public, which could get the case agents personally harmed. (see further discussion below).

In sum, using the discretion afforded under the applicable legal standard, this Court should recognize that Ares I and Ares III are the more appropriate vehicles for Ares to seek the desired information. As such, the motion for "new trial" should be denied.

Third, this Court should recognize that redacting the names of the case agents was prudent in light of the extremely unique and case-specific circumstances presented. The execution of the search warrants in this case caused a unique reaction in the public sphere. This Court is aware that the names of various case agents, judges, and others were listed on various internet sites. Some of the sites implied or encouraged violence against those individuals.

In some cases, the followers of those websites indicated a desire to know the names and addresses of the case agents.[3]

Ares Armor has also personally targeted ATF agents. As discussed at oral argument, and now conceded in their moving papers (Doc. No. 23 at 6 n.1), Ares Armor created a life-sized cut-out of one of the agents which they *still* display in their store. They have also posted pictures of the cut-out agent on various websites. To date, they are childishly unwilling to take the cut-out down until a specific ATF agent requests them to do so. Id.

Ares Armor has also sent pizzas to some of the agents at their office. Id. Their intent may have been playful. It is also fair to assume that the case agents felt that Ares Armor was sending a message. The message was that Ares Armor: a) knows who the case agents are, and b) knows where to find them. Erring on the side of caution, the pizza delivery was quite chilling.

It is especially chilling if you also know that Dimitrios Karras — the owner of Ares Armor and multi-time affiant in the instant matters — is currently criminally charged by the State of California for battery on an emergency personnel person, an alleged violation of California Penal Code Section 243(c)(1).

ATF acknowledges that Mr. Karras is innocent until proven guilty. But in the totality of the circumstances, and at this

---

[3] As a small sample of the websites can be found at: https://charlescarrollsociety.com/2014/03/21/jackboot-of-the-week-batfe-agents-involved-in-ares-armor-harassment-2a/ (listing various judges, attorneys, and ATF agents and providing the name, phone number, and address of one attorney; see also e.g. http://www.thefederalistpapers.org/video-2/atf-raids-gun-store-despite-restraining-order-protecting-customer-list (March 16, 2004 posting by "Charlotte Leonard" indicating her wish for the publication of the names and addresses of ATF employees.

stage in the litigation, this Court should consider Mr. Karras as a potential threat, because as this Court knows, in order for Mr. Karras's criminal case (CN329514) to be scheduled for jury trial on November 3, 2014, a probable cause determination was already made.

In sum, the redacted-affidavit was sufficient to moot the alleged controversy. And in the totality of the circumstances, the instant case is not the appropriate vehicle to provide the requested information. The motion for new trial should be denied.

### 2. The Mootness Doctrine Is Not Applicable

In the alternative to ordering the redactions removed, Ares Armor has requested that the Court amend its ruling on the motion to unseal. Doc. No. 23. At 6. In support of their requested relief, Ares Armor invokes the mootness doctrine and the likelihood that the issue of sealed search warrants between ATF and Ares Armor is likely to repeat, while evading judicial review. Doc. No. 23 at 6-12.

The Court should deny this request for two simple reasons. First, the sealing of the affidavit supporting a search warrant is not a tactic available to ATF based upon its unilateral desires. An affidavit is only sealed after a determination by a United States Magistrate Judge. See Doc. No. 14-1. And obviously, a search warrant is not granted unless there a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Jennen, 596 F.3d 594, 598 (9th Cir. 2010). Thus, the concept of unfettered repetition is somewhat mitigated.

Second, and more importantly, the instant record is incomplete. An affirmative ruling would be premature.

On July 31, 2014, the Court was aware – Ares Armor was not – that the justification for the continued sealing of the affidavit was not even related to the Southern District of California. It was related to an ongoing investigation in the Eastern District of California. See Doc. No. 8-4 (under seal). Indeed, as of September 22, 2014, that investigation is still ongoing. See 14-CV-1679-JLS, Doc. No. 7-3 at ¶ 6, *Decl. Resident Agent in Charge of the Fresno Field Office Brice P. McCracken*. Indeed, the warrant related to the search at EP Armory remains sealed.

