Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
**The McMillan Law Firm, APC**
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500 x 14
Fax: (206) 600-5095

Attorneys for Petitioner,
Lycurgan, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE SEARCH OF: Ares Armor, 206/208 N. Freeman St., Oceanside; Ares Armor, 416 National City Blvd.; Ares Armor Warehouse, 180 Roymar St. D; and 2420 Industry, Oceanside, CA. | CASE NO. 14-CV-1424 JLS (BGS) **PETITIONER LYCURGAN, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR NEW TRIAL** Judge: Hon. Janis L. Sammartino Courtroom: 4A Hearing Date: December 12, 2014 Hearing Time: 2:30 P.M. |
| LYCURGAN, INC. d/b/a ARES ARMOR, Petitioner, vs. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, Respondent. | |

*In memoriam*:

**Jastin Pak**

b. July 23, 1987, d. November 4, 2014
Sergeant, United States Marine Corps
Veteran of the Second Battle of Ramadi, Anbar Province, Iraq.
Co-founder and videographer, Lycurgan, Inc.

**PETITIONER'S REPLY MEMORANDUM**

**IN SUPPORT OF MOTION FOR NEW TRIAL**

**Table of Contents**

I.    PREFACE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    a.    Civil Rules of Evidence Apply.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    b.    In its personal attack against Mr. Karras, the Government has engaged in
         improper advocacy.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    c.    Food as a threat.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    d.    Cut-out photo.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    e.    Misdemeanor charge. [Gov't Oppo., p. 11.]. . . . . . . . . . . . . . . . . . . . . . . 3

    f.    Third-party Blogs identifying litigation participants.. . . . . . . . . . . . . . . . . 4

II.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.  The Government's Violation of Lycurgan's Fourth Amendment Right Is
        "Capable of Repetition, Yet Evading Review.". . . . . . . . . . . . . . . . . . . . . 6

        1. The Magistrate Has No Role in the Continued Sealing of a Search
           Warrant Affidavit.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2. The EP Armory Investigation Is Irrelevant and Insignificant to
           Lycurgan's Motion for New Trial.. . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3. A Ruling on Lycurgan's Motion for New Trial Is Not Premature.. . . . . . 9

    B.  The Redacted Affidavit Is Insufficient.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1. The Affidavit Redacts Material Information.. . . . . . . . . . . . . . . . . . . . 9

        2. The Court Found the Redactions Proper Without the Benefit of Hearing
           Lycurgan's Response to the Unsealed Affidavit.. . . . . . . . . . . . . . . 10

        3. Lycurgan's Request to Unseal More Information in the Affidavit is Most

Appropriate in This Action to Unseal the Affidavit.. . . . . . . . . . . . . 11

4. The Affidavit Redactions Are Not Necessary to Protect Officer Safety.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Table of Authorities**

United States Constitution

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11

Federal Decisional Authorities

*Davis v. FEC* (2008) 554 U.S. 724. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*FTC v. Affordable Media, LLC* (9th Cir. 1999) 179 F.3d 1228. . . . . . . . . . . . . . . . . . . . . . 6

*In re Up North Plastics, Inc.* (D. Minn. 1996) 940 F. Supp. 229. . . . . . . . . . . . . . . . 10, 11

*In re Wag-Aero, Inc.* (E.D. Wisc. 1992) 796 F. Supp. 394. . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bus. of Custer Battlefield Museum* (9th Cir. 2011) 658 F.3d 1188. . . .5-7

Federal Statutory Authorities

Evidence Code § 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Other

Civil Rule 83.4 Professionalism. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# I.    PREFACE

### a.    Civil Rules of Evidence Apply.

First off, contrary to the Government's claim to the contrary – this is a civil case. [See, Oppo., pg. 2, fn. 5.] The ATF attempted to keep the substance of a document of legal significance secret. Dimitri Karras is not charged with a crime. Rules allowing the introduction of character evidence lack any application to this discussion. See, Evidence Code § 404.

