Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
**The McMillan Law Firm, APC**
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500 x 14
Fax: (206) 600-5095

Attorneys for Petitioner,
Lycurgan, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE SEARCH OF:<br>Ares Armor, 206/208 N. Freeman St., Oceanside; Ares Armor, 416 National City Blvd.; Ares Armor Warehouse, 180 Roymar St. D; and 2420 Industry, Oceanside, CA.<br><br>LYCURGAN, INC. d/b/a ARES ARMOR,<br>                Petitioner,<br>  vs.<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br>                Respondent. | CASE NO. 14-CV-1424 JLS (BGS)<br><br>**PETITIONER LYCURGAN, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT, 28 U.S.C. § 2412**<br><br>Judge: Hon. Janis L. Sammartino<br>Courtroom: 4A<br>Hearing Date: December 12, 2014<br>Hearing Time: 2:30 P.M. |

Petitioner Lycurgan, Inc. respectfully submits the following memorandum of points and authorities in response to Respondent United States' opposition to Petitioner's motion for attorney's fees.

# PETITIONER'S REPLY MEMORANDUM
# IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES
## Table of Contents

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. The Court Should Grant Lycurgan's Motion for Attorney's Fees. . . . . . . . . . 1

        1. Lycurgan Is the Prevailing Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            a. Lycurgan Achieved 100% Success in Its Action. . . . . . . . . . . . . 2

            b. The Court Did Not Need to Expressly Deem Lycurgan as the Prevailing Party in the Final Judgment... . . . . . . . . . . . . . . . . 2

            c. The Court Found the Government Failed to Demonstrate a Compelling Governmental Interest to Continue Sealing the Affidavit.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            d. In Response to the Court's Oral Finding that the Government Failed to Adequately Support Its Position, the Government Unsealed the Affidavit.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2. The Government Was Not Substantially Justified in Continuing to Seal the Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            a. The Government Supported its Position with Inapposite Cases and False Statements of Law... . . . . . . . . . . . . . . . . . . . . . . . . . 5

            b. The Government Provided No Factual Explanation Why Unsealing the Affidavit Would Negatively Affect Any Ongoing Criminal Investigation, Despite Having Four Opportunities To Do So.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. The Government Refused to Unseal the Affidavit In Order to Harass and Vex Lycurgan Due to the ATF's Animosity Towards Lycurgan. . . . . . . . . . . . . 9

    1. <u>The ATF Raided Lycurgan in Retaliation of Lycurgan's Petition for Legal Redress Against the ATF's Threats</u>... . . . . . . . . . . . . . . . . . . 9

    2. <u>The ATF Caused Unnecessary Damage and Stole Unauthorized Items During Its Raid of Lycurgan</u>.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C. Lycurgan's Requested Fees and Expenses Are Reasonable in Amount.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.     CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# Table of Authorities

Federal Statutory Authorities

28 U.S.C. § 2412. .................................................. 1, 9

28 U.S.C. § 2412. .................................................. 1, 9, 12

Federal Decisional Authorities

*Celata v. United States* (9th Cir. 2009) 334 Fed.Appx. 801 ..................... 6, 7

*Comm'r v. Jean* (1990) 496 U.S. 154. .................................... 2

*Dean v. Riser* (5th Cir. 2001) 240 F.3d 505.. ............................. 4

*Garcia v. Sullivan* (S.D.N.Y. 1991) 781 F. Supp. 969. ...................... 9

*Hensley v. Eckerhart* (1983) 461 U.S. 424. ............................... 3

*In re 14416 Coral Gables Way* (D. Md. 2011) 946 F.Supp.2d 414.. ............ 7

*In re Search Warrants Issued August 29, 1994* (S.D. Ohio 1995) 889 F. Supp. 296. .... 7

*In re Searches and Seizures* (E.D. Cal. 2008) 2008 U.S. Dist. LEXIS 107087. ........ 6

*Montes v. Thornburgh* (9th Cir. 1990) 919 F.2d 531.. ....................... 4

*National Wildlife Federation v. F.E.R.C.* (9th Cir. 1989) 870 F.2d 542. ........... 2, 3