At the July 31st hearing, this Court indicated that prior to making an affirmative ruling; additional information from ATF was needed. Specifically, additional evidence or arguments related to the compelling government interests that justified *ongoing* sealing. See Doc. No. 11. Significantly, the Court did not appear to take issue with the original decision by Judge Skomal to seal the affidavit.

Because the requested evidence would have required ATF to provide additional information about an ongoing criminal investigation, the Court also provided leave to file the supplemental information under seal. Id. The United States Attorney's Office in the Eastern District of California and ATF strategically elected not to generate additional sealed documents related to their prosecution strategy and/or timeline. And thus, the opportunity to supplement the record with the requested information was respectfully avoided and the redacted version was unsealed. Doc. No. 14.

That strategic course of conduct was not a concession that Judge Skomal's original sealing order was unjustified. It also does not mean that compelling interests supporting the continued sealing did not exist in July, 2014.[4] Nor does it mean that they could not have been articulated to the Court.[5] It simply means that the record is incomplete because the additional information requested by the Court was not placed into the record prior to the judgment being entered.

As such, a ruling would be premature. Ares Armor's request for the Court to affirmatively rule on the motion based on the existing record should be denied in the Court's legal discretion.

*** If the Court agrees that Petitioner's motion pursuant to Rule 59 should be denied, then the Court should proceed to the evaluation of Petitioner's motion for attorney's fees. (listed below in Section II.B).

*** If the Court disagrees, and decides to grant a "new trial" pursuant to Rule 59, ATF would suggest that the matter is no longer final and a discussion of attorney's fees would be premature. In that scenario, the Court's analysis could, and should, stop here – at the present time.

---

[4]    Neither ATF or the United States has ever claimed that sealing of the search warrant affidavit would be indefinite. See Doc. No. 8 at n.10. To the contrary, at the July 31st hearing, ATF explained that unsealing would become necessary at a time in the relatively near future.

[5]    For example, the unsealing of the instant search warrant effectively notified EP Armory that ATF had successfully reviewed the documents it seized and was now investigating EP's customers. Such information, if exposed earlier this summer, could have allowed EP Armory to notify other customers (beyond Ares Armor) and take actions inconsistent with the preservation of evidence.

*United States' Response in Opposition to Petitioner's Motions for New Trial and for Attorney's Fees*

**B. Petitioner's Motion For Attorney's Fees (Doc. No. 29)**

In a separate filing, Petitioner has also moved for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). Doc. No. 29.

The EAJA authorizes courts to award reasonable attorneys' fees and costs to the prevailing party in any civil action brought by or against the United States, unless the district court finds that the position of the United States was substantially justified. 28 U.S.C. § 2412(d)(1)(A).

In order to be substantially justified, the government's position must simply have a "reasonable basis both in law and fact." <u>Tobeler v. Colvin</u>, 749 F.3d 830, 832 (9th Cir.2014). On appeal, the district court's decision to award, or not award, attorney's fees is reviewed for abuse of discretion. <u>Id.</u>

In this case, the Petitioner was not the prevailing party. And even if they were somehow determined to be the prevailing party, ATF's position was substantially justified. Petitioner should not be awarded fees.

**1. Petitioner Did Not Legally Prevail On Their Claim**

As a preliminary matter, the judgment in this case simply states that Petitioner's motion was denied as moot. Doc. No. 17. It does not label a prevailing party.

EAJA does not contain a definition for "prevailing party." To make that determination, the Ninth Circuit has stated that the district court should consider claimants "'prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" <u>National Wildlife Fed'n v. Federal Energy</u>

Regulatory Comm'n, 870 F.2d 542, 544 (9th Cir.1989) (quoting Hensley v. Eckerhart, 461 U.S. 424,(1983).