It is inappropriate to attempt to stigmatize Mr. Karras, or any other person, as some sort of dangerous person in a manner lacking factual substantiation or relevance to the proceedings. The Local Rules of this Court impose on counsel the following expectation, which prohibit such uncivil attacks:

> 2. Conduct to Avoid. An attorney in practice before this court must not:
> a. *Disparage* the intelligence, *ethics, morals, integrity or behavior of opposing parties* or counsel unless such characteristics are at issue.

Civil Rule 83.4 Professionalism, subd. (a)(2).[1]

### b.    In its personal attack against Mr. Karras, the Government has engaged in improper advocacy.

Although it has nothing to do with the issues in the case, the Government draws the reader's attention to the weapons of the "military" in the first sentence of the Opposition brief. Although the in its dealings with Lycurgan, the ATF has openly commented upon Lycurgan's employees's backgrounds, but here in court the Government keeps the reference thinly-veiled. What is actually manifested in its brief is a form of prejudice: prejudice or bigotry against veterans, particularly combat veterans. Yet, most Americans have so honored veterans that they gave them their own holiday: November

---

[1] Indeed, undersigned *could have* pointed out multiple recent substantiated instances of ATF misconduct in this region. The ATF is aware of those:  E.g., *U.S. v. Halgat*, *U.S. v. Dunlap*, *U.S. v. Flores*, *U.S. v. Black*, and lest the reader forget: "Fast and furious."

11.[2]  But, through artful subtext, the Government attempts to marginalize Mr. Karras and the other young men and women of Ares Armor as a "potential threat." [Oppo., p. 12.] Like the personal attacks, the reference to a "machine gun" in the statement of the case is but one example. [Oppo., p. 2.] Such reference has no place in this discussion as no firearms are sold by Lycurgan, let alone a "machine gun."  But, to attack the active members of the military, or veterans such as Mr. Karras through allusion or innuendo is deplorable.  Mr. Karras and the other employees at Ares Armor as former Marines served this country honorably.  If the Government has to reach into pranks, protected speech, and misdemeanor *charges* to conjure a basis to discredit someone, then perhaps they should just refrain from the effort?[3]

In operating Lycurgan's sewing factory and home-build firearms kit distribution business, the men and women of Lycurgan have found a lawful, constructive, remunerative peacetime application for some of the otherwise unusable skills acquired in the service of the United States.  Lycurgan satisfies a market demand for legal product. There is no basis to attack Mr. Karras.  Neither Mr. Karras nor the other employees of Lycurgan persons have threatened to harm others. Yet, the Government attempts to paint Mr. Karras worthy of "caution."  The characterization, like most forms of prejudice, has fear as its cause: irrational, unsubstantiated if not contrived fear.  And, like most forms of prejudice and bigotry, it is also destructive and hurtful.[4]

---

[2] http://www.va.gov/opa/vetsday/vetdayhistory.asp

[3] Indeed, undersigned suspects that the ATF has meddled with the prosecutorial decision-making relating to Mr. Karras's case.

[4] Clearly, the Government is aware of the tremendous psychic toll that the years of war have taken on the Soldiers and Marines that have served the United States.
Everyday, 22 veterans take their own lives.
http://www.cnn.com/2013/09/21/us/22-veteran-suicides-a-day/
Psychically injured Marines and Soldiers are ***not*** committing acts of violence towards others.  Scarred by what they experienced in "theaters of operation," they are harming *themselves*.

c.      Food as a threat.

As discussed during the prior hearing, the Carlsbad office of the ATF had a delivery of eight pizzas – enough to feed an entire office lunch.  There is no suggestion that the Carlsbad office is a "secret" location.  Although the ATF agents did not accept the pizzas, there is no suggestion that there was anything wrong with the pizzas.  On information and belief, the agents pointed firearms at the deliveryman – itself a use of force.  Repeatedly, Government attorneys persist in raising the issue in court to paint a harmless, playful, act of attempted camaraderie as something sinister and dangerous.

d.      Cut-out photo.