*Neal & Co., Inc. v. United States* (Fed. Cir. 1997) 121 F.3d 683. ................ 2

*Times Mirror Co. v. United States* (9th Cir. 1989) 873 F.2d 1210 ............... 6, 7

*United States v. Bus. of the Custer Battlefield Museum* (9th Cir. 2011) 658 F.3d 1188.. 5, 6, 8, 9

*United States v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal.* (9th Cir. 1999) 190 F.3d 977. ............................................ 2

*Va. Dep't of State Police v. Wash. Post* (4th Cir. 2004) 386 F.3d 567. ............ 7

## I. INTRODUCTION

This is a simple matter that does not need to be over-complicated. Petitioner Lycurgan, Inc. ("Lycurgan") brought this action to unseal the search warrant affidavit ("Affidavit"), which was executed by Respondent United States ("the Government"). The Government vigorously opposed Lycurgan's review of the Affidavit without providing any applicable legal authorities or any specific factual explanation to support its position. At the conclusion of briefing and oral argument, Lycurgan fully prevailed in gaining access to the Affidavit.

The Government's contention that "the outcome of the motion for new trial dictates the viability of the motion for attorney fees" is inaccurate.[1] [Gov.'s Opp'n at 7:16-18.] Lycurgan's two pending motions are independent, and the rulings on each should have no effect on the other. No ruling on Lycurgan's motion for new trial, or any action by anyone, can ever change the fact that Lycurgan successfully gained access to the Affidavit.

## II. ARGUMENT

**A. The Court Should Grant Lycurgan's Motion for Attorney's Fees**

The Equal Access to Justice Act (EAJA) provides that the prevailing party in a non-tort civil action against the United States is entitled to mandatory attorney's fees and expenses unless there was "substantial justification" for the government's position. (28

---

[1] The Government filed a 25-page opposition that addressed both Lycurgan's motion for attorney's fees and motion for new trial. The Government's opposition brief does not contain a table of contents or a table of authorities in violation of the Local Rules. (Civil Rule 7.1(h) ["Briefs and memoranda exceeding ten(10) pages in length must have a table of contents and a table of authorities cited."].) Lycurgan responds to the Government's oppositions to both motions separately, since the pending motions raise separate and distinct issues, and have separate and distinct purposes.

U.S.C. § 2412(d)(1)(A).)

   1. Lycurgan Is the Prevailing Party

      *a. Lycurgan Achieved 100% Success in Its Action*

Lycurgan's one and only goal in this action was to review the Affidavit. Lycurgan accomplished this goal. Thus, Lycurgan was 100% successful.

      *b. The Court Did Not Need to Expressly Deem Lycurgan as the Prevailing Party in the Final Judgment.*

The Government appears to suggest that a claimant can only claim "prevailing party" status if the court expressly deemed the claimant as the "prevailing party." [Gov.'s Opp'n at 16:3-16, citing *United States v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal*. (9th Cir. 1999) 190 F.3d 977, 981; *National Wildlife Federation v. F.E.R.C.* (9th Cir. 1989) 870 F.2d 542, 544-45;[2] *Neal & Co., Inc. v. United States* (Fed. Cir. 1997) 121 F.3d 683, 685.] None of these cited cases support the Government's proposition. All these cases are in agreement that "the district court should consider

---

[2] The Government notes that *National Wildlife Federation* is "no longer good law." [Gov.'s Opp'n at 16:11.] This is false. The case was disapproved on grounds unrelated to the "prevailing party" issue by *Comm'r v. Jean* (1990) 496 U.S. 154, 160. Specifically, *National Wildlife Federation* was overruled to the extent it "applied the substantial justification test to the fee litigation; if opposition to attorney's fees is substantially justified, response to that opposition is not compensable." (*Id*., *supra* at 547-48.) Under this test, the court concluded that the government's opposition to the fee award was substantially justified, and thus excluded the litigation of the fee award from the total hours requiring compensation. (*Id*. at 548.) The United States Supreme Court disapproved of *National Wildlife Federation*, holding that once the court determines the government lacked substantial justification for the entire civil action, the prevailing party must be compensated for all hours litigating the action, including the hours expended in litigating attorney's fees. (*Comm'r v. Jean* (1990) 496 U.S. 154, 160 ["The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility."].)

claimants 'prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" [Gov.'s Opp'n at 15:24-28, quoting *National Wildlife Federation*, 870 F.2d at 544 and *Hensley v. Eckerhart* (1983) 461 U.S. 424, 433.] Here, Lycurgan achieved not just "some," but ***all***, of the benefit of bringing this suit by gaining access to the Affidavit. Therefore, there can be little doubt Lycurgan is the prevailing party. (*Id*.)