In the cases cited by Petitioner, prior to being declared a 'prevailing party' the court determined that a significant issue of litigation was actually won by that party. Doc. No. 29-1 at 6; citing: United States v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal., 190 F.3d 977, 981 (9th Cir. 1999)(where claimants legally achieved a judgment that maintained their ownership of 28.7% of the property attempting to be seized by the United States); National Wildlife Federation v. F.E.R.C., 870 F.2d 542, 544-545 (9th Cir. 1989)(no longer good law)(where the court concludes that a party can not be prevailing unless they won some relief on the *merits* of their claims); Neal & Co., Inc. v. United States, 121 F.3d 683, 685 (Fed. Cir. 1997)(where NCI prevailed on four of nine claims and received $792,143 in damages against the United States).

Returning to the instant case, ATF believes that the 'prevailing party' determination is not necessarily as simple as the redacted-affidavit now being unsealed. Perhaps the determination deserves closer analysis of the issues presented.

Petitioner filed a civil motion.[6] The primary contention was that the search warrant affidavit needed to be unsealed to enable them to effectively contest a civil forfeiture proceeding. Doc. No. 1 at 6-7. By July 3, 2014, the civil forfeiture was no longer pending. Doc. No. 8 at 4. The issue was moot. As such, it cannot

---

[6] ATF still maintains that the instant dispute is more appropriately labeled a criminal matter. See supra n.1.

be claimed that Petitioner won on the *merits* of this claim.[7]  See also Celata v. United States, 334 Fed.appx. 801 (9th Cir. 2009)(unpublished)(holding that requirements of a forfeiture statute do not apply when the United States is not pursuing a civil forfeiture and is instead holding contraband as evidence seized pursuant to a validly executed search warrant).

Petitioner's second contention was that "non-party" Tyler Hughes deserved to inspect the affidavit.  Doc. No. 1 at 7.  In response, ATF explained that Petitioner did not have standing to assert the constitutional rights of third parties who may, or may not, wish to have them pursued.  Doc. No. 8 at 5; citing Outdoor Media Group, Inc. v. City of Beaumont, 464 Fed.Appx. 611, 613 (9th Cir. 2011)(unpublished).  At the July 31st hearing, this Court appeared to agree with that legal position.  Petitioner did not win on the merits of this claim.

Petitioner's third contention was that unsealing the search warrants would help curb "governmental misconduct."  Doc. No. 1 at 8.  Petitioner absolutely did not win on the merits of this claim. That determination is appropriately left to the results of Ares I. (the potential Bivens lawsuit).

---

[7]   Although it appeared at oral argument that this Court did not agree, ATF still believes that civil forfeiture proceedings and criminal investigations are separate and unique.  See  Doc. No. 8 at 4 n.3.  This entire action should have been dismissed on that basis.  The Federal Rules of Criminal Procedure provide separate and unique remedies to parties seeking the return of property – or other remedies – seized pursuant to a criminal search warrant.  Had this Court been persuaded by that logic, this entire matter would be resolved and properly re-filed in a criminal proceeding or a civil proceeding that was proceeding in normal course.

Petitioner's fourth and final substantive contention was that ATF lacked a compelling government interest to seal the search warrant documents. Doc. No. 1 at 10-12. As mentioned above, <u>supra</u> Section II.A.2, ATF still maintains that sufficiently compelling governmental interests did exist. More importantly, the Court indicated that additional information was needed in order for such a determination to be made. That information was never received.

As such, because "[a] party is **not** considered a 'prevailing party' on a claim that is not ripe for adjudication [] [P]laintiff[s] cannot recover on that claim." <u>Lake Pilots Ass'n, Inc. v. United States Coast Guard</u>, 310 F. Supp. 2d 333, 345 (D.D.C. 2004) (emphasis added); <u>Bennett v. Coors Brewing Co.</u>, 189 F.3d 1221, 1238 (10th Cir. 1999) (refusing to award attorneys' fees under fee-shifting provision of ADEA where court concluded that claim was not ripe for adjudication). Accordingly, Petitioner also did not win on the merits of this claim.