Undersigned personally interacted with the agent at the time of the photo. The ATF agent stood on a public sidewalk clearly enjoying the power he wielded, conspicuously smacking gum, gloating over the power that he held and the distress he was inflicting. [See, McMillan Dec. ¶ 6, 6/11/2014, Doc 1-1.]  He and other agents expressed pleasure in discomfort and unhappiness caused by the "raid."[5]  That uncivil agent's likeness now decorates the store as a memento of the raid.[6]  Otherwise, the First Amendment allows such displays and Lycurgan should not be judged as "threatening" as a result of Mr. Karras's and the other employees' exercise of the First Amendment.

e.      Misdemeanor charge. [Gov't Oppo., p. 11.]

Mr. Karras's girlfriend Melissa Mahoney was grabbed and shaken like a rag-doll by a 6'2", 240 lb male.  Mr. Karras intervened, only to suffer a beat-down himself.[7]

_____

[5] One agent expressed how he enjoyed raids. [McMillan Dec. ¶ 13, 6/07/2014, Doc. 1-1.] That same agent also asked John ZumMallen if he "got to shoot anyone" in [the Wars.] [Id.]

[6] To the extent that Mr. Gerdes makes a request that the figure no longer be displayed, which he does not appear inclined to do, Mr. Karras remains willing to remove it as a gesture of goodwill.

[7] Mr. Karras pulled the assailant off of Ms. Mahoney, only to be socked in the face when the assailant turned his attention from Ms. Mahoney to Mr. Karras.  Mr. Karras was overwhelmed by the assailant and the assailant's friends. The assailant and his friends struck Mr. Karras while he was on the ground.  The assailant required no medical

[McMillan Reply Dec., ¶ 4.]  Mr. Karras is now put to the task of establishing his "defense of others" to refute the misdemeanor charge.

f.    Third-party Blogs identifying litigation participants.

The Government complains about the discussions within the online community. [Oppo., p. 11., fn. 3.] With respect to Charles Carroll Society's blog, all it took was a request from undersigned to not publish the names and the author graciously edited the post. [McMillan Reply Dec. ¶ 2.] This is a matter of public interest. Others are entitled to their opinions, and to exercise their First Amendment rights about the case.

## II.    INTRODUCTION

Although Lycurgan is allowed under existing California and U.S. law to sell its unfinished receivers, it is on a collision course with the ATF.  That collision course exists because the ATF intends to stop those that supply the means for the homebuilding of firearms.  It matters not that Congress has deemed homebuilding legal. ATF leadership has announced publicly on ABC's Nightline that the ATF will interfere.  Carlos Canino, ATF Special Agent in Charge for Los Angeles, told ABC's Nightline:

> "Okay so this is a AR-15, umm homemade, from a unfinished lower receiver and this weapon was purchased by ATF undercover agent from gang members here in Los Angeles.  This is a completely untraceable firearm."
>
> * * *
>
> ". . .They teach us, they teach ATF agents, they tell us umm... every gun tells a story.  This gun does not talk.  This gun is mute." . . . "*If somebody is making this into this, my job is to try to stop them.*"

[See ABC's Nightline cited by Gov't in Opposition, pg. 3, fn. 1, at 5:30.][8]

But, the ATF has even recognized that it is entirely legal for individuals making a

treatment.  Both Ms. Mahoney and Mr. Karras required medical treatment.  At his preliminary hearing, the Superior Court judge reduced Mr. Karras's charges to a misdemeanor because the assailant did not require medical attention. [See, McMillan Reply Dec. ¶ 4.]