*c. The Court Found the Government Failed to Demonstrate a Compelling Governmental Interest to Continue Sealing the Affidavit.*

The Government's commentary about Lycurgan's various contentions supporting its motion to unseal the Affidavit ("Motion to Unseal") is irrelevant. [Opp'n at 16:21-18:7.] The only relevant consideration is the end-result. (*Hensley*, 461 U.S. at 433.) The end-result is that Lycurgan gained access to the Affidavit. [Fee Mtn. at 1:8-14.]

Furthermore, in accomplishing its goal, Lycurgan successfully argued that the Government lacked a compelling governmental interest to continue sealing the Affidavit. [Mtn. to Unseal Affidavit at 10:1-12:9.] During oral argument on July 31, 2014, the Court agreed with Lycurgan and found that the Government failed to demonstrate the requisite showing of a compelling governmental interest to continue sealing the Affidavit. [Fee Mtn. at 10:16-18.] The Court explained that the Government's general concern about preserving an ongoing criminal investigation was insufficient. [See *id.* at 10:6-18.] Based on this finding, the Court ordered the Government to file supplemental briefing to substantiate its position. [*Id*. at 10:18-20.] The Government "strategically" elected not to do so, and to instead unseal the Affidavit.[3] [Gov.'s Opp'n at 13:20-23.]

---

[3] The Government claims "that the record is incomplete because the additional information requested by the Court was not placed into the record prior to the judgment being entered." [Gov.'s Opp'n at 14:5-8.] The Government now suggests that the incomplete record, by its own doing, means rulings on Lycurgan's motions for attorney's fees and a new trial would be "premature." [Gov.'s Opp'n at 14:9-20.] The

14-cv-1424 JLS (BGS)    PETITIONER'S REPLY MEMORANDUM OF P's & A's
IN SUPPORT OF MOTION FOR ATTORNEY'S FEES    3

*d. In Response to the Court's Oral Finding that the Government Failed to Adequately Support Its Position, the Government Unsealed the Affidavit.*

As mentioned above, the Court found the Government failed to adequately support its position, and required additional support. In response, the Government unsealed the Affidavit. [Fee Mtn. at 10:16-11:2.] Accordingly, the Government's statement that "[t]he unsealing of the redacted-affidavit was done unilaterally without the district court's pronouncement of a legal principle requiring such action prior to August 14, 2014" is inaccurate. [Gov.'s Opp'n at 18:23-25.]

The Government vigorously fought to keep the Affidavit sealed up until the Government was on the brink of losing this action on the merits. The Government's argument that it "unilaterally" unsealed the Affidavit without influence from the Court belies the history of this action. The Government would not have unsealed the Affidavit, but for this lawsuit and the Court's pronouncement that the Government failed to adequately support its position. (See *Dean v. Riser* (5th Cir. 2001) 240 F.3d 505, 511 [holding that a claimant is the "prevailing party" when the opposing party voluntarily withdraws its claim to avoid a disfavorable judgment on the merits].) After the Government unsealed the Affidavit, the Court dismissed this matter as moot because Lycurgan fully prevailed. (See *Montes v. Thornburgh* (9th Cir. 1990) 919 F.2d 531, 538 ["Here, the case became moot only because appellees achieved their objective, and this objective was achieved only because of appellees' suit.'"].]

///

///

///

---

Government's strategic action to avoid a disfavorable judgment on the merits should not cannot be used to avoid paying mandatory attorney's fees under the EAJA. (*Dean v. Riser* (5th Cir. 2001) 240 F.3d 505, 511.)