In sum, although they appear to now have most of the information they claimed to have been seeking, Petitioner did not receive that information through the Court's resolution of the *merits* of any of claim on July 31, 2014.

It is also worth noting, at the July 31st oral argument, ATF agreed that unsealing the affidavit would eventually take place. The unsealing of the redacted-affidavit was done unilaterally without the district court's pronouncement of a legal principle requiring such action prior to August 14, 2014. That distinction has a difference. ATF believes that it makes this case more similar to <u>Rhodes v. Stewart</u>, 488 U.S. 1, 109 S.Ct. 202

18

(1988)(where mootness precluded the designation of a prevailing party), and less similar to <u>Montes v. Thornburgh</u>, 919 F.2d 531 (9th Cir. 1990)(where appellees achieved their objective *only* because of their lawsuit).

In the Court's discretion, Petitioner does not need to be labeled the prevailing party because they did not legally prevail on the merits of any of their claims.

### 2. ATF's Position Was Substantially Justified

The EAJA does not authorize an award of attorneys' fees and costs if the United States' position was substantially justified. See 28 U.S.C. § 2412(d)(1)(A). Thus, courts refuse to award attorneys' fees under EAJA where the government's position "is 'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." <u>Lake Pilots Ass'n</u>, 310 F. Supp. 2d at 339 (quoting <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)). This assessment does not require "a large or considerable amount of evidence" or justification "to a high degree." <u>Pierce</u>, 487 U.S. at 565.

Rather, the test for determining whether the government's position is substantially justified is essentially a test of reasonableness. <u>Role Models America, Inc. v. Brownlee</u>, 353 F.3d 962, 967 (D.C. Cir. 2004); <u>see</u> <u>Doe v. Rumsfeld</u>, 501 F. Supp. 2d 186, 189 (D.D.C. 2007) (explaining that "[t]he D.C. Circuit has stated that 'the hallmark of the substantial justification test is reasonableness.'")(internal citation omitted).

When determining what is reasonable, the limited case law available on the matter is also relevant. In contrast to

Petitioner's assertions (Doc. No. 29 at 8:18-20), ATF did not rely "exclusively" on First Amendment cases. It is true, however, that ATF attempted to provide this Court with binding Ninth Circuit case law. Some of that case law involved the First Amendment. Some of the case law involved the targets of criminal investigations seeking warrant affidavits.

For example, the very first case cited by ATF for this general proposition was <u>United States v. Business of Custer Battlefield Museum and Store Located at Interstate 90, Exit 514, South of Billings, Mont.</u>, 658 F.3d 1188, 1193 (9th Cir. 2011). <u>See</u> Doc. No. at 8.

In that case, Christopher Kortlander was the owner and operator of the Custer Battlefield Museum. <u>Id.</u> at 1190. Mr. Kortlander was criminally investigated for unlawfully attempting to sell migratory bird parts. <u>Id.</u> at 1192. During that investigation, his museum was the subject of two separate search warrants (in 2005 and 2008) both of which were supported by sealed affidavits. <u>Id.</u> at 1192. In 2010, after the investigation was no longer considered to be ongoing, Mr. Kortlander sought copies of the search warrant affidavits. <u>Id.</u> at 1192.

In the process of resolving that case, the Ninth Circuit reiterated that "warrant materials have not historically been accessible to the public during the *early stages* of criminal proceedings." <u>Id.</u> at 1192; <u>Times Mirror Co. v. United States</u>, 873 F.2d 1210, 1213-14 (9th Cir.1989). As seen, that was a "Fourth Amendment" case that is similar to the instant case, in so far as Dimitri Karras is the owner of Ares Armor, which is strikingly

20

similar to the way Kortlander was the owner of the museum. Unlike the investigation into Kortlander's museum, however, an investigation into EP Armory is ongoing.