[8]ABC's Nightline, April 23, 2014, Homemade Guns: Legal, Unregistered and Can Kill,  https://www.youtube.com/watch?v=u-m0RRbfvh4

firearm for personal use so long as it does not violate the NFA.[9]

> 12. Can anyone make firearms and sell them?
> *With certain exceptions, and subject to any state law that might apply, as long as an individual is not prohibited from possessing a firearm, he or she can make a firearm for personal use.* If an individual wants to manufacture and sell firearms, he or she is required to obtain a license, and mark each firearm manufactured in accordance with 27 CFR 478.92. [18 U.S.C. 923(i), 26 U.S.C. 5822]

[ATF Press Release, October 23, 2014, McMillan Reply Dec., Exhibit B.]

This *political* question is itself a topic of interest. Indeed, California State Senator Kevin de Leon introduced SB 808 to require homebuilders of firearms, such as Lycurgan's customers, to serialize their home-built firearms. Sen. de Leon successfully convinced the California legislature to support his "Ghost Gun" bill, passing it. On September 30, 2014, Governor Brown, however, vetoed the bill specifically stating:

> "To the Members of the California State Senate:
> I am returning Senate Bill 808 without my signature.
> SB 808 would require individuals who build guns at home to first obtain a serial number and register the weapon with the Department of Justice.
> I appreciate the author's concerns about gun violence, but I can't see how adding a serial number to a homemade gun would significantly advance public safety."

[9/30/2014, Gov. Brown Veto Message, McMillan Reply Dec., Exh. A.]

However, now, the ATF has taken the position that homebuilt firearms must be serialized.

> "5. When does a receiver need to have markings and/or serial numbers?
> Receivers that meet the definition of a "firearm" must have markings, including a serial number. See 27 CFR § 478.92 (Firearm manufacturers marking requirements)."

[ATF Press Release, McMillan Reply Dec., Exh. B.]

But the marking requirement only applies to manufacturers, not individuals who are simply building for their own use.

It is clear that the ATF and its Agents, under the current administration, is likely to return to persecute Lycurgan further. The Government is free to request another search warrant at any time to raid Lycurgan, which is still in operation and is supposedly under a criminal investigation. (*Cf. United States v. Bus. of Custer Battlefield Museum* (9th Cir.

---

[9] http://www.atf.gov/content/contact-us/pressroom/receiver-blanks-Q%26As

2011) 658 F.3d 1188, 1190-91 ["During that investigation, two search warrants were executed (in 2005 and 2008), and the court sealed the affidavits supporting the warrant applications."].)[10] The time, effort and expense of having to re-litigate this issue can be readily avoided by a ruling on the merits by this Court based on the already submitted briefing and oral argument.

Lycurgan also requests the Court to take further action to order Respondent United States ("the Government") to withdraw the redactions of the affiant's name as currently contained in the search warrant affidavit ("Affidavit"). The affiant's name is material to enable Lycurgan to challenge the affiant's technical determinations of Lycurgan's 80% unfinished lower receivers.

## III.  ARGUMENT

### A. The Government's Violation of Lycurgan's Fourth Amendment Right Is "Capable of Repetition, Yet Evading Review."

An issue is not moot if it is capable of repetition, yet evading review. (*Davis v. FEC* (2008) 554 U.S. 724, 735.) "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." (*Id.*, internal quotations omitted.) Here, the issue of Lycurgan's Fourth Amendment right to pre-indictment access to search warrant materials falls within this mootness exception because (1) the duration for sealing a search warrant affidavit is narrowly limited in time, and (2) the Government is free to obtain another search warrant under ongoing seal against Lycurgan at any time. [See Mtn. for New Trial at 7:13-12:15; *cf. Bus. of Custer Battlefield Museum*, 658 F.3d at 1190-91; *FTC v. Affordable Media, LLC* (9th Cir. 1999) 179 F.3d 1228, 1237.]

---

[10] In *Custer Battlefield Museum*, the Government agreed to let the search target and his attorney personally review the search warrant affidavit and use in any future court filings. (*Id.*, *supra* at 1191.) The district court and Court of Appeal affirmed such access. (*Id.* at 1191, 1196.)