### 2. The Government Was Not Substantially Justified in Continuing to Seal the Affidavit

*a. The Government Supported its Position with Inapposite Cases and False Statements of Law.*

Lycurgan argued that the Government's position was not substantially justified because it relied exclusively on inapposite First Amendment cases. [Fee Mtn. at 8:18-28.] The Government disagreed that it relied "exclusively" on First Amendment cases because it had cited to *United States v. Bus. of the Custer Battlefield Museum* (9th Cir. 2011) 658 F.3d 1188. [Gov.'s Opp'n 20:1-11.] The Government claimed *Custer Battlefield Museum* is a "'Fourth Amendment' case that is similar to the instant case." [Opp'n at 20:25-26.] That is false. The case has absolutely no discussion of the Fourth Amendment. The very first paragraph reads: "We decide ***whether the public has a common law or First Amendment right of access*** to materials filed in support of search warrant applications after an investigation has been terminated." (*Id*. at 1190, emphasis added.)

Furthermore, *Custer Battlefield Museum* illustrates the unreasonableness of the Government's position. In that case, Christopher Kortlander was criminally investigated, and his museum was the subject of two separate search warrants. (*Id*. at 1192.) Kortlander sought to have the warrant affidavits ordered unsealed and disclosed to the public based on "the public's qualified First Amendment right of access to judicial proceedings." (*Id*. at 1191.) The government objected to disclosure to the public. (*Id*.) However, the government did not object to Kortlander's and his attorney's access to the affidavits for their personal review and/or inclusion in any future court filings. (*Id*.) The government reasoned that Kortlander and his attorney had already learned the details of the investigation in the course of negotiation. (*Id*.)

"The district court granted Kortlander's request for access to the warrant materials,

but limited Kortlander's access in accordance with the government's suggestions." (*Id*.)
Kortlander appealed. (*Id*. at 1192.) The Court of Appeal affirmed Kortlander's access to
the warrant materials, and further noted that the public has a qualified common law right
of access to the materials as well. (*Id*. at 1196.)

It is curious why the Government highlighted this case in its opposition brief,
which further confirms the Government's position was not substantially justified. In
*Custer Battlefield Museum*, the government did ***NOT*** oppose the search target's access to
the search warrant affidavit. (*Id*., *supra* at 1191.) Here, the Government did oppose such
access. Furthermore, the court held that the search target, and possibly the public as well,
were entitled to review the search warrant affidavit. (*Id*., *supra* at 1196.)

The Government argues that its reliance on *Times Mirror Co. v. United States* (9th
Cir. 1989) 873 F.2d 1210 was reasonable, despite this Court's expression of doubt during
oral argument, and other courts that have expressly held *Times Mirror* is NOT applicable
to Fourth Amendment cases. [Fee Mtn. at 9:1-23, citing *In re Searches and Seizures*
(E.D. Cal. 2008) 2008 U.S. Dist. LEXIS 107087, *8-10.]

Finally, the Government relies on *Celata v. United States* (9th Cir. 2009) 334
Fed.Appx. at 801 (unpublished) for the inference that the Ninth Circuit held it was
reasonable for the government to keep a search warrant affidavit sealed for up to three
years.[4] [Gov.'s Opp'n at 21:26-22:3.] This is ***FALSE***, and *Celata* is completely
irrelevant to this case. *Celata* is a CAFRA case - not a Fourth Amendment case. *Celata*

---

[4] On July 31, 2014, during oral argument, the Court inquired from both parties what a reasonable time is for a search warrant affidavit to remain sealed. The Government responded that the Ninth Circuit Court held three years was reasonable in *Celata*. That was an utter falsehood, which the Government repeated in its briefing. In fact, *Celata* never discussed search warrant documents at all. *Celata* held it was permissible for the government to retain the appellant's ***seized property*** for three years during the ongoing criminal investigation. [*Id., supra* at *802, emphasis added.*]

is a case about the return of property - not the unsealing of a search warrant materials. There is no indication that the government's search warrant affidavit in *Celata* was ever sealed at all, much less for "***three years***." [Gov.'s Opp'n at 22:2, emphasis in original.]