Although <u>Times Mirror</u> may be labeled a "First Amendment" case, the legal principles laid down by the Ninth Circuit seem unavoidably applicable. In discussing the impact disclosure would have on an ongoing criminal investigation, the Ninth Circuit specifically explained:

> First, and most obviously, if the warrant proceeding itself were open to the public, there would be the obvious risk that the subject of the search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed. Additionally, if the proceeding remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction.

<u>Times Mirror</u>, 873 F.2d at 1215.

Returning to the instant case, with that legal backdrop, it is absolutely certain that ATF's litigation strategy, and the positions it took in July 2014, were reasonable and substantially justified.

As mentioned above, Petitioner's primary contention was that the search warrant affidavit needed to be unsealed to enable them to effectively contest a civil forfeiture proceeding. Doc. No. 1 at 6-7. By July 3, 2014, the civil forfeiture was no longer pending. Doc. No. 8 at 4. The issue was moot. In light of that unavoidable truth, electing to oppose the motion was reasonable.

That characterization is especially true in light of additional Ninth Circuit precedent. In <u>Celata</u>, the Ninth Circuit

explained that the United States had permissibly retained seized contraband for **three years** while it pursued an ongoing criminal investigation. <u>Celata</u>, 334 Fed.appx. at 801. (9th Cir. 2009)(unpublished)(holding that requirements of a forfeiture statute do not apply when the United States is not pursuing a civil forfeiture and is instead holding contraband as evidence seized pursuant to a validly executed search warrant). As a reminder, when this matter came before the Court, the evidence had only been seized for approximately 4 months.

ATF's decision to generally oppose the unsealing of the search warrant in July of 2014 was also reasonable. In the Ninth Circuit, it is understood that affidavits are frequently not unsealed until "post-indictment discovery." <u>Business of Custer Battlefield </u>Museum, 658 F.3d at 1193-1194; quoting <u>Wells Fargo</u>, 643 F.Supp.2d at 581.

Moreover, for lack of better terms, the Ares Armor search warrant was a "piggy back" warrant to the warrant executed at EP Armory in the Eastern District of California. <u>See</u> 5:14-sw-00013-JLT, signed by United States Magistrate Judge Jennifer L. Thurston. In July 2014, at the time ATF was opposing the instant matter, that warrant was sealed. Indeed, to date, it remains sealed.

As such, prior to opposing the instant motion, ATF verified, not with themselves, but with the United States Attorney's Office for the Eastern District of California, that the criminal investigation was ongoing.[8] <u>See</u> Doc. No. 8-4 (under seal). That

---

[8] Section 2412(b) also permits a prevailing party to recover attorneys' fees and costs against the government "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). Courts have interpreted this provision to

distinction seems to be highly probative in regards to whether a search warrant affidavit may permissibly remain sealed.  <u>Times Mirror</u>, 873 F.2d at 1215.  It also indicates reasonableness.

Moreover, it is now understood, to some degree, that the ongoing investigation is relatively complex and involves the review of business records seized at a corporation.  <u>See</u> <u>e.g.</u> Doc. No. 14-1 at ¶ 24-25.  Indeed, as of September 22, 2014, the investigation is still ongoing.  <u>See</u> 14-CV-1679-JLS, Doc. No. 7-3, *Decl. Resident Agent in Charge of the Fresno Field Office Brice P. McCracken*.  No indictment has been sought or obtained.

As such, it was entirely reasonable to contest the unsealing in July 2014.  Phrased differently, it was potentially *unreasonable* to expect the United States Attorney's Office or ATF to unseal an affidavit that would have exposed the details of a larger ongoing criminal investigation in a distant jurisdiction without a perceivable legal justification or a concession from that district.