1. <u>The Magistrate Has No Role in the Continued Sealing of a Search Warrant Affidavit</u>.

The Government argues this issue is not capable of repetition, yet evading review because "[a]n affidavit is only sealed after a determination by a United States Magistrate Judge." [Gov.'s Opp'n at 12:20-21.] However, the Magistrate does not have a role in the *continued* sealing of the Affidavit, which is the issue here.[11] Even after the ATF raided Lycurgan, and the details of its investigation were publicly known, the ATF still refused to allow Lycurgan to review the Affidavit. (*Contra Bus. of Custer Battlefield Museum*, 658 F.3d at 1191.) That decision to continue sealing the Affidavit was made exclusively by the Government without involvement of the judiciary or any other oversight. The Government unnecessarily forced Lycurgan to hire counsel, incur staggering attorney's fees,[12] and expend substantial time and effort in forcing the Government to unseal the Affidavit through the judicial process. Lycurgan, now financially worn down by the Government, does not have the means to protect its Fourth Amendment right again in the future.

2. <u>The EP Armory Investigation Is Irrelevant and Insignificant to Lycurgan's Motion for New Trial</u>.

The Government raises a new and curious argument that "the continued sealing of the affidavit was not even related to the Southern District of California. It was related to an ongoing investigation in the Eastern District of California." [Gov.'s Opp'n at 12:2-5.]

---

[11] The Government notes: "Significantly, the Court did not appear to take issue with the original decision by Judge Skomal to seal the affidavit." [Gov.'s Opp'n at 13:14-16.] That is not significant. Lycurgan did not even take issue with the original decision by Judge Skomal to seal the Affidavit. Lycurgan objected only to the continued sealing of the Affidavit after the investigation was made public. The Court shared in Lycurgan's concern as well. [Gov.'s Opp'n at 13:10-14.]

[12] Mr. Karras's personal investment in Lycurgan, and the threat that the ATF poses to the young business has also placed his Mother's home and daycare business at risk to foreclosure. [See, Karras Fee Motion Reply Dec..]

This argument is irrelevant to Lycurgan's motion for a new trial.[13] The argument is more applicable to the Government's position that it was substantially justified to continue sealing the Affidavit, in opposition to Lycurgan's separate motion for attorney's fees under the Equal Access to Justice Act. Nevertheless, since the Government raised this argument in opposition to Lycurgan motion for new trial, Lycurgan will address this argument here.

First, the Government did not even mention the "ongoing investigation in the Eastern District of California" in its sealing request to the Magistrate. [See Affidavit at p. 23.] The Government referred to the EP Armory investigation in its 30-page Affidavit purely to provide context for the investigation of Lycurgan. [*Id*. ¶¶ 22-25.] The entire Affidavit focused on the criminal investigation of Lycurgan in the Southern District of California. [See, generally, Affidavit.] There was no reliance on the EP Armory investigation to seal the Affidavit.

Second, the investigations of Lycurgan and EP Armory are factually equivalent. Both businesses were publicly raided by the ATF under the ATF's same nascent interpretation that the unfinished lower receivers constitute "firearms." [Mtn. to Unseal at 1:22-2:15.] The only difference is the location of the investigations. Therefore, the Government's reliance on the EP Armory investigation to support its decision to continue sealing the Affidavit is cumulative and unnecessary.

The Government opposed unsealing the Affidavit based exclusively on the following general and abstract arguments:

Unsealing the affidavit at this time would: alert the targets (in this district

---

[13] To the extent the EP Armory investigation is relevant, it further supports Lycurgan's anticipation of having to re-litigate its right to unseal search warrant materials. The Government points to the EP Armory investigation as a reason for keeping the Affidavit sealed. [Gov.'s Opp'n at 12:2-5.] The EP Armory investigation is ongoing and "the warrant related to the search at EP Armory remains sealed." [Gov.'s Opp'n at 13:8-9, emphasis in original.] The circumstances remain the same, which increases the likelihood of a repeated occurrence of the Government refusing to unseal a second search warrant affidavit against Lycurgan.

and others) of the investigation; reveal the investigative strategy or undercover operations that have taken place; expose the potential criminal charges being pursued; cause the potential destruction of evidence; create the ability to coordinate stories before testifying; or even cause flight.