*b. The Government Provided No Factual Explanation Why Unsealing the Affidavit Would Negatively Affect Any Ongoing Criminal Investigation, Despite Having Four Opportunities To Do So.*

The Government continues to support its position based on a general assertion that there is an ongoing criminal investigation, despite the fact that this Court held during oral argument that such a general assertion is inadequate. [See Fee Mtn. at 10:16-20.] Specifically, the Government asserts "that the criminal investigation was ongoing . . . seems to be highly probative in regards to whether a search warrant affidavit may permissibly remain sealed." [Gov.'s Opp'n at 22:23-23:3, citing *Times Mirror*, 873 F.2d at 1215.] In fact, the mere existence of an ongoing investigation is not probative. (See *In re 14416 Coral Gables Way* (D. Md. 2011) 946 F. Supp. 2d 414, 420-21; *In re Search Warrants Issued August 29, 1994* (S.D. Ohio 1995) 889 F. Supp. 296, 301; *Va. Dep't of State Police v. Wash. Post* (4th Cir. 2004) 386 F.3d 567, 573.) The relevant consideration is whether unsealing the Affidavit would compromise the investigation or create a threat of officer safety. (*Id*.) The Government declined to address this issue, despite having four opportunities to do so.[5]

The Government merely listed the general concerns inherent in any ongoing

---

[5] The Government had four opportunities to provide a factual explanation for why unsealing the Affidavit would be problematic, including: (1) the opposition brief to Lycurgan's Motion to Unseal, (2) oral argument on the Motion to Unseal, (3) supplemental briefing to oppose the Motion to Unseal, and (4) the opposition brief to Lycurgan's Fee Motion.

criminal investigation.[6] [Reply in Supp. of Mtn. to Unseal Affidavit at 5:23-6:3.] Such concerns are inapplicable to the actual ongoing criminal investigations of Lycurgan and EP Armory because the Government already conducted very public searches and seizures of both businesses. [See *id.* at 6:4-19; Mtn. to Unseal Affidavit at 1:22-23.] Furthermore, Lycurgan and its attorney learned the details of the investigation through negotiations and correspondence with the ATF leading up to the raids. [Mtn. to Unseal at 1:21-2:23; *Cf. Bus. of the Custer Battlefield Museum*, 658 F.3d at 1191 ("[T]he government . . . [gave] Kortlander access to the [search warrant] records, acknowledging that Kortlander and his attorney had already learned the 'details of investigation in the course of negotiation' in the case....").]

The Government's contention that "it was potentially *unreasonable* . . . to unseal [the] affidavit . . ." is without merit. [Gov.'s Opp'n at 23:12-16, emphasis in original.] If the Government was genuinely concerned that unsealing the Affidavit would compromise an ongoing criminal investigation or threaten officer safety, then why did the Government not take advantage of the Court's generous offer to submit supplemental briefing under seal to support its position? What happened in the mere two weeks between July 31, 2014 (oral argument) and August 14, 2014 (unsealed Affidavit) that suddenly made it reasonable to unseal the Affidavit? Why did the Government vigorously oppose unsealing the Affidavit even ***after*** the Government made its investigations of EP Armory

---

[6] The Government's only factual explanation, grounded in the specific facts of this case, to justify its ongoing sealing of the Affidavit related to officer safety. The Government noted that Lycurgan has a life-size cut-out picture of one of the ATF agents in its store, and Lycurgan sent the ATF pizzas. [Gov.'s Opp'n to Mtn. to Unseal Affidavit at p. 9, n.5.] Lycurgan responded in its briefing and in open court that these actions were not taken with any ill-intent, nor were they meant to be a threat in any way. [Reply in Supp. of Mtn. to Unseal Affidavit at p. 6, n. 6.] Furthermore, a simple redaction of the officers' names in the Affidavit, as the Government has done, easily removes any such concern for officer safety.

and Lycurgan public? Why did the Government oppose granting Lycurgan access to the Affidavit, while the government in *Custer Battlefield Museum* freely granted such access to Kortlander? These critical questions left unanswered by the Government are answered below by Lycurgan.