In sum, even if this Court was skeptical about the compelling interests that justified the need for continued sealing of the

permit a prevailing party in a suit against the government to recover attorneys' fees and costs where the government, either through its conduct before or during litigation, "has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Swedish Hosp. Corp. v. Shalala</u>, 845 F. Supp. 894, 897 (D.D.C. 1993) (quoting <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258-59 (1975)).  "The government acts in bad faith for purposes of the EAJA when the government's position was 'entirely without color' and undertaken for reasons of harassment or delay or other improper purpose." <u>Garcia v. Sullivan</u>, 781 F. Supp. 969, 974 (S.D.N.Y. 1991) (internal citation omitted).  The D.C. Circuit has cautioned courts to award attorneys' fees under this provision "only when extraordinary circumstances or for dominating reasons of fairness." <u>Nepera Chem. Inc. v. Sea-Land Servs.</u>, Inc., 794 F.2d 688, 702 (D.C. Cir. 1986).  Despite several comments by Petitioner, the instant record would not support a bad faith award.

*United States' Response in Opposition to Petitioner's*
*Motions for New Trial and for Attorney's Fees*

search warrant affidavit, the binding Ninth Circuit case law and the facts of this case substantially justified ATF's litigation strategy and the decision to oppose the unsealing in July 2014.

A ruling to the contrary would place ATF in the untenable position of having to make litigation strategies in contrast to applicable law and to persistently jeopardize the integrity of ongoing criminal investigations. Times Mirror, 873 F.2d at 1215. Such results must be avoided. ATF must be declared substantially justified.

Accordingly, this Court should deny Petitioner's fee petition. Doing so would not reasonably be labeled an abuse of discretion. Tobeler, 749 F.3d at 832 (outlining the applicable abuse of discretion standard).

### 3. Not All of Petitioner's Fee Request is Reasonable

Even assuming, *arguendo*, that this Court were to conclude that Petitioner was entitled to recover attorney's fees under EAJA, the fee request should be reduced.

Before awarding prevailing party fees under the EAJA, the court must scrutinize fee requests for "'excessive, redundant or otherwise unnecessary hours 'which firms would have excluded from bills to their own clients.'" In re Donovan, 877 F.2d 982, 995 (D.C. 1989) (quoting Hensley, 461 U.S. at 434)). Indeed, courts will not tolerate a party's efforts to seek compensation for "[o]verstaffing and excessive use of attorney time… at government expense." Ashton v. Pierce, 580 F. Supp. 440, 442 (D.C. 1984).

Thus, where a plaintiffs' billing documentation demonstrates duplication of effort or excessive hours, "the court has the

discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." <u>Bristol Tech., Inc. v. Microsoft Corp.</u>, 127 F. Supp. 2d 64, 70 (D. Conn. 2000). This case warrants such trimming.

For example, Petitioner has billed 6.5 hours for his attorney's observance of the search. Doc. No. 29-2 at 17. For this single motion, Petitioner has also billed 17 hours for communication with his client. <u>Id.</u> These claims are clearly excessive. Should the Court reach this issue, the entire award should be reduced.

### III

### CONCLUSION

For the above stated reasons, the United States respectfully requests that Petitioner's motions be denied.

DATED: October 23, 2014    Respectfully submitted,

LAURA E. DUFFY
United States Attorney

/s/*Andrew Haden*
Andrew R. Haden
Assistant United States Attorney

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE SEARCH OF:<br><br>Ares Armor, 206/208 N. Freeman St., Oceanside; Ares Armor, 416 National City Blvd.; Ares Armor Warehouse, 180 Roymar St. D; and 2420 Industry, Oceanside, CA.<br><br>LYCURGAN, INC. d/b/a ARES ARMOR,<br><br>Petitioner,<br><br>      v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>Respondent, | Case No.: 14-CV-1424-JLS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, ANDREW HADEN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' UNITED STATES' RESPONSE IN OPPOSITION TO PETIONER'S MOTIONS FOR NEW TRIAL AND MOTIONS FOR ATTORNEY'S FEES together with memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Scott McMillan, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 23, 2014.

s/Andrew Haden
ANDREW R. HADEN