[Gov.'s Opp'n to Mtn. to Unseal Affidavit at 9:13-18.] At the time the Government expressed the foregoing concerns, the targets of the investigations had at least four months' notice of the two investigations, the criminal charges being sought, the theory of the ATF, and other details of the investigations. [See Reply in Supp. of Mtn. to Unseal at 6:4-15.] Therefore, the Government's general/abstract concerns were inapplicable to the actual facts of the Lycurgan and EP Armory investigations. Furthermore, during oral argument, the Court found that the Government failed to demonstrate a compelling governmental interest to continue sealing the Affidavit. [Fee Mtn. at 10:16-22.]

3. A Ruling on Lycurgan's Motion for New Trial Is Not Premature.

The Court found the Government failed to adequately support its position, and thus ordered the Government to file supplemental briefing. [Fee Mtn. at 10:16-22.] The Government "strategically" declined to do so. [Gov.'s Opp'n at 13:20-23.]

The Government does not expressly explain its "strategy" for electing not to support its position. However, the inference is quite clear. The Government states that its decision to not submit supplemental briefing to support its position "means that the record is incomplete because the additional information requested by the Court was not placed into the record prior to the judgment being entered." [Gov.'s Opp'n at 14:5-8.] The Government now suggests that the incomplete record, by its own doing, means rulings on Lycurgan's motions for attorney's fees and a new trial would be "premature." [Gov.'s Opp'n at 14:9-11.] First, the record is not incomplete. Lycurgan's motion to unseal the Affidavit was fully briefed and argued by both parties. Supplemental briefing is not needed to complete the record. Moreover, the Government should not be able to benefit from its refusal to comply with the Court's order to submit supplemental briefing.

**B. The Redacted Affidavit Is Insufficient**.

1. The Affidavit Redacts Material Information.

The Government correctly states that Lycurgan "needed to see the affidavit to

1   assess whether sufficient probable cause existed for the search." [Gov.'s Opp'n at 9:9-
2   10.] Indeed, Lycurgan's Fourth Amendment right to be free from unreasonable searches
3   and seizures depends on its review of the Affidavit. (*In re Up North Plastics, Inc.* (D.
4   Minn. 1996) 940 F. Supp. 229, 232-33.)  In order to adequately evaluate the probable
5   cause, or lack thereof, Lycurgan needs to know what technical assertions were made by
6   the ATF in concluding that the unfinished receivers were firearms *AND* who made them.
7   For instance, if the ATF agent who made the technical assertions had little to no training
8   in firearms, that would undermine the veracity of the ATF's findings.[14]  [See O'Kelly
9   Decl. ¶¶ 83-87.]  Also, if the ATF agent who made the technical assertion offered a prior
10  inconsistent conclusion, that would also undermine the veracity of the ATF's findings.
11  [See Pet.'s Mtn. For New Trial at 6:2-3.]

12          2. The Court Found the Redactions Proper Without the Benefit of Hearing
13             Lycurgan's Response to the Unsealed Affidavit.

14          Contrary to the Government's arguments, the Court never addressed the issue
15  whether redaction of the affiant's name was appropriate. [Gov.'s Opp'n at 9:16-19.]  The
16  discussion during the July 31, 2014 oral argument contemplated redaction of the names of
17  the case agents who searched Lycurgan's facilities, and seized various items - not
18  redaction of the name of the specific ATF agent who concluded that Lycurgan possessed
19  illegal firearms.  [McMillan Reply Decl. ¶ 3.]  Also, the Court declared that the redactions
20  were proper without the benefit of knowing or evaluating Lycurgan's position on the
21  matter.