**B. The Government Refused to Unseal the Affidavit In Order to Harass and Vex Lycurgan Due to the ATF's Animosity Towards Lycurgan.**

In addition to the mandatory attorney's fees under 28 U.S.C. section 2412(d)(1)(A), Lycurgan is also entitled to a "bad faith" award under section 2412(b). "The government acts in bad faith for purposes of the EAJA when the government's position was 'entirely without color' and undertaken for reasons of harassment or delay or other improper purpose." (*Garcia v. Sullivan* (S.D.N.Y. 1991) 781 F. Supp. 969, 974, cited by the Government's Opposition at p. 22, n. 8.)

    1. <u>The ATF Raided Lycurgan in Retaliation of Lycurgan's Petition for Legal Redress Against the ATF's Threats</u>.

On March 10, 2014, agents from the ATF communicated to Lycurgan that the ATF was in the process of obtaining a warrant against Lycurgan based upon the ATF's incorrect determination that the subject unfinished lower receivers were firearms. [See Mtn. to Unseal at 2:1-7.] The ATF also communicated to Lycurgan that so long as Mr. Karras relinquished all of the subject unfinished lower receivers, and Plaintiff's customer list to the ATF, then the ATF would not obtain a warrant. [*Id*.] ATF agents communicated words to the effect that "[in] exchange for turning over your customers' private information to the ATF, the agents would not raid Lycurgan and would not pursue criminal charges." [See *id.*]

Mr. Karras agreed to the ATF agents' extortionate demands in order to delay an impending and unjust raid against Lycurgan long enough to obtain legal protection under the law from this court. [See *id.* at 2:8-15.] Lycrugan petitioned the court for declaratory

and injunctive relief in the case styled as *Lycurgan, Inc. v. B. Todd Jones*, 14CV0548. [*Id*.] Three days following the filing of that action, the Government obtained a search warrant with the use of deception, and raided Lycurgan. [*Id*. at 2:16-23.] The purpose was to punish Lycurgan for refusing to turn over its confidential customer list, and for challenging the Government in court. [See Karras Reply Decl. in Supp. of Mtn. to Unseal ¶¶ 13-14.]

### 2. The ATF Caused Unnecessary Damage and Stole Unauthorized Items During Its Raid of Lycurgan.

During the course of the search of Lycurgan at 416 National City Blvd., National City, California, the ATF agents unnecessarily caused property damage and disarray. [Karras Decl. in Supp. of Mtn. to Unseal Affidavit ¶ 12.] The ATF damaged the door frames of the glass doors in order to enter the building. [*Id*.] In order to gain entry, rather than simply break the glass, which could be inexpensively replaced, the agents caused substantial destruction to the metal door frames through the use of a battering ram against the aluminum. [*Id*.] Also, the ATF agents beat open and destroyed Lycurgan's safe with Lycurgan's sledge hammer. [Karras Reply Decl. in Supp. of Mtn. to Unseal ¶ 5.] The agents left the store in a state of disarray with papers strewn all about, and abused the restroom facilities. [*Id*.]

The ATF agents also took valuable Rudius unfinished pistol frames from the National City store. [Karras Decl. in Supp. of Mtn. to Unseal Affidavit ¶ 12.] Those items were not accounted for in the inventory, and Lycurgan did not consent to the agents taking such items. [*Id*.] In other words, the raiders at the National City location engaged in looting and vandalism. [*Id*.] On April 23, 2014, the ATF returned the unlawfully stolen 19 Rudius frames, representing $4,750 in value, without explanation why they had not been listed on the inventory. [Karras Reply Decl. in Supp. of Mtn. to Unseal ¶ 6.]

These volatile actions illustrates the animus the ATF has towards Lycurgan. The

Government's objection to Lycurgan's review of the Affidavit followed the ATF's same pattern of unwarranted aggression and retaliation against Lycurgan.

### C. Lycurgan's Requested Fees and Expenses Are Reasonable in Amount.

The Government takes exception to: (1) the 6.5 hours billed by Lycurgan's attorneys for their "observance of the search," and (2) the "billed 17 hours for communication with his client." [Gov.'s Opp'n at 25:5-10.] The Government claims these fees are clearly excessive. [*Id*. at 25:8-9.] The Government is mistaken.