22

23

24

25          [14] The unknown affiant states that he or she has participated in investigations
26  involving the possession of illegal firearms. [Affidavit ¶ 2.]  However, there is no
    indication of the extent or nature of the affiant's involvement, the number of such
27  investigations in which the affiant was involved, or the results thereof.  Likewise, there is
    no indication of what the affiant's "28 weeks of training" or "numerous hours of post
28  academy training" involved.  [Affidavit ¶ 3.]

3. Lycurgan's Request to Unseal More Information in the Affidavit is Most Appropriate in This Action to Unseal the Affidavit.

The Government's attempt to construe Lycurgan's challenge of the Affidavit redactions as a request for discovery is mistaken. [Gov.'s Opp'n at 9:26-10:9 ("[H]aving switched their focus, Ares Armor now indicates that it needs the names of the case agents so that it can conduct research about them. ... [The other] lawsuits . . . are the best and most appropriate vehicle through which discovery should be requested and received."] Lycurgan's position in this action has remained the same from the outset - Lycurgan sought access to the Affidavit in order to adequately challenge the purported probable cause in preservation of its Fourth Amendment right. The current Affidavit redactions inhibit this Fourth Amendment right. (See *In re Wag-Aero, Inc.* (E.D. Wisc. 1992) 796 F. Supp. 394, 395; see also *In re Up North Plastics, Inc.*, 940 F. Supp. at 233.) Lycurgan requests the Government to withdraw the redactions of only the affiant's name in the Affidavit. This is not a request for discovery. This is a request to unseal more information from the Affidavit.

The Government's suggestion that Lycurgan should seek the affiant's name in one of the other actions against the Government is unsupported, and would unnecessarily consume more judicial resources. [Gov.'s Opp'n at 10:4-20.] Also, it is reminiscent of an earlier unsuccessful argument submitted by the Government. During the July 31, 2014 hearing on Lycurgan's action to unseal the Affidavit, the Government argued that the "CAFRA lawsuit" was the more appropriate vehicle for the ultimate relief requested - a declaratory judgment that Lycurgan's unfinished receivers are not firearms.[15] The Court rejected that argument, and should also reject the Government's similar argument here. Resolution of Lycurgan's request to gain more meaningful access to the Affidavit is most appropriate in this action to unseal the Affidavit.

---

[15] Interestingly, soon after the Government suggested Lycurgan should stick with the CAFRA case, the Government filed a motion to dismiss the CAFRA case for lack of jurisdiction, which is currently set for hearing on December 12, 2014.

4. <u>The Affidavit Redactions Are Not Necessary to Protect Officer Safety</u>.

The Government argues the redactions are necessary based on the Government's exaggerations of the threat to officer safety. [Gov.'s Opp'n at 11:3 ("Ares Armor has also personally targeted ATF agents.").] The Government refers to the life-size cut-out of one of the agents displayed in Lycurgan's store, and Lycurgan's delivery of pizzas to ATF agents. [*Id*. at 11:3-15 ("[T]he pizza delivery was quite chilling.").] This issue has been extensively addressed before this Court in briefing and at oral argument.        Although Lycurgan disagrees that revealing the identity of the affiant's name would threaten officer safety, Lycurgan is willing to agree to a protective order that would allow only Lycurgan, its attorneys, and any expressly authorized individuals to view the affiant's name. Also, use of the affiant's name may be limited to court filings.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner Lycurgan, Inc. respectfully requests the Court to grant its motion for a new trial.

Respectfully submitted,

DATED: November 6, 2014         **THE MCMILLAN LAW FIRM, A.P.C.**

/s/ Scott A. McMillan

Scott A. McMillan
Attorney for Petitioner,
Lycurgan, Inc.