The primary intent of Lycurgan's counsel for attending the raid was to obtain and review the search warrant and supporting materials. [See Karras Reply Decl. ¶ 5; McMillan Decl. in Supp. of Fee Mtn. ¶ 25(a).] Had the Government produced the Affidavit at that time, the Government would have saved itself, this Court, and Lycurgan a tremendous amount of valuable resources. Of course, the Government declined to do so despite the fact that the investigation and searches were made public. In fact, the raid of the National City location attracted a large public gathering, which was immediately published in the media online and on television. [Karras Decl. in Supp. of Mtn. to Unseal ¶ 13.]

The observance of the raid by Lycurgan's counsel produced many material facts that were included in this action to unseal the Affidavit. [McMillan Decl. in Supp. of Mtn. for Fee Mtn. ¶ 25(a).] Notably, Lycurgan billed the Government for only one attorney's time despite the fact that four attorneys were assisting Lycurgan in observing the raid at the three separate Oceanside locations. [*Id*.; Karras Reply Decl. ¶ 5.] The billed 6.5 hours is directly correlated to the amount of time the ATF spent rummaging through Lycurgan's stores. [*Id*.]

Lycurgan's counsel billed 17 hours for correspondence, including emails, letters and telephone calls, with not only his client, but also with opposing counsel, other

informed individuals and witnesses, and the Court. Dimitri Karras necessarily spent ample time explaining to The McMillan Law Firm attorneys the events that lead up to the raid, the issues about Lycurgan's business and the home-build industry, and the facts related to the necessity to unseal the Affidavit. [Karras Reply Decl. ¶ 4.]

This case presented a unique procedural issue due to its civil nature with quasi-criminal aspects, as acknowledged by the Government. [Gov.'s Opp'n at 7:25-8:7.] Lycurgan struggled with obtaining a case number, requiring multiple communications with the Court and opposing counsel. [McMillan Decl. in Supp. of Mtn. for Fee Mtn. ¶ 25(a).] Lycurgan's counsel also struggled with serving the Government. [*Id*. ¶ 25(b).] Lycurgan's counsel first attempted to serve the Criminal Division of the U.S. Attorney's Office, but was rebuffed and directed to the Civil Division. [*Id*.] More correspondence ensued to resolve this issue of service. [*Id*.]

In addition, the Government created a number of issues in this matter by arresting an individual (Tyler Hughes) and causing substantial property damage during the course of the raid, serving and then withdrawing a civil forfeiture proceeding connected with the seized items, and filing a redacted version of the Affidavit. Each of these issues required correspondence with a variety of individuals to ascertain the facts, assess the damages, and develop the bases for seeking access to the Affidavit. Accordingly, the 17 billed hours for the total correspondence conducted by Lycurgan's counsel is reasonable.

Lycurgan is entitled to compensation for his attorney's fees as a matter of law, as well as equity. As a result of the seizure of the EP 80 blanks, and the resulting loss of the merchandise which could be sold, Lycurgan borrowed approximately $300,000 from a commercial lender who requires Lycurgan to repay that money back at exorbitant interest rates. [Karras Reply Decl. ¶ 3.] Dimitri Karras invested all of his money into Lycurgan and it is a struggle to keep it alive in light of the substantial legal fees and time commitment that participating in this litigation requires. [*Id*.] Mr. Karras and his Mother

own a house in Anderson, California where Mr. Karras' Mom lives. [*Id.*] His Mom runs a daycare, from which she makes a modest living. [*Id.*] Money is owed against that house that Mr. Karras has used to fund Lycurgan. [*Id.*] If Mr. Karras is unable to keep Lycurgan alive, he will be unable to make the payments, and he expects that his Mom's house will be foreclosed upon. [*Id.*] His Mom will lose both her home and her livelihood. [*Id.*]

### III. CONCLUSION

For the foregoing reasons, Petitioner Lycurgan, Inc. respectfully requests the Court to grant its motion for attorney's fees.

Respectfully submitted,

DATED: November 6, 2014           **THE MCMILLAN LAW FIRM, A.P.C.**

/s/ Scott A. McMillan

Scott A. McMillan
Attorney for Petitioner,
Lycurgan, Inc.